**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

SCHMITT, et al.,

                     Plaintiffs,

v.                                                CASE NO.2:18-cv-966

HUSTED, et al.,

                     Defendants.
_____/

**MOTION FOR PRELIMINARY INJUNCTION**
**AND/OR TEMPORARY RESTRAINING ORDER**
**AND ATTACHED MEMORANDUM OF LAW IN SUPPORT**

Plaintiffs pursuant to Federal Rules of Civil Procedure 65(a) and (b) move the Court to enter a preliminary injunction and/or temporary restraining order that prohibits Defendants from enforcing or applying O.R.C. § 3501.11(K), O.R.C. § 3501.38(M)(1)(a), and/or O.R.C. § 3501.39(A), and/or any other Ohio statute, to deny to Plaintiffs their right to place their initiatives on Ohio's ballots. Further, Plaintiffs request that in this same preliminary injunction and/or temporary restraining order the Portage County Board of Elections be ordered to immediately restore the initiatives described in their Complaint to the Garrettsville and Windham ballots.

Plaintiffs certify that counsel for the Portage County Board of Elections (sued through Defendants Craig M. Stephens, Patricia Nelson, Doria Daniels and Elayne J. Cross) and counsel for Defendant-Secretary of State have been contacted and provided copies of the Complaint (together will all Exhibits), this Motion, and Plaintiffs' Proposed Order. Plaintiffs have requested of counsel for each of the Defendants a waiver of service of process Federal Rule of Civil Procedure 4.

1

Respectfully submitted,

s/*Mark R. Brown*

|                              |                                   |
|------------------------------|-----------------------------------|
| Mark G. Kafantaris           | Mark R. Brown, Trial Counsel      |
| Ohio Registration No. 80392  | Ohio Registration No. 81941       |
| 625 City Park Avenue         | 303 East Broad Street             |
| Columbus, OH 43206           | Columbus, OH 43215                |
| (614) 223-1444               | (614) 236-6590                    |
| (614) 300-5123 (fax)         | (614) 236-6956 (fax)              |
| mark@kafantaris.com          | mbrown@law.capital.edu            |
|                              | Attorneys for Plaintiffs          |

## MEMORANDUM OF LAW IN SUPPORT

Plaintiffs, two circulators of the initiatives at issue here and a voter who supported one of them, bring this facial First Amendment challenge to Ohio's "gatekeeper" mechanism, *see State ex rel. Walker v. Husted*, 144 Ohio St.3d 361, 43 N.E.3d 419, 423 (2015) (holding that elections officials "serve as gatekeepers, to ensure that only those measures that actually constitute initiatives or referenda are placed on the ballot."), for selecting which popular initiatives may be included on Ohio's ballots. This procedure (hereinafter "the gatekeeper mechanism"), is codified in O.R.C. § 3501.11(K)(1) & (2), O.R.C. § 3501.38(M)(1)(a) and O.R.C. § 3501.39(A), which have been authoritatively interpreted by the Ohio Supreme Court to authorize local elections boards to exercise their discretion as gatekeepers of Ohio's initiative ballots.

Local elections officials under these statutes act as gatekeepers by exercising discretion to select initiatives that are proper subjects for ballots and to exclude those that they, in the discretion, believe are not. As explained below, Ohio's law is facially unconstitutional under the First Amendment for two separate reasons: (1) it is a content-based restriction on speech that cannot pass strict scrutiny; and (2) it is an impermissible prior restraint that fails to abide by the First Amendment's established procedural safeguards.

## Facts

Plaintiffs[1] Schmitt and Thompson are drafters and circulators of two popular initiatives that were presented to officials in Garretsville and Windham for inclusion on those villages' respective ballots. *See* Exhibits 1 and 2.  Both initiatives included identical ordinances calling for the decriminalization of marijuana possession. These two Plaintiffs have drafted and circulated several of these initiatives in Ohio.  Identical copies of the Garretsville and Windham ordinances (circulated by Plaintiffs) were successfully approved for inclusion on ballots in Oregon, Fremont and Norwood.  *See* Exhibits 5, 6 and 7.  Similar ordinances have already been passed in Toledo, Bellaire, Roseville, Newark, Logan and Athens.

