# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **WILLIAM SCHMITT** et al. | : | CASE NO. 2:18-CV-966 |
| Plaintiffs, | : | |
| v. | : | Chief Judge Edmund A. Sargus |
| **JON HUSTED** et al. | : | Magistrate Judge Elizabeth Preston Deavers |
| Defendants. | : | <u>DEFENDANT PORTAGE COUNTY BOARD OF ELECTIONS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER/ PRELIMINARY INJUNCTION</u> |

The Defendant, members of the Portage County, Ohio Board of Elections: the late Craig M. Stephens, Patricia Nelson, Doria Daniels, and Elyane J. Cross, in their official capacities, by and through counsel, hereby respectfully submit this memorandum in opposition to Plaintiffs' motion for a temporary restraining order/preliminary injunction. As this memorandum will demonstrate this matter does not fall within the exacting scrutiny of the First Amendment to the United States Constitution.

Respectfully submitted,

*/s/ Christopher Meduri*
Christopher J. Meduri (0065072)
Assistant Prosecuting Attorney
241 South Chestnut Street
Ravenna, Ohio 44266
(330) 297-3850 telephone
(330) 297-4594 facsimile
cmeduri@portageco.com
Attorney for Defendant
Portage County Board of Elections

1

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was sent to all parties for whom counsel has entered an appearance, with service being by Fedex as well as electronically, on this 11th day of September, 2018.

*Christopher J. Meduri*
Christopher J. Meduri (0065072)
Assistant Prosecuting Attorney
For the Portage County Board of Elections

## MEMORANDUM

### I. Introduction

Initiatives and referenda are created under state law, and in the absence of a state creating a right for initiatives and referenda there is no First Amendment right under the United States Constitution for an initiative or referendum. See *Meyer v. Grant*, 486 U.S. 414, 1886 S.CT. 1886, 100 L.ed.2d 425 (1988). Ohio has established an initiative process both at the state level and for municipalities. Ohio Constitution, Article XVIII, section 3; Ohio Constitution, Article II, Section 1(f); O.R.C. 3501.11(K), O.R.C. 3501.38(M), O.R.C. 3501.39(A), O.R.C. 731.28.

In Ohio "Election officials serve as gatekeepers to ensure that only those measures that actually constitute initiatives or referenda actually are placed on the ballot." *State ex rel Walker v. Husted* 144 Ohio St.3d 36, 2015-Ohio- 3749, 43 N.E. 3d 419 at ¶ 13. The issue in this case is whether First Amendment strict scrutiny applies to what has been referred to as Ohio's "gate keeper" process in which election officials determine whether a petition is legislative action.

As this memorandum will demonstrate, Ohio law providing for election officials to serve as a type of "gatekeeper" does not fall within First Amendment strict scrutiny analysis for such is not "content-based" as that term is defined under federal case law.

### II. Brief overview

The Portage County petition circulation process is good and sound, and this case does not involve any issue regarding the circulation of petitions. However, a good place to start this discussion is with two United States Supreme Court cases that have reviewed state law regarding the circulating of petitions for signatures, which is a process the Court has described as "core political speech". *Meyer v. Grant*, 486 U.S. 414, 1886 S.Ct. 1886, 100 L.Ed.2d 425 (1988). In

3

*Meyer* the United States Supreme Court held invalid a Colorado law that prohibited paying persons for circulating petitions. The Court described that, "The circulation of an initiative petition of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change. * * * Thus, the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as political speech." *Id.* at 421.

Likewise, in *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 119 S. Ct. 636, 142 L.Ed.2d 599 (1999), the Court held that portions of the Colorado law requiring persons circulating petitions wear a badge, be registered voters, and that the names and addresses of all paid circulators and the amount paid to them be reported were provisions that violated the freedom of speech guarantee of the First Amendment. The state law provisions regarding an age requirement for circulators, six-month duration on circulation, and an affidavit provision were upheld. *Id.* at 183.

In *Buckley*, the Court noted there is "no litmus paper test" when determining "valid ballot access provisions from invalid interactive speech restrictions" and there is "no substitute for the hard judgments that must be made." *Id.* at 192. "There must be substantial regulation of elections if they are to be fair and honest and if some sort of order * * is to accompany the democratic process." *Id.* A state has "considerable leeway to protect the integrity and reliability of the initiative process as they have with respect to election processes." *Id.*

There is no issue the circulating of petitions. Rather, Plaintiff argues the Ohio initiative process as it pertains to what has been referred to as a "gatekeeper" role for election officials is subject to the exacting scrutiny of the First Amendment.

