**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **WILLIAM SCHMITT, JR., et al.,** | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:18-cv-966 |
| | : | |
| v. | : | Judge Edmund Sargus, Jr. |
| | : | |
| **OHIO SECRETARY OF STATE** | : | Magistrate Judge Elizabeth Deavers |
| **JON HUSTED, et al.,** | : | |
| | : | |
| Defendants. | : | |

---

**DEFENDANT OHIO SECRETARY OF STATE JON HUSTED'S MEMORANDUM
CONTRA PLAINTIFFS' MOTION FOR PRELIMINARY RELIEF**

---

## I.    INTRODUCTION

The Ohio Constitution reserves the power of initiative "to the people of each municipality on all questions which such municipality may now or hereafter be authorized by law to control by legislative action" in the manner "provided by law." Ohio Constitution, Article II, Section 1f. Ohio law governing this local initiative process delegates to the county boards of elections the obligation to ensure that each proposed initiative is within a municipality's legislative authority. *See* Ohio Rev. Code §§ 3501.11(K), 3501.38(M)(1)(a), and 3501.39(A).  Any adverse decision is assured effective and efficient review by way of a mandamus action to the Supreme Court of Ohio, the court in the best position to consider and correct any misapplication of state law by a county board of elections.  Ballot proposals that a board of elections improperly refuses to place on a ballot are subject to reversal, as the Ohio Supreme Court has ordered time and again.  *See, e.g., State ex rel. Khumprakob v. Mahoning County Board of Elections*, Slip Opinion No. 2018-Ohio-1602 (Apr. 24, 2018) (reversing board of elections and ordering proposed measure be

placed on ballot); *State ex rel. Citizen Action v. Hamilton County Bd. of Elections*, 115 Ohio St.3d 437, 2007-Ohio-5379, 875 N.E.2d 902 (same).

But Plaintiffs bypassed the state judicial review which could have afforded them the precise relief they seek—placement of their initiative measure on the ballot. Instead, they filed the instant action challenging the local initiative process under the First Amendment to the U.S. Constitution. Plaintiffs are not entitled to the preliminary relief they seek in this federal action because the challenged statutes comply with the First Amendment. As federal courts across the country have found, laws like the challenged statutes do not regulate core political speech under the First Amendment. Ohio's laws do not restrict one-on-one communication between circulators and electors. There is no content-based restriction where the State's apply equally to all subject matters. And even if this Court were to engage in *Anderson-Burdick* balancing, the State's reasonable nondiscriminatory local initiative process withstands this test. The challenged statutes ensure the State's important regulatory interests of facilitating an orderly ballot bearing initiatives that fall within a municipality's legislative authority. In short, Plaintiffs fail to establish a likelihood of success on the merits, let alone a strong likelihood of success.

Moreover, the balance of harms and the public interest weigh against granting temporary injunctive relief. Ohio has a strong interest in maintaining its appropriate ballot access laws to govern the consideration of potential initiative measures. Plaintiffs' motion for preliminary injunctive relief should be denied.

## II.     LAW AND ARGUMENT

Plaintiffs have not and cannot demonstrate a violation of their First Amendment rights that would necessitate a preliminary injunction. A temporary restraining order is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban*

*County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted). To obtain injunctive relief, a plaintiff must prove that (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable injury if the order is not granted; (3) the balance of equities tips in favor of the plaintiff; and (4) the public interest will be served by granting the order. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). The proof required to obtain a temporary restraining order is "much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). A plaintiff must establish a "strong" likelihood of success. *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012) (quotation omitted).

Here, Plaintiffs fail to establish any of these requirements. Most importantly, they fail to prove a likelihood of success on the merits of their First Amendment claim. Because Plaintiffs cannot establish their entitlement to preliminary relief, as argued below, their motion should be denied.

