UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SCHMITT**, et al.,

                Plaintiffs,

v.                                     **CASE NO.2:18-cv-966**

                                        Judge Edmund Sargus, Jr.

                                        Magistrate Judge Elizabeth Deavers

**HUSTED**, et al.,

                Defendants.

_____/

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSES
TO MOTION FOR PRELIMINARY INJUNCTION
AND/OR TEMPORARY RESTRAINING ORDER**

Defendants[1] claim that the First Amendment has no application to this case. *See* Defendant-Husted's Response at 4. "[C]ourts across the country," Defendants also assert, "have held that similar state regulations do not implicate the First Amendment" and have survived constitutional scrutiny. *Id*. Neither of these propositions is true. In fact, courts across the country have ruled the exact opposite; they have uniformly ruled that the First Amendment applies to restrictions -- like those in Ohio -- that have been placed on initiatives; and courts have invalidated pre-election executive clearance mechanisms like those in Ohio under the First Amendment. In fact, <u>no</u> <u>court</u> has sustained a gatekeeper mechanism like that found in Ohio.

---

[1] This Memorandum is meant to Reply to both Defendant-Husted's and Defendant-Portage County Board of Elections' separate Responses. For sake of brevity, Plaintiffs refer to the Defendants, all sued in their official capacities, collectively here as "Defendants."

I.  **The First Amendment Applies to Initiatives.**

Defendants make much of the fact that there is no First Amendment right to initiative. *See* Defendant-Husted's Response at 3.[2] Because there is no right to initiative, their argument goes, the First Amendment is not implicated in this case. "The First Amendment does not entitle circulators or voters to place a particular issue on a ballot." *Id*. Defendants' assertion is a straw man, one intended to scare the Court away from this case. It cannot succeed, for if it did many elections of different stripes could be easily immunized from First Amendment scrutiny.

Consider elections of cabinet-level positions. There is no First Amendment right to vote for a state attorney general, treasury secretary, or a secretary of state. But once a state (like Ohio) chooses to present these offices to the people for popular election, the First Amendment fully applies. Could a state prohibit a candidate for one of these offices from including in her campaign platform certain subjects or topics? Could it go farther and require that a candidate's platform be pre-judged by elections officials for subjective propriety? Of course not. "Well, we did not have to allow the officer to be elected in the first place, so the First Amendment does not apply," would not pass the laugh test. The fact that government need not make something available at all does not justify its use of content-based rules and unfettered executive discretion.[3]

Defendants further argue, relying on *Nevada Commission on Ethics v. Carrigan*, 564 U.S. 117, 127 (2011), that the First Amendment does not apply here because the "Supreme Court

---

[2] Plaintiffs have never argued there is such a right.

[3] To use another example, there is no First Amendment right to place one's news rack on a public sidewalk. Cities are free to ban the practice if they want. But once they decide to allow news racks on public sidewalks, they must abide by the First Amendment. They cannot constitutionally vest discretion in executive agents to choose the permitted news racks. *See City of Lakewood v. Plain Dealer*, 486 U.S. 750, 757 (1988).

has wholesale 'rejected the notion that the First Amendment confers a right to use governmental mechanics to convey a message.'"

The Defendants' proposition is sound as far it goes, but by adding "wholesale" Defendants grossly overstate the argument's reach. It is true that government itself has the power to speak and may limit some of its "mechanics" to the speech it prefers. Thus, state-issued license plates, *see Walker v. Texas Division, Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239 (2015), and monument displays in public parks, *see Pleasant Grove City v. Summum*, 555 U.S. 460, 467-68 (2009), need not convey private messages. But this is a far cry from saying that both public parks and government-issued license plates are "wholesale" free from First Amendment scrutiny. Public parks obviously are traditional settings protected by the First Amendment. Even license plates issued by governments are sometimes subject to First Amendment constraints. *See Wooley v. Maynard*, 430 U.S. 705 (1977) (holding that state could not criminalize covering "Live Free or Die" on license plate). The constitutional problem is a nuanced one; there is no wholesale answer.[4]

