# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

WILLIAM SCHMITT, JR., et al.,

    Plaintiffs,

v.

OHIO SECRETARY OF STATE
JON HUSTED, et al.,

    Defendants.

Case No. 2:18-cv-966
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Elizabeth P. Deavers**

## OPINION & ORDER

This matter is presently before the Court for consideration of Plaintiff's Application for a Temporary Restraining Order. (ECF No. 3.) For the reasons set forth herein, the motion is **GRANTED**.

### I.

**A. Undisputed Relevant Facts**

The following facts are set forth for the limited purpose of addressing the immediate motion before the Court. Any findings of fact and conclusions of law made by a district court in addressing a request for injunctive relief, particularly in consideration of a temporary restraining order, are not binding at a trial on the merits. *University of Texas v. Camenish*, 451 U.S. 390, 395, 101 S.Ct 1830, 68 L.Ed.2d 175 (1981).

Plaintiffs William Schmitt and Chad Thompson drafted and circulated two ballot initiatives in two Ohio villages, Garretsville and Windham. (ECF No. 3.) Both initiatives proposed ordinances with identical language that essentially decriminalized marijuana possession. The initiative reduced criminal fines to $0, removed any consequences related to licenses, and reduced court costs to $0. (*Id.*) After acquiring the necessary signatures, Schmitt

1

and Thompson submitted the proposed ordinances to the Portage County Board of Elections, one of the defendants in this case.

The Portage County Board of Elections rejected the proposed initiative for two reasons. First, the Board determined that "the $0 fine and no license consequences are administrative in nature." (*Id.*) Second, the Board found that "[t]he $0 court costs is administrative in nature and is an impingement on the judicial function by a legislature." (*Id.*) On August 21, 2018, the Portage County Board of Elections notified Schmitt and Thompson that it would not certify the proposed initiatives for the ballot. (*Id.*)

On August 28, 2018, Plaintiffs filed their Complaint (ECF No. 1) and a Motion for Temporary Restraining Order and/or Preliminary Injunction. (ECF No. 3.) Defendants filed Responses in Opposition to Plaintiffs' Motion (ECF Nos. 17, 18) to which Plaintiffs answered with their Reply. (ECF No. 19.) On September 17, 2018, this Court held a hearing on Plaintiffs' requested injunctive relief.

### B. Ohio's Ballot Initiative Scheme

Ohio has created an initiative process for its citizens. Ohio Const. Art. II, Sec. 1. Relevant to this case, Ohio law requires petitioners for the initiation of legislation in a municipality to submit an initiative petition to a board of elections. O.R.C. § 3501.11(K)(1). The board of elections then reviews, examines, and certifies the sufficiency and validity of the petition. *Id.* The boards of elections are also required to "determine whether the petition falls within the scope of authority to enact via initiative and whether the petition satisfies the statutory prerequisites to place the issue on the ballot." O.R.C. § 3501.11(K)(2). This is known as the "gatekeeper mechanism." *State ex rel. Walker v. Husted*, 144 Ohio St.3d 361, 43 N.E.3d 419, 423 (2015). The Supreme Court of Ohio has held that boards of elections have discretion when determining "which actions are administrative and which are legal." *Id.* Administrative actions

2

are not appropriate for the initiative process; legislative actions are. *See* O.R.C. §§ 3501.38(M)(1) and 3501.39(A)(3). While recognizing that this Court is without jurisdiction to decide whether the initiative petition contains legislative or administrative action, the parties dispute this issue, which would otherwise determine whether the matter should be placed on the ballot.

When a local elections board determines that an action is administrative (and therefore improper) or legislative (and therefore proper), Ohio law creates a fork in its procedural road. If the initiative petition is deemed valid, then citizens opposing the petition's validity—and in a practical sense, the board's decision—have an original cause of action for review of the board's decision in the Supreme Court of Ohio. Ohio Const. Art. II, Sec. 1g. On the other hand, if the board or secretary rejects a petitioner's submission for a substantive reason, as in the administrative versus legislative divide, *supra*,[1] neither the Ohio Constitution nor state laws provide a remedy. As a result, a party aggrieved by the rejection of an initiative petition has no right, by statute or otherwise, to review of an executive board's legal conclusion. An aggrieved petitioner may seek a writ of mandamus, which is wholly separate from an appeal of right.