Plaintiffs' Garrettsville and Windham initiatives were found to both contain the requisite number of voters' signatures and meet all of the technical requirements for inclusion on the villages' respective ballots. However, the Portage County Board of Elections[2] on August 20, 2018 ruled that the subject-matter of the two initiatives was improper and removed them from the villages' respective ballots. The Portage County Board of Elections on August 21, 2018 explained to Plaintiffs that:

> In *State ex rel. Sensible Norwood v. Hamilton County Board of Elections, 2016-Ohio-5919,* the Oho [sic] Supreme Court said administrative actions are not subject to initiative.  Reviewing the language in the proposals presented by the Village of Garrettsville and the Village of Windham, the $0 fine and no license consequences are administrative in nature.  The $0 court costs is administrative in nature and is an impingement on the judicial function by a legislature. Accordingly, <u>as the Garrettsville Village and Windham Village petitions deal with subject matter that is not subject to the initiative process, the Board of Elections, in its discretion, has chosen not to certify these issues to the ballot.</u>

---

[1] Plaintiff Blewitt is a registered voter who lives in Windham who signed Schmitt's and Thompson's initiative. She is the mayor of Windham and supports the proposed ordinance and would like the opportunity to vote for it.

[2] The individual Board members are here sued in their official capacities under the Supreme Court's holding in *Ex parte Young*, 209 U.S. 123 (1908).  *See Hunter v. Hamilton County Board of Elections*, 850 F. Supp.2d 795, 802 & n.4 (S.D. Ohio 2012). Because Plaintiffs seek only prospective relief, they accordingly avoid any difficulty under the Eleventh Amendment.

Exhibit 4 at page 1 (emphasis added).

**A.      Ohio's Gatekeeper Law -- O.R.C. § 3501.11(K).**

Before changes enacted on April 6, 2017 by H.B. 463, what was then O.R.C. § 3501.11(K) was interpreted by the Ohio Supreme Court to empower local elections boards to act as gatekeepers over access to initiative ballots. That statute stated that local elections boards had authority to "[r]eview, examine, and certify the sufficiency and validity of petitions and nomination papers, and, after certification, return to the secretary of state all petitions and nomination papers that the secretary of state forwarded to the board."

The Ohio Supreme Court stated that O.R.C. § 3501.11(K), and its analog supplying power to the Secretary of State, empowered elections officials to "serve as gatekeepers, to ensure that only those measures that actually constitute initiatives or referenda are placed on the ballot." *State ex rel. Walker v. Husted*, 144 Ohio St.3d 361, 43 N.E.3d 419, 423 (2015) (emphasis added). "It necessarily follows," the Ohio Supreme Court added, "that the boards have discretion to determine which actions are administrative and which are legal." *Id*. (emphasis added).  The former, the Court observed, are not proper subjects of initiatives. Hence, local elections boards were awarded discretion to distinguish between initiatives that addressed "administrative" subjects and those that did not. Initiatives addressing "administrative" subjects could, at the discretion of the local boards, be removed from ballots.

The Ohio Supreme Court further interpreted O.R.C. § 3501.11(K) to allow local elections boards to remove initiatives that exceeded local authority.  In *Walker*, for example, local charter initiatives that had been circulated in three Ohio counties were certified by their local election boards for ballots.  Protests were lodged against all three, which Secretary Husted upheld. Secretary Husted justified his removal of the charter amendments on two grounds: first, the

proposed charters failed to "create an 'alternative form of government' as required by" Ohio law, 144 Ohio St. 3d at 362, 43 N.E.3d at 422, and second, the "substantive prohibition" in the initiative "conflicts with the state's exclusive authority to regulate oil and gas operations in Ohio." *Id.* The Court ruled that while Husted could not reject the initiatives based on his belief that they were pre-empted by Ohio's prerogative over oil and gas, *id.* at 365, 43 N.E.3d at 424-25, he had "discretion to determine that the proposed charters were invalid because they did not set forth the form of government …." *Id.* at 366, 43 N.E.3d at 425.

In reaching its result in *Walker*, the Ohio Supreme Court made much of its limited authority to review an election gatekeeper's conclusion: "As is well-established, abuse of discretion means more than an error of law or of judgment." *Id.* at 365, 43 N.E.3d at 424. "In close cases, therefore, we might very well be compelled to find that the secretary reasonably disqualified a ballot measure, in the exercise of his discretion, even if we, in the exercise of our constitutional duties, would deem the measure unconstitutional." *Id.*