4

There is a significant difference between a local elections board merely reading a petition to determine whether the measure in general is legislative action, which is what occurred with the two municipal petitions in Portage County, compared to the situation where a state law is "content-based" as that term has been defined by the federal courts.

A pivotal question in this matter is what actually is a "content based" regulation that would fall under First Amendment strict scrutiny analysis? This will be discussed below after a brief response is made to plaintiff's references to Ohio law in its previously submitted motion.

### III.     Brief response to plaintiff's discussion of Ohio law

In its motion seeking an injunction the Plaintiff referenced several Ohio Supreme Court decisions that have been rendered over the recent years. Additionally, in one part of its motion plaintiff argues Ohio's "gatekeeper" process "'employs confusing' and 'unworkable' content based standards to limit local boards' discretion." This statement needs to be unpacked because there are two separate issues in that statement.

First, "content-based" is a term that must be defined in the manner the federal courts have done, which will be discussed below. The fact election officials need to read the petition to determine whether the proposed ordinance is consistent with state law regarding initiatives does not in and of itself mean this process is "content-based" under First Amendment jurisprudence.

By way of analogy, the process whereby the Ohio Ballot Board determines to separate a petition in two so it may comply with Ohio's one-subject rule has been held to be content neutral. *Committee to Impose Term Limits on the Ohio Supreme Court and to preclude special legal status for members and employees of the Ohio General Assembly v. Ohio Ballot Board*, 275 F. Supp. 849 (S.D. Ohio 2017) In that case, the plaintiff included an argument that "the

Ohio Ballot Board reads the petition and examines its 'content' to determine whether to divide the petition or not." *Id.* at 858. The federal district court responded to that argument as follows:

> True-the Ohio Ballot Board must read the text of the proposed constitutional amendment. But, 'content' has a particular meaning in the First Amendment context, and an analysis of 'content-based' laws shows why Plaintiffs' argument fails.

*Id.*

Thus, the fact election officials need to read the petition does not in and of itself make the process one that is "content-based" as that term is defined by the federal courts.

Second, in the absence of a state law being "content-based", if clarification is needed in the Ohio initiative process then it is the role of the Ohio Supreme Court and Ohio General Assembly to clarify or create a more efficient process. Until that time local boards of elections need to be able to rely on existing law.

A board of elections may not determine the constitutionality of a proposed ordinance. *State ex rel. Walker v. Husted,* 144 Ohio St.3d 361, 43 N.E.3d 419, 2015-Ohio-3749. However, under existing law a board of elections is to determine whether a proposed ordinance includes administrative action that may not be placed on the ballot as a legislative initiative. *State ex rel. Sensible Norwood v. Hamilton Cty. Bd. of Elections,* 148 Ohio St.3d 176, 2016-Ohio-5919, 69 N.E.3d 696.

One of the cases referenced by the Plaintiff is the 2018 case of *State ex rel. Humprakob v. Mahoning County Bd. of Election,* 2018-Ohio-1602. Plaintiff notes an opinion from one justice who concurred in that judgment only, where that justice's opinion was for Ohio case law on the matter to be overruled. *Id.* at ¶ 42.

In *Humprakop*, a proposed Youngstown charter amendment was presented to the board of elections, which did not include the provision for private citizens to be able to file suit acting

6

"as a private attorney general." *Id.* at ¶ 7. The Ohio Court in the *Flak* case upheld the board of elections' decision not to place a proposed Youngstown charter amendment having such a provision on the ballot. In granting a writ of mandamus in the *Humprakop* case, the *per curiam* decision of the Ohio Court noted that, "[s]ignificantly, the offending provision in *Flak* is not included in the proposed charter amendment now before us, and the board offers no clear support for its conclusion that relator's current proposal is beyond the scope of the city's legislative power. * * * ." *Id.*

In *State ex rel. Flak. v. Betras*, 152 Ohio St.3d 244, 2017-Ohio-8109, the Ohio Supreme Court discussed the following:

> It is fair to say that it is sometimes difficult to distinguish between a provision that a municipality is not authorized to adopt by legislative action (something an elections board may determine per *Sensible Norwood*) and one that is simply unconstitutional (something an elections board may not determine, per *Youngstown*, 144 Ohio St.3d 239, 2015-Ohio-3761) But that is a line our law has drawn.