**A.     Plaintiffs have no likelihood of success on the merits of their First Amendment claim.**

Plaintiffs are not likely to succeed in proving that Ohio's statutes ensuring that local initiatives are properly within a municipality's legislative authority violate the First Amendment of the U.S. Constitution. *See* Ohio Rev. Code §§ 3501.11(K), 3501.38(M)(1)(a), and 3501.39(A). First, Plaintiffs do not show any violation of their First Amendment rights. The First Amendment does not entitle circulators or voters to place a particular issue on a ballot. Nor do the challenged statutes restrict Plaintiffs' ability to advocate in favor of their ballot issue or viewpoint. Second, the challenged statutes do not discriminate based on the viewpoint or content of initiative petitions but rather apply equally to all ballot proposals. Finally, because the challenged statutes do not affect any First Amendment expressive rights they are not prior

restraints on speech.  For these reasons, Plaintiffs are unlikely to succeed on their merits of their

First Amendment claims and their motion seeking preliminary relief should be denied.

### 1.    Plaintiffs' claims fail to state any First Amendment violation.

This lawsuit boils down to a single issue:  whether Plaintiffs have a First Amendment

right to place their local initiative proposal on the ballot after acquiring the required number of

signatures in support of their petition.  The answer is no.  First, courts across the country have

held that similar state regulations do not implicate the First Amendment because they do not

limit the expressive rights of petition supporters or voters, and individuals do not have a right to

place speech on the state's ballot.  Second, Plaintiffs have not alleged any conduct by Secretary

of State Husted that would support an as-applied challenge against him.  Finally, if what

Plaintiffs really seek is review of the board of election's decision not to certify their initiatives to

the ballot, this Court lacks jurisdiction to hear their claim.  Because Plaintiffs have failed to make

out a First Amendment violation as an initial matter, they have no likelihood of success on the

merits and their request for a preliminary injunction should be denied.

First and most importantly, the Supreme Court has wholesale "rejected the notion that the

First Amendment confers a right to use governmental mechanics to convey a message."

*Nev.Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 127 (2011).  Numerous courts of appeals have

rejected the notion that ballot-access restrictions on the initiative process burden core political

speech.  Recently, the Seventh Circuit squarely rejected the argument "that the ballot is a public

forum and that there is a constitutional right to place referenda on the ballot."  *Jones v.

Markiewicz-Qualkinbush*, 892 F.3d 935, 937 (7th Cir. 2018).  In that case, the court examined a

more stringent ballot-access law than Ohio's, an Illinois provision that limited the initiatives that

could appear on the ballot to the first three proposals to be certified.  Under Illinois' initiative

process, citizen-initiated proposals had to meet signature-gathering requirements that were not

applicable to municipalities. *Jones*, 892 F.3d 935 at 936. This system allowed a municipality to "get its own proposals on the ballot first—even if the real goal of those proposals is just to prevent the private ones from appearing." *Id.* at 937. The plaintiff in that case, an alderman who under a municipal proposal was term-limited from running for reelection, argued that the system barring citizen-initiated proposals from the ballot by "allowing a unit of government to fill the available slots" violated the First Amendment. *Id.*

The court firmly rejected this argument. "[T]he ballot is not a public forum" the Court found, and accordingly "the Constitution does not prevent a state from reserving the referendum process for its own communication . . . while preventing any other access." *Id.* at 938. Holding that the challenged Illinois law "does not distinguish by viewpoint or content, the answer [as to its constitutionality] depends on whether the rule has a rational basis, not on the First Amendment." *Id.* Such rules survive the rational basis inquiry because "states have a strong basis in simplifying the ballot." *Id.*

The Supreme Court has similarly made clear that "[b]allots serve primarily to elect candidates, not as fora for political expression." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997). While initiative proposal advocates and circulators have a right to "campaign, endorse, and vote" in an election, they do not have "a right to use the ballot itself to send a particularized message." *Id.* And states have a strong interest in assuring that the purpose of an election ballot is not "transform[ed] . . . to a billboard for political advertising." *Id.* at 365. In short, Plaintiffs have no First Amendment expressive rights in the state's ballot.