As for *Carrigan*, the Supreme Court merely ruled (as it has on many occasions, *see*, *e.g.*, *Garcetti v. Ceballos*, 547 U.S. 410 (2006)) that to the extent a government official acts as a governmental official, he is government. His speech is not his own. It is not protected by the First Amendment: "a legislator's vote is the commitment of his apportioned share of the legislature's power to the passage or defeat of a particular proposal. The legislative power thus committed is not personal to the legislator but belongs to the people; the legislator has no

---

[4] Thus, an initiative proposed by the state legislature, for example, might fall outside First Amendment protections. One proposed by private citizens plainly does not.

personal right to it." 564 U.S. at 125-26. The distinction is as old as the private versus state action distinction that separates constitutionally restricted conduct from everything else.[5]

Plaintiffs' initiative in the present case is the equivalent of a candidate running for office. Even though the state need not allow a candidate to run for that office -- it can decide the office is appointed -- once it opens the office to election it must comply with the terms of the First Amendment. The candidate is protected by the First Amendment. *See*, *e.g.*, *Nwanguma v. Trump*, __ F.3d __, 2018 WL 4323966 (6th Cir., Sept. 11, 2018) (holding that presidential candidate is protected by the First Amendment). The same is true with initiatives. Defendants' argument that Ohio's initiative process constitutes government speech akin to a legislator voting for a bill therefore must be rejected. It ignores distinctions between private and governmental action, ignores Supreme Court and Sixth Circuit precedent to the contrary, and even ignores distinctions found in the Supreme Court's forum jurisprudence, as illustrated below.

In *Miller v. City of Cincinnati*, 622 F.3d 524 (6th Cir. 2010), the Sixth Circuit invalidated under the First Amendment a city's rule (Administrative Regulation # 5) that delegated discretion to "Department Heads" to decide who should be allowed to solicit in city buildings. In doing so, the Sixth Circuit rejected the city's argument that speech inside its buildings necessarily was government speech free from First Amendment scrutiny:

> Although government speech may involve private individuals, the connection between the events that take place inside city hall under Administrative Regulation # 5 and any

---

[5] If Defendants are correct, a candidate for office – because she is using "governmental mechanics" – is necessarily a state actor devoid of First Amendment protection. Of course, this is not true, as both the Supreme Court and the Sixth Circuit have repeatedly recognized. A candidate (even an incumbent) is not a state actor simply because she is running for office. *See Libertarian Party of Ohio v. Husted*, 831 F.3d 382. 396 (6th Cir. 2016) (holding that Kasich Campaign was not engaged in state action).

> official government views is simply too attenuated. As we have noted, sponsoring city officials need not be involved directly in the activities that take place in city hall. Moreover, <u>no one can reasonably interpret a private group's rally or press conference as reflecting the government's views simply because it occurs on public property</u>. … Thus, we conclude that the doctrine of government speech does not prevent applying First Amendment scrutiny in this case.

*Id*. at 537 (emphasis added).

Likewise, no one would reasonably interpret a popular initiative as reflecting the government's views simply because it appears on a ballot. Initiatives are not the product of governmental action. They flow from the people. They therefore retain their First Amendment protections.

## II. No Gateway Mechanism Like Ohio's Has Survived First Amendment Scrutiny.

Contrary to Defendants' argument, <u>no</u> <u>court</u> has sustained an executive pre-election clearance mechanism for initiatives like the one used in Ohio. One reason for this is that few states delegate this kind of discretion to executive officials to definitively make decisions. Some states authorize executive officials (like attorneys general) to render "non-binding advice on the form or substance" of initiatives to their proponents. *See* Scott L. Kafker & David A. Rusccol, *The Eye of the Storm: Pre-election Review By The State Judiciary of Initiative Amendments to State Constitutions*, 2012 MICH. ST. L. REV. 1279, 1291 (footnotes omitted). Others limit executive pre-election review to "the form of the amendment …, deferring questions of substance" until after elections. *Id*. (footnote omitted). Others "require a more searching review to ensure that the amendment meets subject-matter and other substantive and procedural requirements," but do this "before time, energy, and money are spent on gathering signatures." *Id*.