Under Ohio law, to be entitled to a writ of mandamus, a petitioner must prove, by clear and convincing evidence: (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the board to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Khumprakob v. Mahoning Cty. Bd. of Elections*, 2018-Ohio-1602 (citing *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6, 13). Only

---

[1] *See State ex rel. Jones v. Husted*, 149 Ohio St.3d 110 (2016) ¶ 24 ("By its plain language, Section 1g creates a cause of action to challenge, that is, to *oppose* signatures and part-petitions. It does not create a broader cause of action only to challenge decisions by the secretary or the county boards to reject petitions. *That* cause of action still falls under this court's original mandamus jurisdiction.") In the instant case, Plaintiffs' fall under the latter scenario. That is, the Portage County Board rejected Plaintiffs' decision. Therefore, Plaintiffs' only state-court remedy exists in mandamus issued by either the Supreme Court of Ohio or the courts of appeals.

the Supreme Court of Ohio or the courts of appeals have original jurisdiction in mandamus. Ohio Const. Art. IV, Sec. 3; *State ex rel. Jones v. Husted* (Ohio, 2016) 149 Ohio St.3d 110, 73 N.E.3d 463, 2016-Ohio-5752. When the Ohio Supreme Court or courts of appeals reviews a decision by a county board of elections, such court may only issue the writ if the board "engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions." *Id.* ¶ 4 (citing *State ex rel. Jacquemin v. Union County Bd. of Elections*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N.E.3d 759, ¶ 9).

Applied to these narrow facts, Ohio's initiative scheme denies a rejected petitioner "an adequate remedy … of law" for review of a local board of election's legal determination. Instead, the only recourse available is a petition for a writ of mandamus. A writ is an extraordinary remedy that is discretionary and "will not issue to prevent an erroneous judgment, or to serve the purpose of appeal, or to correct mistakes of the lower court in deciding questions within its jurisdiction." *State ex rel. Sparto v. Juvenile Court of Darke County* (1950), 153 Ohio St. 64, 65, 90 N.E.2d 598. In other words, rejected petitioners are stuck between a rock and a hard place. But is there any constitutional violation?

On that question, the parties disagree. Plaintiffs allege that by following Ohio law, Defendants violated their rights protected by the First and Fourteenth Amendments. Defendants argue that the gatekeeper mechanism and the possibility of a writ of mandamus are constitutionally sound. To remedy their alleged violations, Plaintiffs move this Court to order injunctive relief, pursuant to Federal Rule 65 of Civil Procedure.

**II.**

Federal Rule 65 of Civil Procedure allows a party to seek injunctive relief if the party believes that it will suffer irreparable harm or injury. Fed. R. Civ. P. 65. To determine whether

4

injunctive relief should be issued, the Court considers these four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether granting the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *McPherson v. Michigan High School Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc).

These factors are not prerequisites; each must be weighed against the others. *Id.* at 459. "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gozales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). A district court is required to make specific findings concerning each of the factors unless fewer are dispositive of the issue. *Performance Unlimited v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995). The Court will now analyze each of the four factors below.

## III.

### A. Likelihood of Success

Plaintiffs argue that Ohio's ballot initiative procedure violates their rights guaranteed by the United States Constitution. In their Reply Brief (ECF No. 19), Plaintiffs make clear that they "do not challenge Ohio's ability to limit the subject matter of its initiatives. What Plaintiffs challenge is how Ohio has chosen to implement this otherwise lawful task." (*Id.*) At oral argument, however, Plaintiffs argued that the Ohio procedure for proposing initiatives violates constitutional due process protections.

At the same oral argument, Defendants responded that the mandamus relief is constitutionally sufficient. Defendants conceded that mandamus relief is only appropriate when there is no adequate remedy at law, and that the Supreme Court or courts of appeals must review local board of election's decision by a "clear disregard of law" standard.

5

The right to initiate legislation through the initiative process is not a federal constitutional right. *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 295 (6th Cir. 1993). Concomitantly, once the initiative or, if its counterpart, the referendum process, is made a part of state law, the process becomes a "democratic tool" to be regulated in a manner consistent with the First and Fourteenth Amendments. *City of Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 96 S. Ct. 2358, 49 L.Ed.2d 132 (1976).

In *Meyer v. Grant*, the United States Supreme Court held that once a right of initiative is created, that state may nor place restrictions on the exercise of the initiative that unduly burden First Amendment rights. *Meyer v. Grant*, 486 U.S. 414, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988); *see Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 295 (6th Cir. 1993) ("although the Constitution does not require a state to create an initiative procedure, if it creates such a procedure, the state cannot place restrictions on its use ...."). In *Meyer*, the United States Supreme Court struck down a Colorado provision criminalizing the payment of money to anyone circulating an initiation petition. *Id*. Since Ohio has created an initiative procedure, Ohio cannot restrict its use in violation of the federal Constitution.

The United States Supreme Court has articulated a standard for evaluating constitutional challenges to a state's election laws in *Anderson v. Celebrezze*, 460 U.S. 780, 788–89, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), and in *Burdick v. Takushi*, 504 U.S. 438, 434, 112 S. Ct. 2059, 119 L.Ed.2d 245 (1992). The court must: (1) "consider the character and magnitude of" the plaintiffs' alleged injuries, (2) "identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule," and (3) assess the "legitimacy and strength of each of those interests," as well as the "extent to which those interests make it necessary to

burden the plaintiff[s'] rights." *Anderson*, 460 U.S. at 789, 103 S.Ct. 1564. This is known as the *Anderson-Burdick* standard.

"States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process." *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 191, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999). The Court addresses these factors below.