Subsequent cases attempted to elaborate on what constitute "administrative" matters, what matters exceed local power, and what subjects may be included as initiatives on ballots. *State ex rel. Sensible Norwood v. Hamilton County Board of Elections*, 148 Ohio St.3d 176, 69 N.E.3d 696 (2016), involved an initiative that sought to include a marijuana decriminalization ordinance on a local ballot. Its language included a provision reducing local penalties for not only misdemeanor marijuana possession, but also felonies. The local elections board refused to place the initiative on the ballot because it believed the initiative exceeded local authority in attempting to define felonies. *Id.* at 177, 69 N.E.3d at 697. The board also concluded that the initiative impermissibly "imposed administrative restrictions on the enforcement of existing laws" by limiting the powers of police officers, prohibiting forfeiture, and restricting drivers'

license revocation.  *Id.*  at 179-80, 69 N.E.3d at 700.  The Ohio Supreme Court sustained the local elections board's decision on both points: "Relators have failed to establish a clear legal right to their requested relief and a clear legal duty on the part of the board to provide it." *Id.*

The Ohio Supreme Court in *State ex rel. Youngstown v. Mahoning County Board of Elections*, 144 Ohio St.3d 239, 241, 41 N.E.3d 1229, 1232 (2015), meanwhile, ruled that a local elections boards cannot "determine whether a ballot measure falls within the scope of the constitutional power of referendum or initiative." An elections board may conclude that an initiative is "administrative" and reject it, or may determine that it exceeds local power and reject it, but it may not reject an initiative because it exceeds local authority by violating Ohio's constitutional home-rule amendment.

The following year, in *State ex rel. Flak v. Betras*, 152 Ohio St.3d 244, 247, 95 N.E.3d 329, 332 (2016), the Ohio Supreme Court ruled that a local board possessed discretion to reject an initiative that purported to create a private cause of action; the subject matter fell "beyond the scope of the municipality's authority" according to the local elections board. In refusing to set this decision aside, the Court admitted that its distinctions were "difficult:"

> Our jurisprudence has distinguished between an elections board's determining that a proposed initiative may be unconstitutional and an elections board's determining that a proposed initiative falls outside the scope of the permissible subject matter of a municipal initiative. … It is fair to say that it is sometimes difficult to distinguish between a provision that a municipality is not authorized to adopt by legislative action (something an elections board may determine per Sensible Norwood) and one that is simply unconstitutional (something an elections board may not determine, per Youngstown). But that is the line our caselaw has drawn.

*Id*. at 247, 95 N.E.3d at 332.

In sum, O.R.C. § 3501.11(K) has been authoritatively interpreted by the Ohio Supreme Court to enable local elections boards to act as gatekeepers, armed with discretion to block initiatives from ballots based on those initiatives' subject and content.  Exercising their

6

discretion -- and reviewed only for an abuse of this discretion -- local election boards are charged with distinguishing between "administrative" and "legal" subjects, as well as "difficult" distinctions between which initiatives exceed local power.  All decisions are content-based.

**B.**     **House Bill 463.**

On April 6, 2017, H.B. 463 took effect. While keeping the language found in O.R.C. O.R.C. § 3501.11(K) and construed to create the gatekeeper function,[3] it added new language, codified as O.R.C. § 3501.11(K)(2), stating that local elections boards shall:

> [e]xamine each initiative petition, or a petition filed under section 307.94 or 307.95 of the Revised Code, received by the board to determine whether the petition falls within the scope of authority to enact via initiative and whether the petition satisfies the statutory prerequisites to place the issue on the ballot, as described in division (M) of section 3501.38 of the Revised Code. The petition shall be invalid if any portion of the petition is not <u>within the initiative power</u>.

(Emphasis added). House Bill 463 also added O.R.C. § 3501.38(M), which O.R.C. § 3501.11(K)(2) cross-references. Relevant here is O.R.C. § 3501.38(M)(1)(a), which requires a board of elections, upon receiving a municipal initiative petition, to examine the petition to determine

> [w]hether the petition falls <u>within the scope of a municipal political subdivision's authority to enact via initiative, including, if applicable, the limitations placed by Sections 3 and 7 of Article XVIII of the Ohio Constitution on the authority of municipal corporations to adopt local police, sanitary, and other similar regulations as are not in conflict with general laws</u>, and whether the petition satisfies the statutory prerequisites to place the issue on the ballot. The petition shall be invalid if any portion of the petition is not <u>within the initiative power</u>.

(Emphasis added).  Finally, H.B. 463 amended O.R.C. § 3501.39(A) to provide:

> [A] board of elections <u>shall accept</u> any petition described in section 3501.38 of the Revised Code <u>unless</u> one of the following occurs: …

---

[3] That exact same language is now located in O.R.C. § 3501.11(K)(1).