*Id.* at ¶ 14.

Thus, though the Ohio Court continues to analyze cases arising from Ohio's "gatekeeper" process, existing Ohio case law may be applied by the local elections board. In the absence of a state law being "content-based" (as defined by the federal courts), and until such time as existing Ohio law is modified, a local board of elections needs to rely upon Ohio case law, which has existed for decades regarding administrative action not constituting a legislative initiative that may be placed on the ballot.

"Administrative actions are not subject to initiative." *State ex rel. Sensible Norwood v. Hamilton Cty. Bd. of Elections*, 148 Ohio St.3d 176, 2016-Ohio 5919, 69 N.E.3d 696, at ¶ 13 (citing *N. Main St. Coalition*, 106 Ohio St.3d 437, 2005-Ohio-5009, 835 N.E.2d 1222, at ¶ 34);

see also *Donnelly v. Fairview Park*, 13 Ohio St. 2d 1, 233 N.E. 2d 500 (1968), paragraph two of syllabus.

In *Sensible Norword*, a political action committee filed initiative petitions proposing to decriminalize marijuana and hashish in a municipality. *Id.* at ¶ 4. The local board of elections voted not to place the proposed ordinance on the ballot because it enacted felony offenses, as well as "imposing administrative restrictions on the enforcement of existing laws." *Id.* at ¶ 4. In *Sensible Norword* in addition to the felony issue, the proposed ordinance would also have prohibited both the criminal and civil forfeiture of assets, as well as the suspension of a person's driver's license. *Id.* at ¶ 14 - ¶ 20.

For instance, there are several sections in R.C. Chapter 2925 that authorize license suspensions for a variety of drug offense. Likewise, R.C. 4510.05 authorizes license suspensions for violations of municipal ordinances that are substantially similar to sections of the Ohio Revised Code. *See Id.* at ¶ 17.

In *Sensible Norwood*, the Ohio Court noted that, "'The test for determining whether the action of a legislative body is legislative or administrative is whether the action is one enacting law, ordinance or regulation, <u>or</u> executing or administering a law, ordinance or regulation already in existence.' *Donelly v. Fairview Park*, 13 Ohio St.2d 1, 233 N.E. 2d 500 (1968), paragraph two of the syllabus." (Emphasis added) In *Sensible Norwood*, the Court noted that the language of the proposed ordinance "reaches far beyond enforcement of the proposed ordinance and attempts to prohibit the enforcement of existing state and federal controlled-substance laws. These provisions are clearly administrative." *Id.* at 18.

8

Regarding the present action, there proposed ordinances do not expressly provide the potential for a license suspension, which is provided for by the Ohio Revised Code for similar municipal ordinances.

Regarding the present action, the proposed ordinance provides for a zero ($0) fine. Under Ohio law, the Ohio Revised Code provides for a fine up to $150.00 for a minor misdemeanor. R.C. 2929.28(A) provides that, "in addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a misdemeanor, including a minor misdemeanor, may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section." Pursuant to R.C. 2929.28(A)(2)(v), the fine for a minor misdemeanor is "not more than one hundred fifty dollars."

Further, the Ohio Attorney General has provided an opinion that there is a difference between a monetary penalty for a criminal offense and court costs. 1997 Ohio Op. Atty. Gen. No. 97-058. This opinion provides the following:

> Court costs are fees and charges required by law to be paid to the courts for services provided during the course of a criminal or civil proceeding. As stated in Centenial Ins. Co. v. Liberty Mut. Ins. Co. 69 Ohio St. 2d 50, 51-51, 430 N.E.2d 925, 926 (1982): Costs in the sense the word is generally used in this state, may be defined as being the statutory fees to which officers, witnesses, jurors, and others are entitled fore there services in action * * * and which the statutes authorize to be taxed and included in the judgment * * * . * * * Costs did not necessarily cover all the expenses and they are distinguishable from fees and disbursements. They are allowed only by authority of statute. * * * "

*Id.* at * 3.

Thus, a sound argument may be made that based upon existing Ohio law proposed ordinances like the ones in the present action may be kept off the ballot for having portions being administrative action that do not constitute a legislative initiative. This is not a matter for the exacting scrutiny of the First Amendment. Regardless of the underlying topic of a proposed ordinance, the focus is on whether the proposed ordinance deals with administrative action.