Second, Plaintiffs appear to argue that the challenged statutes infringe on their right to vote in favor of their ballot proposal, but this theory also misses the mark. This identical argument was recently rejected by a court resolving a First Amendment challenge to initiative

regulations similar to the one Plaintiffs advance here.  In *Port of Tacoma v. Save Tacoma Water*, the plaintiffs, a political committee, argued that a law barring initiative proposals involving matters beyond the scope of the municipality's initiative power infringed on their First Amendment rights.  App. No. 49263-6-II, 2018 Wash. App. LEXIS 1724, at \*\*16-18 (July 25, 2018).  The court rejected this argument.  The plaintiffs, the court noted, failed to "cite[ ] any authority for the proposition that one has a free speech right to have a local measure beyond the scope of the initiative power appear on the ballot."  *Id*. at \*\*17-18.  Indeed, "[t]his argument was rejected by the Ninth Circuit in *Angle v. Miller*, 673 F.3d 1122, 1133 (2012)."  *Id.* at \*17 (citing *Meyer v. Grant*, 486 U.S. 414, 424 (1988)).

This reasoning finds support in a line of precedent concluding that "[a]lthough the First Amendment protects political speech incident to an initiative campaign, it does not protect the right to make law, by initiative or otherwise."  *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1099 (10th Cir. 2006) (holding that a Utah constitutional provision imposing a supermajority requirement to pass wildlife initiatives did not implicate the First Amendment); *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 938 (7th Cir. 2018).  That is, while "the First Amendment protects public debate about legislation, it confers no right to legislate on a particular subject."  *Marijuana Policy Project v. United States*, 304 F.3d 82, 85 (D.C. Cir. 2002) (holding Board of Elections did not violate the First Amendment in rejecting a proposed initiative that would reduce marijuana penalties).  It is equally clear here, too, that Plaintiffs have no First Amendment right to place their initiative on the ballot and vote in favor of it.

Nor do Plaintiffs here assert that the challenged statutes in any way regulate or restrict their ability to communicate with others about their ballot proposal.  Indeed, the statutes do nothing to limit Plaintiffs' ability to circulate their initiative petitions or impede their ability to

disseminate their opinions.  *See* Complt., ¶¶ 18-19.  Nothing in the challenged statutes restricts one-on-one communication between circulators and prospective signers or prohibits any advocacy in favor or against issues.  The challenged statutes are a lawful exercise of the state's discretion to control ballot access and do not infringe on Plaintiffs' First Amendment rights.  *See Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 937 (7th Cir. 2018).  For these reasons, also, Plaintiffs claims are unlikely to succeed on the merits.

Plaintiffs also fail to make out an as-applied claim against Secretary of State Husted.  *See* Pl's Mot., Doc. 3, at 12, n.5.  The Secretary had no involvement in the certification process for Plaintiffs' ballot proposals, and Plaintiffs make no allegation to the contrary.  *See* Complt., Doc. 1, ¶¶ 21-23 (detailing board of election's decision not to certify initiatives to the November 2018 general election ballot).  Because Plaintiffs do not allege that the Secretary had any involvement in the application of the challenged laws to Plaintiffs' petitions, the Plaintiffs have no likelihood of success on an as-applied First Amendment challenge against the Secretary.

Finally, to the extent the Plaintiffs are challenging the substance of the board of election's decision not to certify the initiatives to the ballot, they have failed to state a claim cognizable by this Court.  Federal courts lack jurisdiction to resolve issues of state law.  *Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 588-89 (6th Cir. 2013).  A question regarding the legislative authority of Ohio municipalities under the Ohio Constitution does not present a substantial question of federal law sufficient to invoke this Court's jurisdiction.  *Id*.  If Plaintiffs are seeking review of the board's determination that their initiatives do not fall within the legislative authority granted to Ohio municipalities, their state law claims must be resolved by the Ohio Supreme Court; this Court cannot grant the relief they seek.  On any theory, Plaintiffs have failed to establish a likelihood of success on the merits of their claims.