There are some, like Ohio, that authorize executive agents to make initial decisions about whether "a proposed amendment, or its title or summary" is proper, but these states often provide for "expedited judicial review." *Id.* (footnote omitted). Many states, like Nevada, California, and Washington, simply prohibit elections officials altogether from addressing whether the content or subject of initiatives is proper. *See Las Vegas Taxpayer Accountability Committee v. City Council of City of Las Vegas*, 125 Nev. 165, 174 & n.2, 208 P.3d 429, 435 & n.2 (2009) (holding that Nevada election officials do not have this authority and noting that neither do officials in California and Washington) (citations omitted).

States -- like Ohio -- that vest discretion in elections officials to decide whether their subjects are proper are apparently rare. And those states that do (or did) exist, like Maine and New York, have found their processes seriously and successfully challenged under the First Amendment. *See Wyman v. Secretary of State*, 625 A.2d 307, 309 (Me. 1993); *Herrington v. Cuevas*, 1997 WL 703392 * 9 (S.D.N.Y. 1997) (Sotomayor, J.) (reviewing New York's law which allowed election clerks to decide whether a popular measure presented a proper subject and directing the parties to brief whether the law was content-based and subject to strict scrutiny).[6]

In *Wyman*, Maine had done essentially what Ohio does now; it delegated to its secretary of state the authority to decide whether the subject of an initiative was proper before allowing it on the ballot. Using this gateway mechanism, a citizen (Wyman) submitted an initiative only to have it rejected by the secretary based on its content: "the Secretary informed Wyman that he

---

[6] The *Herrington* case was eventually dismissed as moot on March 6, 2002 after being reassigned to another judge. No decision was ever rendered.

was disapproving circulation to the voters of the petition form as presented because the initiative if enacted would, in his opinion and that of the Attorney General, be unconstitutional." *Id*.

The Supreme Judicial Court of Maine ruled that vesting this sort of authority in an executive officer violated the First Amendment:

> The potential invalidity of the subject of an initiative petition, however, is not a sufficient reason to pre-empt the petition process itself or to bar the discussion of the issues raised in the petition. Moreover, the Secretary's concerns of voter confusion and wasted resources if potentially invalid questions are included on the ballot are not implicated during the initial signature collection phase. <u>Because the petition process is protected by the first amendment and the Secretary has advanced no compelling interest in executive oversight of the content of the petition</u> prior to its circulation for signature, his refusal to furnish the petition form based on the content of the proposed legislation impermissibly violated Wyman's rights protected by the first amendment.

*Id*. at 312 (emphasis added).

The *Wyman* court's conclusion is far from surprising; both the Supreme Court and the Sixth Circuit have repeatedly ruled that popular initiatives are fully covered by the First Amendment. In *City of Cuyahoga Falls v. Buckeye Community Hope Foundation*, 538 U.S. 188, 196 (2003), for example, the Supreme Court emphasized the importance of popular measures like initiatives and referenda:

> In assessing the referendum as a "basic instrument of democratic government," we have observed that "[p]rovisions for referendums demonstrate devotion to democracy, not to bias, discrimination, or prejudice." And our well established First Amendment admonition that "government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable," dovetails with the notion that all citizens, regardless of the content of their ideas, have the right to petition their government.

*See also Meyer v. Grant*, 486 U.S. 414, 421-22 (1988) (stating that "circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech'."); *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 186 (1999) ("[p]etition circulation … is 'core political speech,'").