The touchstone of *Anderson-Burdick* is flexibility when weighing competing interests. *Ohio Democratic Party v. Husted*, 834 F.3d 620, 627 (6th Cir. 2016). Opposite this flexibility, the "rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi*, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992).

Plaintiffs argue that without the right to review an executive board's legal decision, Ohio's initiative procedure deprives Plaintiffs of their First Amendment rights related to voting upon valid initiative-generated legislation. Voting is "of the most fundamental significance under our constitutional structure." *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979).

In addition to voting, Plaintiffs' allege that their rights to due process are violated. The Due Process Clause of the Fourteenth Amendment extends to First Amendment rights. *Briscoe v. Kusper*, 435 F.2d 1046, 1055 (7th Cir. 1970) (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) ("It is by now well established that the concept of 'liberty' protected against state impairment by the Due Process Clause of the Fourteenth Amendment includes the freedoms of speech and association and the right to petition for redress of grievances.")) These protected rights may take the form of "simple association for mutual political or social benefits, including support of independent candidates or specific

policies." *Id.* (citing *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964)).

No doubt, Ohio has strong interests in ensuring its elections are run fairly and honestly. *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 297 (6th Cir. 1993). Ohio also has an interest in placing on the ballot only such proposed legislation as would be lawful as municipal legislation under Ohio Const. Art. XVIII, Sec. 3. Repeated votes on matters unlawful or unenforceable on their face could erode public confidence in the entire initiative or referendum process.

Recognizing such interests, the Court finds no legitimate state interests in preventing an adequate legal remedy for petitioners denied ballot access by a board of elections. While the availability of mandamus relief is essentially a judicially imposed remedy when the law does not otherwise provide one, the high burden on petitioners to prove entitlement to an extraordinary remedy is no substitute for *de novo* review of the denial of a First Amendment right. For those reasons, the Court finds that Plaintiffs' have a high likelihood of success on the merits.

**B. Irreparable Harm**

Plaintiffs argue that without a right of review of the board's legal decision, Ohio laws deprive Plaintiffs of their First Amendment rights. "Even a temporary deprivation of First Amendment rights constitutes irreparable harm in the context of a suit for an injunction." *Citizens for a Better Environment v. City of Park Ridge*, 567 F.2d 689, 691 (7th Cir. 1975) (citing *Schnell v. Chicago*, 407 F.2d 1084, 1086 (7th Cir. 1969). Without a right to appeal or review, Plaintiffs will suffer irreversible injuries which could not be remedied by law, absent injunctive relief.

8

### 3. Substantial Harm to Others; Public Interest

As the Supreme Court noted in *Storer v. Brown*, 415 U.S. 724, 730 (1974), election structures are critical "if some sort of order, rather than chaos, is to accompany the democratic processes." While election laws will "invariably impose some burden on individual voters," this Court must balance the equities to ensure the state's regulatory interests justify any harm to others. *Burdick*, 504 U.S. at 433. Given this is an election case, "harm to others" concerns only the public.

In the instant action, Plaintiffs argue Defendants will suffer no injury should this Court enjoin the enforcement of O.R.C. § 3503.06(C)(1)(a). (ECF No. 3.) Defendants contend preliminary relief would harm Ohio by undermining its interest in regulating the ballot process. (ECF No. 17) (citing *Munro v. Socialist Workers Party*, 479 U.S. 189, 194–95 (1986)). Defendants cite *Jones v. Markiewicz-Qualkinbush*, in which the Seventh Circuit stated that "states have a strong interest in simplifying the ballot." 892 F.3d 935, 938 (7th Cir 2018).

Plaintiffs' argument is well taken. Ohio's regulatory scheme unreasonably infringes on Plaintiffs' First Amendment rights by allowing an executive board to determine disputed legal and even constitutional issues, thereby potentially blocking initiatives from the ballot, and then denying rejected petitioners a right to review. *Burdick*, 504 U.S. at 438. No legitimate state interest is protected by a lack of appellate review. Similarly, Ohio voters are unlikely to suffer cognizable harm from Plaintiffs' access to the ballot.

Finally, in First Amendment cases, potential harm to others stemming from preliminary relief is "'dependent on a determination of the likelihood of success on the merits of the First Amendment challenge.'" *Committee*, 275 F.Supp.3d at 596 (quoting *Jones v. Caruso*, 569 F.3d 258, 278 (6th Cir. 2009)). For instance, if the "regulation in question is likely to be deemed

9

constitutional, the public interest will not be harmed by its enforcement." *Id.* Here, Plaintiffs have a high likelihood of success on the merits. Accordingly, the public is unlikely to suffer significant harm from the injunctive relief that Plaintiffs seek.

## IV.

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Application for a TRO (ECF No. 10.) Given the fact that there is no possibility of financial harm to Defendant, the Court dispenses with the requirement of a bond. The Court hereby **DIRECTS** the Ohio Secretary of State and the Portage County Board of Elections to place both initiative petitions which are the subject of this case on the upcoming ballot for the election to be held on November 6, 2018. This Order shall remain in effect for fourteen (14) days.

**IT IS SO ORDERED.**

9-19-2018
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**