> (3) In the case of an initiative petition received by the board of elections, the petition falls <u>outside the scope of authority</u> to enact via initiative or <u>does not satisfy the statutory prerequisites to place the issue on the ballot, as described in division (M) of section 3501.38 of the Revised Code</u>. The petition shall be invalid if any portion of the petition is not <u>within the initiative power</u>.

(Emphasis added).

House Bill 463 therefore not only reaffirmed local elections boards' roles as gatekeepers for initiatives as construed by the Ohio Supreme Court, its terms added to their discretion. They are now afforded discretion to decide whether a subject falls "within the initiative power," exceeds a local political body's constitutional home-rule powers, or otherwise "conflict with general laws." They accordingly have more authority and more discretion.

The argument that H.B.463 increased local elections boards' discretion was pressed in *State ex rel. Espen v. Wood County Board of Elections*, 2017-Ohio-8223, __ N.E.3d __, 2017 WL 4701143, where a local election board certified to Bowling Green's election ballot an initiative titled "Community Rights to a Healthy Environment and Livable Climate." The board's decision was protested under H.B. 463 on the ground that "it exceeded the municipal powers of self-government set forth in the Ohio Constitution." *Id*. at *1.

Relying on its prior holding in *Youngstown*, a plurality of three Justices concluded that the protest lacked merit and the local board did not abuse its discretion in rejecting it. *Id*. at *3. That same plurality added that "the statutory amendments made by [H.B. 463] do not change this result." *Id*. Three Justices opined that "[t]his attempt by the General Assembly to grant review power to the election boards violates the [Ohio] Constitution because 'the administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers." *Id*. "To the extent that R.C.

3501.38(M)(1)(a) authorizes and requires boards of elections to make substantive, preenactment legal evaluations, it violates the separation-of-powers doctrine and is unconstitutional." *Id.*

Because the fourth vote supporting the result (that of Justice O'Donnell) was not added to the opinion, the Court's conclusion that H.B. 463 did not and could not enlarge local boards' gatekeeper function is not the law in Ohio. *See State ex rel. Khumprakor v. Mahoning Board of Elections*, 2018-Ohio-1602, 2018 WL 1960645 at *3 (Fischer, J., concurring) ("*Espen* does not resolve this case because the lead opinion in that case, joined by only three justices, did not articulate a holding of this court."). Consequently, although it is clear that local boards have discretion to remove initiatives from ballots, whether H.B. 463 enlarges this discretion has not been finally established.

The indeterminacy generated by Ohio's gatekeeper mechanism led Justice Fischer in *Khumprakor* to write a lengthy plea for changes in the system.[4] Justice Fischer complained that local elections boards are called upon to make decisions that even courts cannot make. They are delegated discretionary authority to "make a substantive, pre-enactment legal determination that a proposed measure exceeds a municipality's legislative power." *Id.* at *9. The Court's deferential standard of review, Justice Fischer pointed out, complicated this result by "relinquishing some authority in favor of boards of elections and facilitating inconsistent results among various boards of elections." *Id.*

---

[4] In *Khumprakor*, a local election board had refused to certify an initiative because it exceeded the city's legislative power. *Id.* at *1. The Court ultimately disagreed, stating that "although the proposed amendment would not necessarily be constitutional or legally enforceable if enacted, the board abused its discretion in finding that the measure exceeds Youngstown's legislative power." *Id.* at *2. Justice Fischer concurred with this result, but explained he did not join the opinion because he felt the entire approach was improper.

In the end, Justice Fischer concluded that Ohio's approach was so "unnecessarily confusing" and "without meaning" that it "defied workability":

> Questions on both sides of the distinction can present home-rule issues, but there is no clear reason why elections boards have been allowed to decide questions on one side but not questions on the other. …   Indeed, it is puzzling why an elections board might have authority to make legal determinations about state-law preemption (even though we have rejected the concept) but lacks authority to determine a home-rule-conflict question (even if we have decided a case directly on point).
>
> Our existing case law on R.C. 3501.11(K)(1) has shown itself to be unworkable in one other way: …it does not lead to consistent results among various county boards of elections. By leaving behind the interpretation of R.C. 3501.11(K)(1) articulated in *Youngstown*, *Sensible Norwood*, and *Flak*, this court not only would maintain the separation of powers but also would ensure greater uniformity in elections board decision-making throughout the state. …   [T]here is no reason why elections boards cannot decide future cases under a more constrained scope of review without disruption or difficulty.

*Id*. at *8 - *9. House Bill 463, according to Justice Fischer, only made matters worse by expanding the local elections board's discretion: "the H.B. 463 amendments … purport to authorize election boards to make legal determinations about subject-area preemption that even courts cannot make." *Id*. at *6.