9

For example, below are just two hypothetical situations that would lead to the same result (and there are many others that may be described).

For example, a proposed municipal ordinance whereby persons who are stopped while operating a motor vehicle in a municipality and who are found not to have insurance covering the operation would be issued a criminal citation, but would pay a zero fine, would not have their operator's license suspended, and would not pay court costs would be a proposed ordinance a board of elections may keep off the ballot under existing Ohio law as containing administrative action.

Another example would be a proposed municipal ordinance whereby a person stopped while driving a motor vehicle in the municipality and believed to be under the influence and who refuses a breath, blood or urine test, is issued a minor misdemeanor citation, would not be subject to an administrative license suspension for refusing to take a test, would be assessed a zero fine, and also zero court costs, would be administrative action for which a board of elections may determine should not proceed as an initiative to be placed on the ballot.

Like the two proposed village ordinances arising from Portage County in this case, the above hypothetical examples show that a board of elections' reading over a petition and discovering portions that are administrative action is not "content-based" as that term is used under federal case law. No message or idea is being treated differently. The reason for not placing the matter before the voters is due to the portion of the proposed ordinance having administrative action. No message or idea is being disagreed with. Free expression is not being prohibited. Reading over a petition to see if it is legislative action, and observing administrative action in the petition, does not lend itself to any type of "invidious or thought control purpose." See *Reed v. Gilbert*, 135 S. Ct. 2218, 2229, 192 L. Ed 2d 236 (2015).

10

The practical considerations and the prudence surrounding a matter such as these is not an issue in this case. In the absence of a "content-based" law, a local board of elections may in good faith rely on the existing Ohio initiative law.

Plaintiff references that other county boards of elections have placed similar initiatives before the voters. Here also, in the absence of a "content-based" law, this does not make the matter subject to First Amendment strict scrutiny. Whether a "split" among local boards helps propel either the Ohio Supreme Court or the Ohio General Assembly to further review and possibly clarify or make the state process more efficient is an important matter for Ohio under Ohio law.

## IV. Content Neutral

The parameters of Free speech jurisprudence and the need for a state to regulate its' elections determines this matter. See *Committee to Impose Term Limits on the Ohio Supreme Court and to Preclude Special Legal Status for Members and Employees of the Ohio General Assembly v. Ohio Ballot Board*, 275 F.Supp.3d 849, 855 (S.D. Ohio 2017). As referenced above, the fact that election officials read over a petition does not in and of itself mean that the matter is "content-based" and thus subject to the exacting scrutiny of the First Amendment. *Id.* at 858.

Plaintiff references the Eleventh Circuit Court of Appeals decision upholding an initiative not being placed on the Florida ballot due to the petition not being in compliance with that state's one subject rule as well as a lack of clarity in the title of the initiative. *Biddulph v. Mortham*, 89 F.3d 1491 (11th Cir. 1996). The court discussed that *Meyer* did not require "a state's initiative process to heightened First Amendment scrutiny simply because the process is burdensome to initiative proposal sponsors." *Id.* at 1497. The Court went on to note there is a

11

distinction between regulating petition circulation, which is "core political speech" and "a state's general initiative regulations" like ones being reviewed. *Id.* The court noted that,

> a state's broad discretion in administering its initiative process is subject to strict scrutiny only in certain narrow circumstances. We obviously would be concerned about free speech and freedom of association rights were a state to enact initiative regulations that were content based or had a disparate impact on certain viewpoints. We also would be troubled were a state to apply facially neutral regulations in a discriminatory matter."

*Id.* at 1500. The court also noted that, "most restrictions as state might impose on its initiative process would not implicate First Amendment concerns." *Id.*

Whether to provide for initiative and referenda to be placed before the voters arises from state law. If state law or regulation is "content-based" then First Amendment strict scrutiny becomes a factor. The term "'content' has a particular meaning in the First Amendment context * * *." *Committee to Impose Term Limits* etc, 275 F.3d. 858.