> **2.** **Even engaging Plaintiffs' arguments, strict scrutiny is not the appropriate standard because the challenged laws are not viewpoint or content-based restrictions on speech.**

Plaintiffs argue that the State discriminated against certain viewpoints or content in passing statutes that ensure that only ballot issues that fall within a municipality's legislative authority reach the ballot. But on this count also, Plaintiffs are unlikely to succeed on the merits because they are legally incorrect: the statutes do not constitute content-based restrictions or prior restraints on protected speech. The Sixth Circuit's recent holding in this area confirms that nondiscriminatory restrictions on the initiative process are constitutionally sound. *Comm. to Impose Term Limits on the Ohio Supreme Court v. Ohio Ballot Bd.* ("*CITL*"), 885 F.3d 443, 448 (6th Cir. 2018) (requirement that initiative petitions contain only a single subject and authorizing the Ohio Ballot Board to separate multiple subjects into separate petitions was content-neutral and did not violate the First Amendment); *see also Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 297 (6th Cir. 1993) ("Because the right to initiate legislation is a wholly state-created right, we believe that the state may constitutionally place nondiscriminatory, content-neutral limitations on the plaintiffs' ability to initiate legislation.") Ohio Rev. Code §§ 3501.11(K), 3501.38(M)(1)(a), and 3501.39(A) easily pass constitutional muster because the laws do not discriminate on the basis of content or viewpoint. Instead, the statutes uniformly apply to all boards of elections' review of all initiative petitions without regard to topic.

This conclusion is not disturbed by Plaintiffs' reliance on unrelated cases. Initially, Plaintiffs' reliance on the sign regulation case *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) is misplaced. *Reed* involved a municipality's sign code provision that expressly prohibited the display of outdoor signs without a permit. *Reed*, 135 S.Ct. at 2224-25. Exempted from the prohibition were 23 categories of signs, including "Ideological Sign[s]," "Political Sign[s]," and "Temporary Directional Signs Relating to a Qualifying Event." *Id*. For these categories, the code sections

specified the locations where such signs could be permissibly displayed and their permissible sizes. *Id.* The effect of this provision imposed more stringent restrictions on signs directing the public to a meeting of a non-profit group. Accordingly, the restrictions in the challenged provisions applied differently depending entirely on the communicative content of the sign. These content-based regulations of speech could not survive strict scrutiny review. *Id.* at 2230-31.

The challenged statutory requirements here are not content-based regulations within the meaning of *Reed*. Plaintiffs argue this statutory scheme "relies on content" because "local elections boards inquire of the 'subject matter' of initiatives and search for their 'function or purpose.'" Pl's Mot., Doc. 3, at 14. But the Sixth Circuit rejected an analogous argument in *CITL* where plaintiffs argued that the Ohio Ballot Board's review of statewide initiative petitions to determine if they addressed numerous subjects was based on the content of the proposal. 885 F.3d 443, 447 (6th Cir. 2018). The separate-petition requirement, the Court held, was content-neutral because "[i]t applies to all initiative petitions, no matter the topic discussed or idea or message expressed." *CITL*, 885 F.3d at 447. Akin to the Sixth Circuit holding in *CITL*, the statutes challenged here apply regardless of the message conveyed in the initiative petition.

Even the case Plaintiffs cite acknowledges that the mere fact that petition language has to be considered does not raise the specter of a content-based restriction. Pl's Mot., Doc. 3, at 13, citing *Biddulph v. Mortham*, 89 F.3d 1491 (11th Cir. 1996). The Supreme Court cited *Biddulph* favorably to emphasize that "States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally." *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 191-92 (1999). *Biddulph* affirmed dismissal for failure to state a claim a challenge to Florida's single-subject law for initiative amendment. *Biddulph*, 89 F.3d 1491, at 1501. *Biddulph* held that "strict

9

scrutiny" did not apply to the single-subject rule because the rule was not "content-based," it had no "disparate impact on certain political viewpoints," and it did not "impermissibly burden the free exchange of ideas about the objective of an initiative proposal." *Biddulph*, 89 F.3d at 1500.