In *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 296-97 (6th Cir. 1993), the Sixth Circuit stated that although "the right to initiate legislation is a wholly state-created right," the First Amendment still restricts states to placing "nondiscriminatory, content-neutral limitations on the plaintiffs' ability to initiate legislation."  In *Committee to Impose Term Limits on the Ohio Supreme Court and to Preclude Special Legal Status for Members of and Employees of the Ohio General Assembly v. Ohio Ballot Board*, 885 F. 3d 443, 446 (6th Cir. 2018), far from following Defendants' advice and ignoring the First Amendment, the Sixth Circuit again employed traditional First Amendment standards to sustain Ohio's single-subject rule for initiatives.[7]

For the same reason Maine's pre-election mechanism failed First Amendment scrutiny, Ohio's gatekeeper mechanism also fails. Ohio has "no compelling interest in executive oversight of the content of the petition" prior to an election.  Decisions regarding the legality of the subject matter of an initiative may be adequately addressed in the same fashion that questions about the legality of statutes are addressed -- through subsequent judicial review.  Ohio is free to limit initiatives to particular subjects, but it cannot vest discretion in executive officials to select which subjects are proper and which are not.[8]

---

[7] Once the Sixth Circuit in *Ohio Ballot Board* had concluded that the single-subject rule was content-neutral and passed intermediate scrutiny, there was no reason to address procedural safeguards.  After all, the content-neutral rule was cabined by a single, content-neutral, concrete standard -- that is whether the initiative contained a single subject. *Id*. at 448. In *Thomas v. Chicago Park District*, 534 U.S. 316, 322 (2002), the Supreme Court ruled a content-neutral permit scheme that employs objective criteria (rather than leaving discretion in the decision maker) need not employ *Freedman*'s procedural safeguards.

[8] It is important to note what Plaintiffs do not claim in this case. Plaintiffs do not challenge Ohio's ability to limit the subject matter of its initiatives. What Plaintiffs challenge is how Ohio has chosen to implement this otherwise lawful task.

So what about the half-dozen or so cases Defendants claim have sustained laws like Ohio's? Simply put, they do not exist. Not one of the cases cited by Defendants sustains a gatekeeper mechanism like Ohio's. They have either sustained content-neutral laws that restrict the number of subjects or number of initiatives on ballots, addressed whether governments may vertically apportion powers between superior and inferior governmental bodies (they can), or have sustained procedures that are significantly different from those found in Ohio.[9]

*Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935 (7th Cir. 2018), which is relied upon heavily by Defendants, *see* Defendant-Husted's Response at 4-5, sustained a content-neutral restriction on the number (three) of initiatives that may be certified to a ballot.[10] The court's analysis proves that the court was following the First Amendment as opposed to rejecting it. The

---

[9] In this last category rests *Wirzburger v. Galvin*, 412 F.3d 271 (1st Cir. 2005), which is not relied upon by Defendants -- probably because it ruled the First Amendment applies to initiatives. There, the court sustained Massachusetts' pre-election review process for initiatives that vested initial review authority in the state attorney general. That process was different from Ohio's in three important ways: (1) the attorney general was not given discretion; (2) the excluded subjects were specifically identified in a finite list, "including, *inter alia,* appointment or compensation of judges; the powers, creation or abolition of the courts; and specific appropriation of state money," *id.* at 275; and (3) the executive decision was subject to immediate, de novo judicial review before the election. *See Mazzone v. Attorney General*, 432 Mass. 515, 520, 736 N.E.2d 358, 364 (2000) ("Our review of that certification is de novo.") (citing *Yankee Atomic Electric Co. v. Secretary of the Commonwealth*, 403 Mass. 203, 207, 526 N.E.2d 1246 (1988)). After ruling that the law was subject to First Amendment scrutiny, the court concluded it was content-neutral and passed intermediate scrutiny. *Id.* at 276. Although Plaintiffs disagree that the law there was content-neutral (this portion of the court's decision does not likely survive the Supreme Court's decision in *Gilbert*), the procedural aspect of the law -- authorizing immediate, de novo judicial review -- arguably satisfies *Freedman*'s procedural safeguards.