* * *

Plaintiffs do not wade into whether H.B. 463 adds to local elections boards' discretion. Whether it does is not relevant. At best Ohio's gatekeeper mechanism as authoritatively construed by the Ohio Supreme Court employs "confusing" and "unworkable" content-based standards to limit local boards' discretion. Should H.B. 463 expand local boards' discretion -- which its terms literally do -- Ohio's gatekeeper mechanism in O.R.C. § 3501.11(K) would be even worse. It would leave local election boards with complete and unfettered discretion. Further, it would still be content-based and fail to employ the required procedural safeguards. Either way, as explained below, Ohio's gatekeeper mechanism violates the First Amendment.

10

### Argument

"[A]lthough the Constitution does not require a state to create an initiative procedure, if it creates such a procedure, the state cannot place restrictions on its use that violate the federal Constitution ...." *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 295 (6th Cir. 1993). There are numerous cases proving this point and holding that First Amendment limitations apply to direct democracy and the initiative process.  *See*, *e.g.*, *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182 (1999) (applying First Amendment to invalidate restrictions on circulation of initiatives); *Committee to Impose Term Limits on the Ohio Supreme Court and to Preclude Special Legal Status for Members of and Employees of the Ohio General Assembly v. Ohio Ballot Board*, 885 F. 3d 443, 446 (6th Cir. 2018) (applying First Amendment to Ohio's single-subject requirement for initiatives).

When a restriction is content-based, the Sixth Circuit has ruled, "the law must survive strict scrutiny." *Déjà vu of Nashville v. Metropolitan Government of Nashville and Davidson County*, 274 F.3d 372, 391 (6th Cir. 2001); *see also Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) ("Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.").  "Systems of prior restraint," moreover, "will be upheld only if they provide for prompt judicial review of all decisions denying the right to speak, while also passing the appropriate level of scrutiny."  *Déjà vu of Nashville*, 274 F.3d at 391 (citing *Freedman v. State of Maryland*, 380 U.S. 51, 58-59 (1965)).

Moreover, a facial First Amendment challenge offers the appropriate mechanism for pursuing relief. "[A] facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech ...."

*Lakewood v. Plain Dealer*, 486 U.S. 750, 759 (1988). Plaintiffs accordingly bring this First Amendment facial challenge[5] to O.R.C. § 3501.11(K), O.R.C. § 3501.38(M)(1)(a), and O.R.C. § 3501.39(A), as well as the Portage County Board of Elections' removal of Plaintiffs' initiatives from the ballots of Garretsville and Windham.

## I.     Ohio's Law is Content-Based and Cannot Survive Strict Scrutiny.

In *Committee to Impose Term Limits on the Ohio Supreme Court and to Preclude Special Legal Status for Members of and Employees of the Ohio General Assembly v. Ohio Ballot Board*, 885 F. 3d 443 (6th Cir. 2018), the Sixth Circuit concluded that although Ohio's initiative process is subject to First Amendment scrutiny, Ohio's single-subject rule for initiatives passes constitutional muster.  Ohio's single-subject rule passed scrutiny because it is not content-based:

> We agree with this overwhelming weight of authority that Ohio's single-subject rule is not content based. … It applies to all initiative petitions, no matter the topic discussed or idea or message expressed. It may be justified without reference to the content of any initiative petitions: the rule, among other things, "afford[s] the voters freedom of choice and prevent[s] 'logrolling' or the combining of unrelated proposals in order to secure approval by appealing to different groups which will support the entire proposal in order to secure some part of it although perhaps disapproving of other parts." And finally, this is not a law that was adopted by the government because of disagreement with the message of any initiative petition.

*Id*. at 447 (citations omitted).  The Sixth Circuit explained:

> Ohio's single-subject rule does not prohibit certain types of constitutional amendments based on the topics or ideas contained in those amendments. … [W]hether Plaintiffs violate Ohio's single-subject rule depends not on what they say, but simply on where they say it—in one initiative petition or in two.

*Id*. at 448.

The Sixth Circuit continued that "[b]ecause Ohio's single-subject rule is content neutral," it would not apply strict scrutiny, but would "apply the more flexible *Anderson–*

---

[5] Plaintiffs also assert as-applied First Amendment challenges against the Portage County Board of Elections and Defendant-Secretary based on their application of Ohio's law to Plaintiffs' decriminalization initiatives.

*Burdick* framework which requires us to weigh the competing interests of Plaintiffs and Defendants." *Id*.