"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Gilbert*, 135 S. Ct. 2218, 2227, 192 L.Ed.2d 2218, (2015). "Content based laws" are "those that target speech based on its communicative aspect * * * ." *Id.* "The common sense meaning of the phrase 'content based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based upon the message conveyed." *Id.*

*Reed* involved a comprehensive sign code for a municipality that placed greater restrictions on temporary directional signs than upon other types of signs. One basis for the Court invalidating that particular sign ordinance was that it "singles out specific subject matter. Ideological messages are given more favorable treatment than messages concerning political candidates, which are themselves given more favorable treatment than messages announcing an

12

assembly of like minded individuals. This is a paradigmatic example of content discrimination." *Id.* at 2230.

Ohio's "gate keeper" process does not apply to any particular speech, message or idea. Ohio law providing that administrative actions are outside the parameters for an initiative is content neutral and does not fall within the exacting scrutiny of First Amendment. The proposed ordinances in the petitions for the small villages of Garrettsville and Windham in Portage County, Ohio were not placed on the ballot based upon the petitions having portions that are administrative action under existing Ohio case law.

Plaintiff's "prior restraint" argument is also untenable in this situation. The present action does <u>not</u> involve a situation where a local government is requiring a permit to be issued prior to a party engaging in constitutionally protected free speech where government officials had unbridled discretion due to a lack of any objective standard.

For instance, in *Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S. Ct. 935, 22 L. Ed. 2d 162 (1969), the Court held that an ordinance adopted by the City of Birmingham, Alabama, which required a parade permit be issued by the city commission after application was made for a permit and the city commission then determining it would be within the, public welfare, peach, safety, health, decency, good order, morals or convenience," was unconstitutional. *Id.* at 150. The Court held that an ordinance of this nature "makes the peaceful enjoyment of freedom which the Constitution guarantees contingent upon the uncontrolled will of an official." *Id.*

Likewise, in *Lakewood v. Plain Dealer*, 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988), a party wanting to place "newspaper dispensing devices" on public property had to apply to the city and obtain the approval of the mayor, who would state the reasons for either approving or denying. The circulation of newspapers is "expression or conduct commonly

13

associated with expression." In holding the city ordinance invalid, the Court held that, "The constitution requires that the city establish neutral criteria to insure that licensing decision is not based on the content or viewpoint of the speech being considered." *Id.* at 760.

The present action is not a "prior restraint' case.

---

The basis for the two proposed ordinances not being placed on the ballot was based upon there being administrative actions in those proposed ordinances. The decision was not based upon any speech, message, or idea being conveyed. Ohio case law, as provided for in cases like *Sensible Norwood,* provide the basis that administrative actions may not proceed as an initiative to be placed upon the ballot.

## V.     No basis for preliminary relief

Based upon the reasons articulated above, the plaintiff's claim cannot succeed on the merits. The state law applicable in this matter is not "content-based" and is not within First Amendment exacting scrutiny.

Since plaintiff does not have a likelihood of success on the merits irreparable harm is a moot point. However, a petition that omits the administrative actions that were part of the Windham and Garrettsville Village's proposed ordinances may be circulated at any time going forward.

If the relief is granted the board of elections will suffer harm. The proposed ordinances were not certified to be placed on the ballot. Generally, the logic and accuracy testing on all optical scanners, Express Votes, and electronic poll books would take place in the September 12 through September 17 time frame. The database needs to be set and ready for testing by September 18. Further, the finalized ballot assists in commencing the training of precinct

election officials. On September 22, ballots are sent to military and oversee voters. If this court were to order these proposed ordinances be placed on the ballot such arguably would lead to harm being sustained by the Portage County Board of Elections and the voters in Portage County in light of time, money, and additional workers.

There is no public benefit served by placing these two proposed ordinances on the ballot. These proposed ordinances deal with the enforcement of existing statutory provisions, and pursuant to the Ohio Supreme Court's holdings in cases like *Sensible Norwood*, the Portage County Board of Elections in good faith determined that these ordinances having administrative actions did not constitute a legislative initiative under Ohio law.

Wherefore, the Portage County Board of Elections respectfully request this Court deny Plaintiff's request for a temporary restraining order/preliminary injunction.

                Respectfully submitted,

                *Christopher J. Meduri*
                Christopher J. Meduri (0065072)
                Assistant Prosecuting Attorney
                241 South Chestnut Street
                Ravenna, Ohio 44266
                (330) 297-3850 telephone
                (330) 297-4594 facsimile
                Cmeduri@portageco.com
                Attorney for Defendant
                Portage County Board of Elections