Here, every proposal is subject to the same prerequisites to ensure that only matters that are the proper subject of initiative action reach the electorate. These requirements, therefore, do not "single[] out specific subject matter for differential treatment" or restrict speech based on its function or purpose. *Cf. Reed*, 135 S.Ct. at 2223-30 (striking down an ordinance where "[i]deological messages are given more favorable treatment than messages…announcing an assembly of like-minded individuals"). Rather, the limitations on local initiative authority apply with equal force regardless of the content of a proposed petition; the requirements apply equally across all subject matters.

Next, citing to *Velazquez v. Legal Services Corp.*, 164 F.3d 757, 769 (2d Cir. 1999), *cert. denied*, 523 U.S. 903 (Mar. 5, 2001), Plaintiffs incorrectly argue that the challenged statutes require "local elections boards" to engage in "[l]egal decision-making [which] is necessarily subject- and content-based." Pl's Mot., Doc. 3, at 14, n.7. *Velazquez*, however, bears no factual or legal resemblance to the local initiative statutes challenged here. The plaintiffs in that case brought a facial challenge to a restriction prohibiting legal aid attorneys receiving federal grant funding from challenging the constitutionality of state or federal welfare statutes. *Velazquez*, 164 F.3d at 769. This restriction, the Second Circuit found, "is just such an absolute prohibition: It muzzles grant recipients from expressing any and all forbidden arguments." *Id.*, at 772. Prohibiting attorneys from questioning "the unconstitutionality or illegality of a governmental rule" is akin to restrictions "calculated to drive certain ideas or viewpoints from the

marketplace." *Id.* (internal citations and quotations omitted). As a result, the challenged restriction with its specific, content-based focus could not withstand strict scrutiny analysis. *Id.*

The challenged statutes here, however, do nothing to control or prohibit any speech by petition circulators or signers regarding any viewpoints or content. Rather, they act as a measure to ensure that the initiatives that reach the ballot fall within a local municipality's initiative authority. Such ballot control measures do not amount to a content-based restriction on speech and strict scrutiny review is therefore not appropriate.

### 3. The challenged statutes are also not a prior restraint on speech.

Because Plaintiffs' claims do not implicate any speech protected by the First Amendment, Plaintiffs cannot succeed in their claim that the challenged statutes act as a prior restraint on speech. "The term 'prior restraint' is used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.'" *Alexander v. United States*, 509 U.S. 544, 550 (1993) (citation omitted) (emphasis in original). The challenged statutes do not act as a prior restraint on circulators, who retain their ability to advocate for or against ballot proposals. And when a county board of elections rejects a petition issue from inclusion on the ballot after determining that it falls outside the municipality's legislative authority, the board does not forbid any communication about the topics addressed by that initiative; rather, the rejected initiative simply does not appear on the ballot. To the extent Plaintiffs' argue that the challenged statutes act as a prior restraint on voters' ability to vote in support of a particular ballot issue, such a right does not exist as a matter of federal law. *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1099 (10th Cir.2006); *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 938 (7th Cir. 2018).

Plaintiffs offer no authority in support of their argument that the challenged laws are a prior restraint on speech. Rather, they rely on inapposite case law involving government

regulation of expressive activity in various unrelated settings, including adult entertainment businesses (*Deja Vu of Nashville, Inc. v. Metro. Govt. of Nashville & Davidson County*, 274 F.3d 377 (6th Cir. 2001)); traditional public forums such as public roads and sidewalks (*Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1990), *Shuttlesworth v. City of Birmingham*, 394 U.S. 147 (1969), and *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 776 (1988)); and films in movie theaters (*Freedman v. Maryland*, 380 U.S. 51 (1965)). Pl's Mot., Doc. 3, at 15-18. In contrast, the election statutes challenged here do not prevent circulators or prospective voters from endorsing ballot proposals or communicating with each other or with the electorate about those proposals. The challenged statutes here simply do not affect Plaintiffs' "ability to communicate with other voters about proposed legislation." *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 297 (6th Cir. 1993).