[10] *Initiative & Referendum Institute v. Walker*, 450 F.3d 1082 (10th Cir. 2006), relied upon by Defendants, also involved a content-neutral requirement (supermajority) for initiatives. So did *Angle v. Miller*, 6673 F.3d 1122 (2012) (holding that state may require initiatives to be supported by sufficient signatures from three congressional districts). Because both involved concrete, objective, numerical demands, there was no discretion vested in executive officials.

court concluded that because the law – like Ohio's single subject rule – was content-neutral, it survived scrutiny: "Because the Rule of Three does not distinguish by viewpoint or content, the answer depends on whether the rule has a rational basis, not on the First Amendment." *Id*. at 938. Had the restriction been content- or viewpoint-based, of course, the analysis would have differed. Since this content-neutral rule included a concrete, objective, content-neutral standard ("three"), moreover, the question of procedural safeguards under *Freedman v. Maryland* was not even raised.[11]

*Marijuana Policy Project v. United States*, 304 F.3d 82 (D.C. Cir. 2002), also relied upon by Defendants, *see* Defendant-Husted's Response at 6, proves only that government may vertically apportion powers within its branches. Far from deciding whether an executive gatekeeper mechanism for initiatives constitutes an impermissible prior restraint,[12] the court addressed only whether "the First Amendment restrict[s] Congress's ability to withdraw the District [of Columbia's] authority to reduce marijuana penalties?" *Id*. at 85. "Congress [under the Barr Amendment] denied the District authority to 'enact ... any law' reducing penalties associated with possession, use, or distribution of marijuana." *Id*. at 83. The challengers had claimed that whether pre- or post-election, Congress was precluded by the First Amendment from restricting the District's power to regulate marijuana. The court understandably disagreed: "The Barr

---

[11] In *Thomas v. Chicago Park District*, 534 U.S. 316, 323 (2002), the Supreme Court ruled that where a content-neutral prior restraint is guided by concrete, objective standards -- thus denying an executive officer any discretion -- *Freedman*'s procedural safeguards need not be satisfied.

[12] The plaintiffs in *Marijuana Policy Project* did not challenge any discretion vested in executive officers to pick and choose initiative topics; they instead argued that a well-defined subject could not be reserved to the Congress. Because the prohibited subject in Marijuana Policy Project was well-defined, it left no discretion at all in ballot officials. As in *Jones*, procedural safeguards were irrelevant.

Amendment merely requires that, in order to have legal effect, their [i.e., voters'] efforts must be directed to Congress rather than to the D.C. legislative process." *Id.* at 270.[13]

*Port of Tacoma v. Save Tacoma Water*, 422 P.3d 917 (Wash. App. 2018), does not support Defendants' claim that pre-election executive review of initiatives is permissible under the First Amendment, either. *See* Defendant-Husted Response at 6. It cannot because Washington denies to executive officials the authority to decide what is and what is not a proper subject for initiatives. The question in *Save Tacoma Water* was whether a court could, consistent with the First Amendment, conclude before an election that an initiative is improper. *Id.* at 920.[14]

In *Save Tacoma Water*, a pre-election judicial challenge to an initiative was bought by groups who wanted to keep an initiative off a ballot. *Id.* They were properly saddled with the burden of going to court. More importantly, the court there was not deferring to a pre-election executive decision; it was acting de novo. Given this procedural posture, the court in *Save Tacoma Water* was perfectly justified in addressing whether the initiative at issue fell outside the scope of the state's initiative process. States have the power, just like the Congress, to restrict initiatives to select subjects and topics.

Plaintiffs here concede that Ohio can constitutionally limit its initiative to certain topics. Ohio may likewise divide powers between state government and its local branches. Plaintiffs' challenge here is to the way Ohio seeks to achieve this result. Ohio has chosen to delegate to executive officials discretion to make content-based decisions about which initiatives to include

---

[13] Plaintiffs here do not challenge Ohio's authority to apportion authority over any subject -- let alone marijuana -- between State and Local governments. Plaintiffs concede that Ohio has that authority, and the First Amendment does not mandate anything to the contrary.