Had Ohio's law been content-based, in contrast, the analysis would have changed dramatically. Strict scrutiny would have been employed. For example, in a case the Sixth Circuit heavily relied upon, *Biddulph v. Mortham*, 89 F.3d 1491, 1493, 1500 (11th Cir. 1996), the Court sustained as content-neutral Florida's requirements that explanatory statements not exceeding 75 words and titles not exceeding 15 words be included with initiatives. It cautioned, however, that it "would be concerned about free speech and freedom-of-association rights were a state to enact initiative regulations that were content based or had a disparate impact on certain political viewpoints." *Id*. at 1500. "The restriction at issue in this case is not subject to strict scrutiny," the Court concluded, because the plaintiff "does not contend that Florida's procedures disparately impact a particular viewpoint or are content-based." *Id*.

Ohio's delegation of decision-making authority to local elections boards depends on content. Local elections boards are charged with reviewing the subject matter of initiatives to assess whether they are "within the initiative power." They are allowed, in their discretion, to pick and choose based on whether they believe an initiative addresses "administrative" matters or "exceeds" local power. To use the present case as an example, the Portage County Board of Elections rejected Plaintiffs' initiative because it addressed "administrative" matters. No other local elections board agreed; at least three certified identical language to local ballots.

In *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015), Justice Thomas's majority opinion reiterated the distinction between content-based and content-neutral restrictions on speech:

> Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. This commonsense

13

meaning of the phrase 'content based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys. Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.[6]

Applying this commonsense approach to the sign code at issue, Justice Thomas found it plainly and facially content-based:

> It defines 'Temporary Directional Signs' on the basis of whether a sign conveys the message of directing the public to church or some other 'qualifying event.'  It defines 'Political Signs' on the basis of whether a sign's message is 'designed to influence the outcome of an election.'  And it defines 'Ideological Signs' on the basis of whether a sign 'communicat[es] a message or ideas' that do not fit within the Code's other categories.

*Id*.

Using this same commonsense approach here, it is evident that Ohio's delegation of authority to local boards of elections relies on content.  Ohio's local elections boards inquire of the "subject matter" of initiatives and search for their "function or purpose." An initiative serving "administrative" goals or "exceeding the scope" of local governmental power is improper. If H.B. 463 enlarges local elections boards' authority, they have even more discretion any initiative that they deem is not "within the initiative power" may be excluded.[7]

---

[6] Justice Thomas added in *Reed* that the Court's "precedents have also recognized a separate and additional category of laws that, though facially content neutral, will be considered content-based regulations of speech: laws that cannot be " 'justified without reference to the content of the regulated speech,' " or that were adopted by the government "because of disagreement with the message [the speech] conveys." *Id*. (citation omitted).

[7] Reinforcing this conclusion is the fact that local elections boards are rendering opinions about the law. Legal decision-making is necessarily subject- and content-based.  Indeed, the Second Circuit in *Velasquez v. Legal Services Corp*., 164 F.3d 757, 769 (2d Cir. 1999), ruled that legal argumentation is view-point based, a conclusion that was ratified by the Supreme Court in *Legal Services Corp. v. Velasquez*, 531 U.S. 533 (2001) (holding that restriction on lawyer's challenge to federal entitlement program violated the First Amendment).

Because Ohio's law requires that local boards look to content, the burden is on the Defendants to justify the law and their actions under strict scrutiny. They must demonstrate that the law is absolutely necessary to achieve a compelling interest.  They cannot meet that test. As Justice Fischer said, "there is no reason why elections boards cannot decide future cases under a more constrained scope of review without disruption or difficulty."

## II.     Ohio's Law is an Impermissible Prior Restraint.

Even assuming that the Defendants meet strict scrutiny, Ohio's law facially[8] fails the First Amendment for another, even more basic reason.  It is an impermissible prior restraint.

A "'prior restraint' exists when the exercise of a First Amendment right depends on the prior approval of public officials." *Déjà vu of Nashville*, 274 F.3d at 400 (citations omitted). "Any system of prior restraints comes to this Court bearing a heavy presumption against its constitutional validity." *Id.* (quoting *Freedman*, 380 U.S. at 57) (emphasis added).  In order to overcome this "heavy presumption," not only must a content-based restriction satisfy strict scrutiny, it must also satisfy the First Amendment's procedural limitations on prior restraints. In particular, the First Amendment demands that a decision-maker not possess any measure of discretion; he or she must follow pre-existing objective standards.

### A.     Ohio Has No Objective Standards.

The First Amendment's demand that licensing and permitting processes employ objective standards is long-standing and well-rehearsed.  In *Shuttlesworth v. City of Birmingham*, 394 U.S.