Even if this Court were to consider Plaintiffs' prior restraint claims, Plaintiffs' characterizations of Ohio's initiative process are overstated. As Plaintiffs' case law acknowledges, Plaintiffs had recourse to seek review of the board of election's application of state law in the Supreme Court of Ohio. The Ohio Constitution vests in the Supreme Court of Ohio original and exclusive jurisdiction over mandamus challenges seeking to reverse local initiative decisions by boards of elections. Ohio Constitution, Article IV, Section 2(B)(1)(b). Court procedures enable parties to expedite briefing and decisions to meet pressing elections-related deadlines. *See* Ohio S.Ct.Prac.R. 12.08 (governing expedited election cases). The Supreme Court of Ohio reviews challenges to county boards' of elections decisions to ensure boards have not "engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions." *State ex rel. Jacquemin v. Union County Bd. of Elections*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N.E.3d 759, ¶ 9 (citation omitted). Such review has

resulted in orders that initiatives appear on ballots. Plaintiffs concede as much. Pl's Mot., Doc. 3, at 9, n.4 (citing *State ex rel. Khumprakob v. Mahoning Board of Elections*, Slip Opinion No. 2018-Ohio-1602 (Apr. 24, 2018) to note that "a local election board had refused to certify an initiative because it exceeded the city's legislative authority" and "[t]he Court ultimately disagreed")). In short, Plaintiffs had an opportunity for meaningful review of the board of election's decision and failed to exercise it.

### 4. Plaintiffs' claims will also fail under *Anderson-Burdick* review because important regulatory interests justify the challenged statutes.

Even if Plaintiffs could articulate some impairment of their expressive rights (which they cannot and have not), the challenged statutes are constitutional under the analysis set forth in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992).

States are permitted to regulate the election process because, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Burdick*, 504 U.S. 428, 433, quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974). Thus, a "more flexible standard" applies to state election laws. *Burdick*, 504 U.S. at 434. This standard requires that the court "weigh 'the character and the magnitude of the asserted injury to the rights protected by the First and the Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule[.]'" *Id.*, quoting *Anderson,* 460 U.S. 780, 788-89. In short, "when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id.*

Because the statutes regulating Ohio's local initiative process impose no severe burden, they must be upheld. As the Sixth Circuit explained in *Taxpayers United for Assessment Cuts v. Austin*, "it is constitutionally permissible for [a state] to condition the use of its initiative procedure on compliance with content-neutral, nondiscriminatory regulations that are, as here, reasonably related to the purpose of administering an honest and fair initiative procedure." 994 F.2d at 297. Recently, the Sixth Circuit employed the *Anderson-Burdick* balancing test to weigh plaintiffs' claims against the state's regulatory interests justifying the separate-petitions requirement. *CITL*, 885 F.3d at 447. Under this less-exacting form of review, "minimally burdensome and nondiscriminatory regulations are subject to a less-searching examination closer to rational basis and the State's important regulatory interests are generally sufficient to justify the restrictions." *CITL*, 885 F.3d at 448 (quoting *Anderson*, 460 U.S. at 627).