[14] Plaintiffs do not deny that a court can, in an action instituted by a censor, do exactly that (assuming the *Freedman* safeguards are otherwise met).

on Ohio's ballots. This discretion is exercised without de novo judicial review. The election official bears no responsibility for obtaining judicial approval before the election (or even after). Ohio's content-based procedure cannot pass strict scrutiny, does not satisfy the procedural safeguards mandated by *Freedman*, and violates the First Amendment.

### III. Ohio's Law Fails Any Level of First Amendment Scrutiny Because It Fails to Provide Procedural Safeguards.

In order for Ohio's gatekeeper mechanism to survive constitutional scrutiny, Defendants must convince the Court that it is not subject to First Amendment scrutiny -- at all. That is why Defendants devote so much effort to their claim that the First Amendment does not apply. *See* Defendant-Husted's Response at 4-7. If Ohio's gatekeeper mechanism is subject to any First Amendment scrutiny -- whether because it is a content-based restriction,[15] a content-neutral measure, or a limitation on speech in a non-public forum -- it fails scrutiny. It fails because it vests discretion in executive agents. It fails because this discretion is not reviewed de novo by courts of law. It fails because the burden is not on the election boards to seek prior judicial review.

---

[15] Defendants' charge that Ohio's gatekeeper mechanism is not content-based because every "proposal is subject to the same prerequisites to ensure that only matters that are the proper subject of initiative action reach the electorate." Defendant-Husted's Response at 10 (emphasis added). They therefore admit that an election official's decision is and must be subject-based. This is just another way of saying content-based. In the event, the principal problem is that election officials have discretion to make this call, a fact that has been authoritatively recognized by the Ohio Supreme Court and the Portage County Board of Elections. *See* Verified Complaint, RE 1 at PAGEID # 8 & Exhibit 4, RE-1-4 at PAGEID # 35 ("the Board of Elections, in its discretion, has chosen not to certify these issues to the ballot"). At best, Defendants argue only that "a sound argument may be made based upon existing Ohio law proposed ordinances like the ones in the present case may be kept off the ballot …." Portage County Board of Elections' Response at 9 (emphasis added). They do not and cannot claim that objective factors dictated the decision.

The Supreme Court's prior restraint requirements apply equally to content-based restrictions, content-neutral time place and manner measures, and limitations in non-public fora. With all of the above, the state must limit the discretion afforded executive agents with concrete, objective standards; it must provide for prompt, de novo judicial review; *see Bose v. Consumers Union, Inc.*, 466 U.S. 485, 508 n.27 (1984) ("The simple fact is that First Amendment questions of 'constitutional fact' compel this Court's de novo review."); *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 892 (6th Cir. 2000) ("[T]heoretical possibility of expeditious judicial review is not constitutionally sufficient. A guarantee of prompt judicial review is necessary ...."); *Universal Film Exchange, Inc. v. City of Chicago*, 288 F. Supp. 286,  (N.D. Ill. 1968) ("Since *Freedman v. State of Maryland*, it has been clear that only a de novo judicial determination that a motion picture is unprotected by the First Amendment can justify a valid final restraint of a motion picture in advance of exhibition.");[16] and it must place the burden on the censoring officials to seek that review.

### A. Assuming that Ohio's Law is a Content-Neutral Time, Place and Manner Restriction, It Fails First Amendment Scrutiny Because It Fails to Include Procedural Safeguards.