_____

[8] Prior restraints are subject to facial First Amendment challenges just as content-based restrictions are subject to facial First Amendment challenges. *See*, *e.g.*, *FW/PBS v. City of Dallas*, 493 U.S. 215, 223 (1990) ("Although facial challenges to legislation are generally disfavored, they have been permitted in the First Amendment context where the licensing scheme vests unbridled discretion in the decision maker and where the regulation is challenged as overbroad.").

147 (1969), for example, the Supreme Court struck down a Birmingham demonstration permit requirement because it "conferred upon the City Commission virtually unbridled and absolute power to prohibit any 'parade,' 'procession,' or 'demonstration' on the city's streets or public ways." *Id*. at 150 (footnote omitted). The Court stated:

> This ordinance as it was written fell squarely within the ambit of the many decisions of this Court over the last 30 years, holding that a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional.

*Id*. at 150-51 (footnote omitted).

In *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131 (1990), which invalidated a parade permit requirement, the Court reiterated this principle: "A government regulation that allows arbitrary application is 'inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view.'" (Citations omitted). "To curtail that risk, 'a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license' must contain 'narrow, objective, and definite standards to guide the licensing authority.'" *Id*. (citations omitted).

And in *City of Lakewood v. Plain Dealer*, 486 U.S. 750, 757 (1988), which invalidated as an impermissible prior restraint a city's permitting scheme for news racks placed on public property, the Court stated: "At the root of this long line of precedent is the time-tested knowledge that in the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." (Citations omitted). It continued:

> And these evils engender identifiable risks to free expression that can be effectively alleviated only through a facial challenge. … [T]he mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused.

*Id*.

Local elections boards, according to long-standing Ohio Supreme Court precedent, have discretion to decide which initiatives to include on ballots. This discretion is only cabined by "confusing" and "meaningless" inquiries into content and subject-matter. Ohio's standards are hardly content-neutral, objective, concrete and definite.

Further, whatever decision a local board makes is only reviewed for abuse of discretion. In *City of Lakewood v. Plain Dealer*, 486 U.S. at 771, the Supreme Court ruled that Ohio's procedure authorizing writs of mandamus was not sufficient to save an ordinance that vested discretion in an executive officer: "that review comes only after the mayor and the City Council have denied the permit. … Even if judicial review were relatively speedy, such review cannot substitute for concrete standards to guide the decision-maker's discretion."

For these same reasons, post-removal mandamus review in the Ohio Supreme Court is not sufficient to adequately cabin local boards of elections' discretion.

### B.    Ohio Does Not Employ Procedural Safeguards.

Even assuming that Ohio's law survived strict scrutiny and adequately limited the discretion of local boards of elections with concrete, objective standards, it still fails as an impermissible prior restraint. It does not incorporate the procedural safeguards mandated by the United States Supreme Court in *Freedman v. Maryland*, 380 U.S. 51 (1965).

The Sixth Circuit in *Déjà vu of Nashville*, 274 F.3d at 400, explained the procedural safeguards required of prior restraints:

> In *Freedman,* a unanimous Supreme Court found that three procedural safeguards were required for a prior restraint scheme to avoid constitutional infirmity. First, the decision whether or not to grant a license must be made within a specified, brief period, and the status quo must be preserved pending a final judicial determination on the merits. Second, the licensing scheme "must also assure a prompt judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a

17

license." Third, the licensing scheme must place the burden of instituting judicial proceedings and proving that expression is unprotected on the licensor rather than the exhibitor.

(Citations omitted).

After observing that "[l]icensing schemes in a city ordinance regulating sexually oriented businesses constitute a prior restraint that must incorporate at least the first two *Freedman* procedural safeguards," *id*. at 400-01 (citations omitted),[9] the Sixth Circuit concluded that Tennessee's common-law review process did not satisfy the first *Freedman* requirement: "Whether the common law writ of certiorari will issue is a matter of discretion. It is not issued as a matter of right." *Id*. (citation omitted). "Thus, the Ordinance, in requiring that aggrieved applicants proceed to court via a discretionary route, fails to guarantee a 'final judicial adjudication on the merits,' as required under *Freedman* 's first safeguard." *Id*.

Ohio's initiative law fails for these same reasons. Applying the first two *Freedman* requirements, Ohio law does not maintain the status quo "pending a final judicial determination on the merits." Instead, Ohio's framework allows local elections boards to upset the status quo and remove initiatives that have previously been certified.  Next, the judicial review that does come in Ohio's courts, if any, is by way of discretionary mandamus.  The Ohio Supreme Court defers to local elections boards' decisions.