The statutes challenged here easily pass constitutional muster under this test. In the first instance and as discussed, these statutes do not impose any burden on the Plaintiffs' First Amendment rights. Even assuming these statutes might impose some minimal burden, the state has a strong interest justifying its nondiscriminatory requirements that local initiatives fall within a municipality's legislative authority. When it comes to regulations designed to ensure orderly ballots, courts have held "that states have a strong interest in simplifying the ballot." *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 938 (7th Cir. 2018); *see also Munro v. Socialist Workers Party*, 479 U.S. 189, 194-95 (1986) (noting the Supreme Court has "never required a State to make a particularized showing of the existence of voter confusion, ballot overcrowding . . . prior to the imposition of reasonable restrictions on ballot access."). These interests— simplifying the ballot to prevent ballot overcrowding and voter confusion— justify any minimal burden that Ohio law imposes on Plaintiffs' First Amendment rights.

14

And, as noted, several federal courts have analyzed more stringent restrictions on the initiative petition process than those at issue here and found them compatible with the First Amendment. *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1099 (10th Cir.2006) (holding supermajority requirement to pass wildlife initiatives did not implicate the First Amendment); *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 938 (7th Cir. 2018) (upholding limit of three initiative proposals per ballot under First Amendment); *Marijuana Policy Project v. United States*, 304 F.3d 82, 85 (D.C. Cir. 2002) (upholding statutory exclusion from ballot initiative process petitions that regulate marijuana possession penalties).

**B.     The balance of harms and the public interest also favor the denial of Plaintiffs' motion for preliminary relief.**

To be entitled to preliminary relief, a plaintiff must establish a "strong" likelihood of success on the merits. *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012) (quotation omitted). "[W]hen a party seeks a preliminary injunction on the basis of a potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor." *Jones v. Caruso*, 569 F.3d 258, 265-66 (6th Cir.2009) (citing *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)).  This is "because the questions of harm to the parties and the public interest cannot be addressed properly in the First Amendment context without first determining if there is a constitutional violation, the crucial inquiry often is . . . whether the [regulation] at issue is likely to be found constitutional."  *Id.* (internal citations omitted).  Where, as here, plaintiffs have failed to make that showing, even slight harm to the Defendants weigh heavily against preliminary relief.  *Id.*; *see also Ohio Council 8 Am. Fedn. of State v. Brunner*, 462 F.App'x 557, 559 (6th Cir. 2012).

And preliminary relief in this case would present harm both to the Defendants and the public interest.  First, the State's regulatory interest of regulating the ballot process would fall by

the wayside if Plaintiffs are permitted to undermine the challenged limitations on local legislative authority.  *See Munro v. Socialist Workers Party*, 479 U.S. 189, 194-95 (1986); *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 938 (7th Cir. 2018) (noting "states have a strong interest in simplifying the ballot").  And, as the Sixth Circuit has underscored, state statutes in this area serve "important regulatory interests."  *CITL*, 885 F.3d at 448 (citation omitted).  They should not be displaced by federal courts on complaints of this nature.

Second, as discussed above, Plaintiffs have failed to seek recourse in the Supreme Court of Ohio to challenge the board of election's application of state law, recourse that they themselves acknowledge could have been available and effective.  *See* Pl. Mot., Doc. 3, at 15. To the extent Plaintiffs are challenging the substance of the board of election's determination, they have failed to allege any irreparable First-Amendment harm.  *Id*., at 20.

## III.    CONCLUSION

For these reasons, Defendant Secretary of State Jon Husted respectfully requests that the Court deny Plaintiffs' request for preliminary relief.

Respectfully submitted,

MIKE DeWINE
OHIO ATTORNEY GENERAL

/s/ *Renata Y. Staff*
SARAH E. PIERCE (0087799)*
   *Lead Counsel*
RENATA Y. STAFF (0086922)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
sarah.pierce@ohioattorneygeneral.gov
renata.staff@ohioattorneygeneral.gov

*Counsel for Defendant*
*Ohio Secretary of State Jon Husted*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 12, 2018, the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  I further certify that a copy of the foregoing has been served by e-mail or facsimile upon all parties for whom counsel has not yet entered an appearance and upon all counsel who have not entered their appearance via the electronic system.

/s/ *Renata Y. Staff*
RENATA Y. STAFF (0086922)
Assistant Attorney General