Many of the Supreme Court's prior restraint cases involve content-neutral time, place and manner restrictions. In *City of Lakewood v. Plain Dealer*, 486 U.S. 750, 757 (1988), for example, the city restricted news racks on public property. There was no claim that the city restricted news racks based on content.  Rather, the restriction was a content-neutral time, place and manner

---

[16] *See* Henry P. Monaghan, *First Amendment "Due Process,"* 83 HARV. L. REV. 518, 526 (1970) ("*Freedman* requires only that the court make a separate, independent judgment on the administrative record."); Note, Allan Tanambaum, *"New and Improved": Procedural Safeguards for Distinguishing Commercial From Non-Commercial Speech*, 88 COLUM. L. REV. 1821, 1825 n.3 (1988) ("*Freedman* seems to insist on de novo judicial review.").

restriction.  Still, the Supreme Court applied its prior restraint jurisprudence to invalidate <u>how</u> the city limited news racks: "even if the government may constitutionally impose content-neutral prohibitions on a particular manner of speech, it may not *condition* that speech on obtaining a license or permit from a government official in that official's boundless discretion." *Id*. at 774.[17] *See also Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 567 (6th Cir. 2012) (district court invalidated prohibition on door-to-door canvassing and solicitation after 6 PM that gave city manager authority to grant permit for good cause; following city's repeal of measure Sixth Circuit dismissed as moot).

The Supreme Court reiterated this point in *Thomas v. Chicago Park District*, 534 U.S. 316, 323 (2002), where it ultimately sustained a content-neutral parade permit ordinance that included definite, concrete and objective standards:

> Of course even content-neutral time, place, and manner restrictions can be applied in such a manner as to stifle free expression. Where the licensing official enjoys unduly broad discretion in determining whether to grant or deny a permit, there is a risk that he will favor or disfavor speech based on its content. We have thus required that a time, place, and manner regulation contain adequate standards to guide the official's decision and render it subject to effective judicial review.

(Citations omitted). *See also Six Star Holdings v. City of Milwaukee*, 821 F.3d 795, 799 (7th Cir. 2016) ("Prior restraints that are viewpoint- and content-neutral and impose a limitation only on the time, place, and manner of speech are more likely to pass muster. <u>They are permissible if, and only if, there are procedural safeguards that ensure that the decisionmaker approving the</u>

---

[17] *Lakewood* readily refutes Defendants' claim that because the Plaintiffs may still "advocate for or against ballot proposals" there can be no prior restraint.  *See* Defendant-Husted's Response at 11. That newspapers remained free to distribute their news in other fashions did not defeat the fact that vesting discretion in an executive official over whether to allow news racks on public property was an impermissible prior restraint.

speech does not have 'unfettered discretion' to grant or deny permission to speak.") (emphasis added).

### B. Assuming An Initiative Is A Non-Public Forum, Ohio's Restriction Fails First Amendment Scrutiny Because It Fails to Provide Procedural Safeguards.

Restrictions in non-public fora[18] -- whether content-neutral or content-based -- are subject to the same procedural protections applied to prior restraints in traditional public settings. For instance, in *Miller v. City of Cincinnati*, 622 F.3d 524, 528 (6th Cir. 2010), the Sixth Circuit invalidated under the First Amendment a city's rule (Administrative Regulation # 5) that delegated discretion to "Department Heads" to decide who should be allowed to solicit in city buildings. Although the interior of a public building -- like city hall -- was "at most, a limited public forum," *id.* at 535, the Sixth Circuit applied established prior restraint doctrine:

> This distinction is irrelevant, however, because in *City of Lakewood* the Court held that an arbitrary prior restraint on protected speech provides standing regardless of the forum. Hence, when a plaintiff's protected-speech activities are subject to restriction at the government's unfettered discretion, the plaintiff has suffered an injury in fact.

*Id.* at 528.[19]

---

[18] Non-public and limited public fora are subject to the same test: restrictions must be reasonable and viewpoint neutral. *See Miller v. City of Cincinnati*, 622 F.3d 524, 535-36 (6th Cir. 2010) ("government limitations on speech in both a limited public forum and a nonpublic forum receive the same level of scrutiny. In both instances, any restrictions must be "reasonable and viewpoint neutral."); *New York Magazine v. Metropolitan Transportation Authority*, 136 F.3d 123, 128 & n.2 (2d Cir. 1998) ("Exclusions of speech under this category are treated the same as exclusions under non-public fora: 'Under the limited public forum analysis, ... exclusion of uses ... need only be reasonable and viewpoint-neutral to pass constitutional muster.'") (citation omitted).