Further, Ohio's mechanism fails the third *Freedman* requirement. Ohio places the burden on supporters of initiatives to challenge local elections boards' decisions.  *Freedman* requires that the burden to seek timely judicial review rests on the censor, here the local election boards.

---

[9] The Supreme Court ruled in *FW/PBS v. City of Dallas*, 493 U.S. 215, 223 (1990), that Freedman's third requirement does not apply to the licensing of adult entertainment. *See generally United States v. Frandsen*, 212 F.3d 1231, 1238-39 (11th Cir. 2000) (explaining the Supreme Court's reasoning).

### III.    Plaintiffs Are Entitled to Preliminary Relief.

"When a district court is asked to issue a preliminary injunction, it … balances four factors …: (1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction." *Vittitow v. City of Upper Arlington*, 43 F.3d 1100, 1108-09 (6th Cir. 1995).[10]

Plaintiffs are entitled to preliminary relief from both Defendants. The Portage County Board of Elections is responsible for having removed Plaintiffs' initiatives based on their subject-matter and content. Defendant-Secretary of State is charged by Ohio law with enforcing Ohio's ballot-access restrictions, including those found in the statute being challenged here.  *See* O.R.C. § 3501(M) (stating that Secretary of State has power to "[c]ompel the observance by election officers in the several counties of the requirements of the election laws"); *Rosen v. Brown*, 970 F.2d 169, 171 (6th Cir. 1992) (observing that Secretary of State "compel[s] compliance with election law requirements by election officials"). Both Defendants are proper parties and both may be subjected to this Court's enforcement powers.

### A.    Likelihood of Success

As explained above, Plaintiffs' First Amendment challenge is likely to succeed. Ohio's gatekeeper law is content-based, vests discretion in the local boards of elections, and fails to adhere to the procedural safeguards required of prior restraints.

---

[10] The substantive standard for issuing a temporary restraining order is essentially the same. *See Bryant v. Matvieshen*, 904 F. Supp.2d 1034, 1042 (E.D. Cal. 2012).

### B.      Irreparable Harm

Plaintiffs are threatened with irreparable injury because their initiatives have been removed from ballots.Any impediment on First Amendment rights, even for brief periods, causes irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Further, the November 2018 election is approaching and injunctive relief is needed on an interim basis to restore the status quo and insure the initiatives are included on the ballots.

### C.      Defendants Will Suffer No Injury

Defendants will suffer no injury should the Court enjoin the enforcement of Ohio's law. § 3503.06(C)(1)(a). Ohio has for the past several election cycles held primaries including the minor parties.  There is no evidence of any injury to voters or anyone else.

### D.      The Public Will Benefit

Preliminary relief will benefit the public because it will insure that the people in Garrettsville and Windham are allowed to practice their First Amendment rights.

### E.      No Security is Required

The Sixth Circuit has observed that security is not mandatory under Rule 65(c), and can be dispensed with in the discretion of the court. *See Moltan Co. v. Eagle-Picher Industries, Inc.,* 55 F.3d 1171, 1176 (6th Cir. 1995).  No security is needed in this case, as it threatens no financial harm to Defendants.

### <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully move the Court to issue preliminary relief.

Respectfully submitted,

s/*Mark R. Brown*
Mark R. Brown, Trial Counsel
Ohio Registration No. 81941
303 East Broad Street
Columbus, OH 43215
(614) 236-6590
(614) 236-6956 (fax)
mbrown@law.capital.edu

Mark G. Kafantaris
Ohio Registration No. 80392
625 City Park Avenue
Columbus, Ohio 43206
(614) 223-1444
(614) 300-5123(fax)
mark@kafantaris.com

## CERTIFICATE OF SERVICE

I certify that copies of the Complaint, this Motion and accompanying Memorandum in Support, and the attached Proposed Order, were filed using the Court's electronic filing system; I further certify that I e-mailed copies of each to Sarah Pierce, Associate Assistant Attorney General – Constitutional Offices, Office of Ohio Attorney General Mike DeWine, Attorney for the Secretary of State, at sarah.pierce@ohioattorneygeneral.gov, and to Christopher Meduri, Assistant Prosecuting Attorney, Portage County Prosecutor's Office, 241 South Chestnut Street, Ravenna, OH 44266, Attorney for the Portage County Board of Elections, at CMeduri@portageco.com, on this day, August 28, 2018.

s/*Mark R. Brown*
Mark R. Brown