[19] *See also Barrett v. Walker County School District*, 872 F.3d 1209, 1226 (11th Cir. 2017) (holding that prior restraint doctrine's procedural safeguards apply in limited and non-public fora like airports and schools: "the unbridled-discretion doctrine can serve the same purpose in a limited public forum that it serves in a nonpublic forum: combating the risk of unconstitutional viewpoint discrimination. Naturally, then, the unbridled-discretion doctrine applies in a limited

## IV. Plaintiffs Can Not Be Compelled to Use Ohio's Unconstitutional Procedure.

Defendants fault Plaintiffs for not seeking review of the decision rendered by the Portage County Board of Elections in the Ohio Supreme Court -- "recourse that they themselves acknowledge could have been available and effective." Defendant-Husted's Response at 16. First, Plaintiffs have never acknowledged that this sort of review is proper or effective. Plaintiffs' whole point in this case is that because the Ohio Supreme Court's mandamus review is limited, because the burden of seeking mandamus review is foisted on the censored party, and because the censored party bears the burden of proving the board abused its discretion, the process is improper and ineffective.

Second, the law is clear that claims brought under 42 U.S.C. § 1983 need not be exhausted; plaintiffs need not use a state's administrative mechanism nor its courts before turning to federal court to vindicate their constitutional rights. *See Patsy v. Board of Regents*, 457 U.S. 496 (1982).

Third, it is clear that a plaintiff who brings a facial First Amendment challenge to a prior restraint, like the Plaintiffs' claim here, cannot be forced to first resort to the very process being challenged. The Supreme Court in *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151 (1969), stated:

> a person faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license. "The Constitution can hardly be thought to deny to one subjected to the

---

public forum."); *Amandola v. Town of Babylon*, 251 F.3d 339, 344 (2d Cir. 2001) (stating "where a municipality requires a permit for expressive activity the 'scheme' for issuance of the permit 'must set objective standards governing the grant or denial of [the permit] in order to ensure that the officials not have the 'power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers" in a limited public forum).

restraints of such an ordinance the right to attack its constitutionality, because he has not yielded to its demands."

(Citation omitted).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for preliminary relief should be **GRANTED** and the initiatives restored to their respective ballots. *See Libertarian Party of Ohio v. Brunner*, 567 F. Supp.2d 1006, 1015 (S.D. Ohio) ("when the 'available evidence' establishes that the party has 'the requisite community support,' this Court is required to order that the candidates be placed on the ballot.") (citations omitted).

Respectfully submitted,

s/*Mark R. Brown*
Mark R. Brown, Trial Counsel
Ohio Registration No. 81941
303 East Broad Street
Columbus, OH 43215
(614) 236-6590
(614) 236-6956 (fax)
mbrown@law.capital.edu

Mark G. Kafantaris
Ohio Registration No. 80392
625 City Park Avenue
Columbus, Ohio 43206
(614) 223-1444
(614) 300-5123(fax)
mark@kafantaris.com

**CERTIFICATE OF SERVICE**

      I certify that this Reply was filed using the Court's electronic filing system and thereby will be served on all parties to this proceeding; I further certify that I e-mailed copies of this Reply to Sarah Pierce, Associate Assistant Attorney General – Constitutional Offices, Office of Ohio Attorney General Mike DeWine, Attorney for the Secretary of State, at sarah.pierce@ohioattorneygeneral.gov, and to Christopher Meduri, Assistant Prosecuting Attorney, Portage County Prosecutor's Office at CMeduri@portageco.com, on this day, September 13, 2018.

                                                  s/*Mark R. Brown*
                                                  Mark R. Brown