# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **WILLIAM SCHMITT, JR., et al.,** | **:** | |
| | **:** | |
| Plaintiffs, | **:** | Case No. 2:18-cv-966 |
| | **:** | |
| v. | **:** | Judge Edmund Sargus, Jr. |
| | **:** | |
| **OHIO SECRETARY OF STATE** | **:** | Magistrate Judge Elizabeth Deavers |
| **JON HUSTED, et al.,** | **:** | |
| | **:** | |
| Defendants. | **:** | |

---

## DEFENDANT OHIO SECRETARY OF STATE JON HUSTED'S
## BRIEF OPPOSING PLAINTIFFS' REMAINING FACIAL CHALLENGE TO
## O.R.C. §§ 3501.11(K), 3501.38(M)(1)(a), AND 3501.39(A)

---

Respectfully submitted,

MIKE DeWINE
OHIO ATTORNEY GENERAL

/s/ *Sarah E. Pierce*

SARAH E. PIERCE (0087799)*
  *\*Lead Counsel*
RENATA Y. STAFF (0086922)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
sarah.pierce@ohioattorneygeneral.gov
renata.staff@ohioattorneygeneral.gov

*Counsel for Defendant*
*Ohio Secretary of State Jon Husted*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... vi

I.  INTRODUCTION ............................................................................................ 1

II.  BACKGROUND ............................................................................................ 2

   A.  The Ohio Constitution empowers Ohio citizens to enact certain
       municipal ordinances by initiative, and Ohio law requires
       county boards of election to determine whether ballot
       proposals fall within that initiative power. ............................................ 2

   B.  A board's power to determine whether ballot proposals fall
       within the initiative power is limited, and parties may
       challenge ballot-eligibility decisions in mandamus suits. .................. 4

   C.  Plaintiffs allege that Ohio's initiative-certification laws violate
       the First Amendment, both facially and as applied to them. ........... 6

III.  LAW AND ARGUMENT ................................................................................ 8

   A.  Plaintiffs' facial challenge is subject to a demanding legal
       burden. ...................................................................................................... 9

   B.  Plaintiffs have alleged a limited injury and therefore lack
       standing to broadly invalidate the laws they challenge. .................. 10

Plaintiffs' alleged injuries are limited to the challenged statutes only insofar as they concern a board of elections' review of an initiative petition to enact a local ordinance that is within the municipal legislative authority.  To the extent Plaintiffs challenge provisions of Ohio law that not have not injured them—such as petitions to amend a municipal charter; review for compliance with the municipality's home rule authority; nominating petitions; declarations of candidacy; or written protests—Plaintiffs lack standing. *See Morrison v. Bd. of Educ.*, 521 F.3d 602, 608 (6th Cir.2008).

   C.  Plaintiffs fail to allege any burden on protected First
       Amendment speech and therefore fail to state a claim. .................. 12

While the First Amendment protects the political discourse that surrounds an initiative effort, it does not protect the ability to make law by initiative, nor grant the right to speak through the state's ballot.  *See, e.g., Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1099 (10th Cir. 2006); *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935 (7th Cir.2018); *Marijuana Policy Project v. United States*, 304 F.3d 82, 83 (D.C. Cir.2002).  *Port of Tacoma v. Save Tacoma Water*, 422 P.3d 917, 919-20 (Wash. Ct. App. July 25, 2018). Therefore, Plaintiffs fail to identify a protected First Amendment interest and their facial challenge must fail.

**D.    Even assuming Plaintiffs have alleged an injury to their First Amendment rights, the challenged statutes pass rational basis review under the *Anderson-Burdick* framework. ............................................... 18**

Because Plaintiffs' First Amendment rights are not burdened, the challenged statutes' constitutionality "depends on whether the rule has a rational basis, not on the First Amendment." *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935 at 938.  The challenged statutes further the state's interests in simplifying the ballot, minimizing voter confusion, and ensuring voter confidence in the electoral system, and therefore survive rational basis review.  Even if Plaintiffs could articulate some impairment of their First Amendment rights (which they have not done), the challenged statutes are still constitutional under *Anderson-Burdick* balancing.    Any First Amendment burden is minimal, if it exists.  *See Ohio Council 8 Am. Fedn. of State v. Husted*, 814 F.3d 329, 336-37 (6th Cir. 2016); *Comm. to Impose Term Limits on the Ohio Supreme Court v. Ohio Ballot Bd.*, 885 F.3d 443, 448 (6th Cir.2018) ("*CITL*").  And on balance, any minimal burden is outweighed by the State's interests in simplifying the ballot, avoiding voter confusion, and maintaining voter confidence.  *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 938 (7th Cir. 2018); *Munro v. Socialist Workers Party*, 479 U.S. 189, 194-95 (1986); *CITL*, 885 F.3d 443, 448 (6th Cir. 2018); *First Natl. Bank v. Bellotti*, 435 U.S. 765, 788-89 (1978).

**E.    An initiative process also does not implicate expressive content but, even if it did, the statutes at issue would pass review under *O'Brien* intermediate scrutiny. ........................................................... 21**

The only court to find a First Amendment impairment by state regulation of the initiative process applied intermediate scrutiny, and nevertheless upheld the challenged restriction.  *See Wirzburger v. Galvin*, 412 F.3d 271 (1st Cir.2005).  That singular precedent has not been followed by other courts and has been explicitly rejected in the Tenth Circuit. This Court should do the same. Even if this Court were to engage in heightened review, the challenged statutes would survive.  Important State interests support the challenged laws and the laws are not aimed at suppressing free expression—no particular subject or viewpoint is singled out.  *CITL,* 885 F.3d 443, 447-48 (6th Cir.2018).  Even under an intermediate level of scrutiny, the challenged laws do not burden First Amendment protections.  *See Wirzburger*, 412 at 279.

**F.    Plaintiffs' remaining arguments for strict scrutiny under the public-forum and prior-restraint doctrines also fail as a matter of law. ................................................................................................ 25**

**1.    The ballot is not a public forum............................................. 26**

The ballot is not a public forum, even assuming forum analysis applies to the ballot (which it does not). *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 461 (2008) (Roberts, C.J., concurring).  Even assuming the ballot somehow could be characterized as a nonpublic forum, the laws Plaintiffs challenge are reasonable and do not discriminate based on a particular viewpoint, and are therefore constitutionally sound.  *CITL*, 885 F.3d 443, 448 (6th Cir.2018).

2.      The challenged laws are not subject to the prior restraint doctrine. ................................................................................ 28

Plaintiffs cannot cite to any authority applying the prior restraint doctrine or the procedural safeguard requirements of *Freedman v. Maryland*, 380 U.S. 51 (1965), to ballot access statutes. Under similar circumstances, an Ohio federal district court has declined to apply prior-restraint analysis to a statute regulating a candidate's access to the ballot.  *Aey v. Mahoning Cty. Bd. of Elections*, No. 4:08 CV 405, 2008 U.S. Dist. LEXIS 19247, *16 (N.D.Ohio Feb. 26, 2008).  And even assuming the ballot is a public forum (which it is not), the Supreme Court "ha[s] never required that a content-neutral permit scheme regulating speech in a public forum adhere to the procedural requirements set forth in *Freedman*." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322 (2002); *H.D.V.-Greektown, LLC v. City of Detroit,* 568 F.3d 609, 624 (6th Cir.2009). Because the ballot is not a public forum and the challenged restrictions are not content-based, *Freedman* is not applicable to Plaintiffs' claims.

3.      The challenged laws are not prior restraints on protected speech. .................................................................................. 32

Even applying the prior-restraint doctrine to the challenged laws, they survive constitutional scrutiny.  They simply do not touch on protected speech, which is the "ability to communicate with other voters about proposed legislation." *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 297 (6th Cir.1993).  Nor do the statutes unconstitutionally vest unbridled discretion in the county boards of elections; the text of the statutes set explicit limits on the discretion of county elections officials to deny ballot access.  O.R.C. § 3501.38(M)(1)(a); *see also*, *e.g.*, *State ex rel. Ebersole v. Delaware Cty. Bd. of Elections*, 140 Ohio St.3d 487, 20 N.E.3d 678, 684-85 (Ohio 2014) (noting the "30 year" history of the "well-established distinction between municipal legislative and administrative activity").  Plaintiffs therefore fail to demonstrate that the challenged laws impede First Amendment protections in the first instance or that they should be subject to strict scrutiny review.

G.      The challenged statutes do not impinge upon substantive or procedural due process protections.................................................... 33

To the extent that Plaintiffs allege that the challenged statutes cause a deprivation of their procedural or substantive due process rights, this claim also fails as a matter of law.  Initially, because Plaintiffs only raised this issue oral argument, it is therefore forfeited.  *See Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 831 n.9 (6th Cir.2007).  Even absent waiver, in the election context, due process claims are "addressed . . . collectively using a single analytic framework." *Dudum v. Arntz*, 640 F.3d 1098, 1106 n.15 (9th Cir.2011) (citing *Anderson,* 460 U.S. at 787 n.7; *LaRouche v. Fowler,* 152 F.3d 974, 987–88 (D.C. Cir.1998)). As outlined above, public forum and strict scrutiny analysis do not apply and the challenged statutes satisfy *Anderson-Burdick* review.

1.    The challenged statutes do not violate substantive due process. ................................................................................. 34

Even if Plaintiffs had raised any substantive due process claims, such claims could not succeed. Plaintiffs have offered no argument or evidence that the challenged statutes have any impact whatsoever on the right to vote, much less that they have resulted in any voter disenfranchisement or vote dilution. *Northeast Ohio Coalition for Homeless v. Husted*, 696 F.3d 580, 597 (6th Cir.2012). Accordingly, to any extent Plaintiffs attempt to bring a substantive due process claim against the challenged statutes, it fails.

2.    The challenged statutes do not violate procedural due process. ................................................................................. 35

Any procedural due process claim likewise fails. Plaintiffs have not identified a fundamental interest implicated by the challenged statutes. *League of Women Voters v. Brunner*, 548 F.3d 463, 479 (6th Cir.2008). Plaintiffs were also given adequate notice with sufficient time to seek relief from the Board's decision. Accordingly, their claim fails as a matter of law. Even assuming a fundamental right is affected, Plaintiffs have adequate procedural protections by way of mandamus. Ohio Const., art. IV, § 2(B)(1)(b); *Mathews v. Ohio Pub. Emples. Retirement Sys.,* 91 F. Supp. 3d 989, 1002 (S.D.Ohio 2015). The Supreme Court is under a "duty to liberally construe municipal initiative provisions to permit the exercise of the power of initiative." *State ex rel. N. Main St. Coalition v. Webb*, 106 Ohio St.3d 437, 2005-Ohio-5009, 835 N.E.2d 1222, ¶ 47. Court procedures enable expedited briefing and decisions to meet elections deadlines. *See* Ohio S.Ct.Prac.R. 12.08. And the Ohio Supreme Court has ordered that initiatives appear on ballots. *State ex rel. Khumprakob v. Mahoning Board of Elections*, Slip Opinion No. 2018-Ohio-1602 (Apr. 24, 2018). Accordingly, a procedural due process claim must fail.

IV.    CONCLUSION ........................................................................................... 37

CERTIFICATE OF SERVICE ................................................................................ 38

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                          **Page(s)**

*Aey v. Mahoning Cty. Bd. of Elections*,
  No. 4:08 CV 405, 2008 U.S. Dist. LEXIS 19247 (N.D.Ohio Feb. 26, 2008) .................29, 30

*Am. Constitutional Law Found., Inc. v. Meyer*,
  120 F.3d 1092 (10th Cir.1997) .........................................................................................23

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983)....................................................................................................19, 20

*Angle v. Miller*,
  673 F.3d 1122 (2012).........................................................................................................17

*Biddulph v. Mortham*,
  89 F.3d 1491 (11th Cir.1996) ...........................................................................................13

*Buckley v. Am. Constitutional Law Found., Inc.*,
  525 U.S. 182 (1999)...........................................................................................................14

*Burdick v. Takushi*,
  504 U.S. 428 (1992)...........................................................................................................19

*State ex rel. Canales-Flores v. Lucas Cty. Bd. of Elections*,
  108 Ohio St.3d 129, 841 N.E.2d 757 (2005) ......................................................................4

*State ex rel. Citizen Action for a Livable Montgomery v. Hamilton Cty. Bd. of
  Elections*,
  115 Ohio St.3d 437, 875 N.E.2d 902 (2007) ..........................................................3, 4, 5, 36

*Clark v. Cmty. for Creative Non-Violence*,
  468 U.S. 288 (1984)...........................................................................................................24

*Comm. to Impose Term Limits on the Ohio Supreme Court v. Ohio Ballot Bd.*,
  885 F.3d 443 (6th Cir.2018) ...................................................................................... *passim*

*Convention Ctr. Referendum Comm. v. D.C. Bd. of Elections & Ethics*,
  441 A.2d 889 (D.C. 1981) (en banc) .................................................................................13

*Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*,
  473 U.S. 788 (1985).....................................................................................................26, 32

*State ex rel. Cramer v. Brown*,
  7 Ohio St. 3d 5, 454 N.E.2d 1321 (1983) ...........................................................................5

*Crawford v. Marion Cnty. Election Bd.*,
  553 U.S. 181 (Scalia, J., concurring) ...............................................................................19

**Cases**                                                                      **Page(s)**

*Deja Vu of Nashville, Inc. v. Metro. Govt. of Nashville & Davidson Cty.*,
    274 F.3d 377 (6th Cir.2001) ................................................................30

*Dudum v. Arntz*,
    640 F.3d 1098 (9th Cir.2011) ..........................................................34

*State ex rel. Ebersole v. Delaware Cty. Bd. of Elections*,
    140 Ohio St.3d 487, 20 N.E.3d 678 (2014) ...............................3, 5, 33

*State ex rel. Espen v. Wood Cty. Bd. of Elections*,
    Slip Op. 2017-Ohio-8223, 2017 Ohio LEXIS 2145, (2017)........................5

*First Natl. Bank v. Bellotti*,
    435 U.S. 765 (1978)...............................................................1, 21

*Forsyth County v. Nationalist Movement*,
    505 U.S. 123 (1990) ..........................................................29

*Freedman v. Maryland*,
    380 U.S. 51 (1965)....................................................... *passim*

*H.D.V.-Greektown, LLC v. City of Detroit*,
    568 F.3d 609 (6th Cir.2009) ..........................................31, 32

*Hahn v. Star Bank*,
    190 F.3d 708 (6th Cir.1999) ..............................................35

*State ex rel. Heavey v. Husted*,
    152 Ohio St.3d 579, 99 N.E.3d 372 (2018) ...............................20

*Heideman v. South Salt Lake City*,
    348 F.3d 1182 (10th Cir.2003) ..........................................23

*Initiative & Referendum Inst. v. Walker*,
    450 F.3d 1082 (10th Cir.2006) ....................................... *passim*

*State ex rel. Jacquemin v. Union County Bd. of Elections*,
    147 Ohio St.3d 467, 67 N.E.3d 759 (2016) ........................................36

*Jones v. Markiewicz-Qualkinbush*,
    892 F.3d 935 (7th Cir.2018) ........................................... *passim*

*Lakewood v. Plain Dealer Pub. Co.*,
    486 U.S. 750 (1988)...............................................29, 32, 33

*LaRouche v. Fowler*,
    152 F.3d 974 (D.C. Cir.1998) ..........................................34

**Cases**                                                                                           **Page(s)**

*League of Women Voters v. Brunner*,
    548 F.3d 463 (6th Cir.2008) ...................................................................................35

*Lindsey v. Detroit Entm't, LLC*,
    484 F.3d 824 (6th Cir.2007) ...................................................................................33

*M.I.C., Ltd. v. Bedford Twp.*,
    463 U.S. 1341 (1983) .............................................................................................30

*Marijuana Policy Project v. United States*,
    304 F.3d 82 (D.C. Cir.2002) ...............................................................12, 13, 14, 17

*Mathews v. Ohio Pub. Emples. Retirement Sys.*,
    91 F. Supp. 3d 989 (S.D.Ohio 2015) ...............................................................35, 36

*McGlone v. Bell*,
    681 F.3d 718 (6th Cir.2012) .............................................................................10, 11

*Meyer v. Grant*,
    486 U.S. 414 (1988).........................................................................................15, 16, 17

*Miller v. City of Cincinnati*,
    622 F.3d 524 (6th Cir.2010) ...................................................................................31

*Minnesota Voters Alliance v. Mansky*,
    ___U.S.___, 138 S.Ct. 1876 (2018) ......................................................................27

*Morrison v. Bd. of Educ.*,
    521 F.3d 602 (6th Cir.2008) ...................................................................................11

*Munro v. Socialist Workers Party*,
    479 U.S. 189 (1986).........................................................................................21, 28, 29

*Murray v. U.S. Dep't of Treasury*,
    681 F.3d 744 (6th Cir.2012) ...................................................................................10

*State ex rel. N. Main St. Coalition v. Webb*,
    106 Ohio St.3d 437, 835 N.E.2d 1222 (2005) .................................................5, 36

*Nev.Comm'n on Ethics v. Carrigan*,
    564 U.S. 117 (2011).................................................................................................27

*Northeast Ohio Coalition for Homeless v. Husted*,
    696 F.3d 580 (6th Cir.2012) ...................................................................................34

*O'Toole v. O'Connor*,
    802 F.3d 783 (6th Cir.2015) ...................................................................................37

**Cases**                                                                    **Page(s)**

*Obama for Am. v. Husted*,
    697 F.3d 423 (6th Cir.2012) .................................................................19

*Ohio Council 8 Am. Fedn. of State v. Husted*,
    814 F.3d 329 (6th Cir. 2016) ...................................................20, 21, 27, 31

*Perry Ed. Assn. v. Perry Local Educators' Assn.*,
    460 U. S. 37 (1983) ..............................................................................26, 27

*Port of Tacoma v. Save Tacoma Water*,
    422 P.3d 917 (Wash. Ct. App. July 25, 2018) ...................................16, 17

*Prime Media, Inc. v. City of Brentwood*,
    485 F.3d 343 (6th Cir. 2007) ...................................................................11

*Save Palisade FruitLands v. Todd*,
    279 F.3d 1204 (10th Cir.2002) ................................................................14

*Schrader v. Blackwell*,
    241 F.3d 783 (6th Cir.2001) ....................................................................27

*Se. Promotions, Ltd. v. Conrad*,
    420 U.S. 546 (1975) .................................................................................30

*State ex rel. Sensible Norwood v. Hamilton Cty. Bd. of Elections*,
    148 Ohio St.3d 176, 69 N.E.3d 696 (2016) ..............................................6

*Shuttlesworth v. City of Birmingham*,
    394 U.S. 147 (1969) .................................................................................29

*Skrzypczak v. Kauger*,
    92 F.3d 1050 (10th Cir.1996) (overruled on other grounds) ............14, 17

*Speet v. Schuette*,
    726 F.3d 867 (6th Cir. 2013) .....................................................................9

*State ex rel. Bolzenius v. Preisse*, Ohio Sup. Ct. 18-1221, Slip Op. 2018-Ohio-
    3708, 2018 Ohio LEXIS 2186 (2018).........................................5, 20, 31

*State ex rel. Khumprakob v. Mahoning Board of Elections*, Ohio Sup. Ct. 18-
    0404, Slip Op. 2018-Ohio-1602, 2018 Ohio LEXIS 881 (2018)........5, 37

*State ex rel. Maxcy v. Saferin*, Ohio Sup. Ct. 18-1242, Slip Op. 2018-Ohio-4035,
    2018 Ohio LEXIS 2362, *6-*7 (2018) .....................................................3

*Storer v. Brown*,
    415 U.S. 724 (1974).................................................................................19

**Cases**                                                **Page(s)**

*Taxpayers United for Assessment Cuts v. Austin*,
   994 F.2d 291 (6th Cir.1993) ........................................................................8, 20, 21, 32

*Texas v. Johnson*,
   491 U.S. 397 (1989).........................................................................................23

*Thomas v. Chicago Park Dist.*,
   534 U.S. 316 (2002)........................................................................................9, 30

*Timmons v. Twin Cities Area New Party*,
   520 U.S. 350 (1997)..........................................................................................19

*Timmons v. Twin Cities Area New Party*,
   520 U.S. 351 (1997)......................................................................................27, 34

*United States v. Kokinda*,
   497 U.S. 720 (1990).........................................................................................26

*State ex rel. Valore v. Summit Cty. Bd. of Elections*,
   87 Ohio St.3d 144, 718 N.E.2d 415 (1999) ...............................................................4

*Vance v. Universal Amusement Co.*,
   445 U.S. 308 (1980)........................................................................................30

*State ex rel. Walker v. Husted*,
   144 Ohio St.3d 361, 43 N.E.3d 419 (2015) .....................................................4, 5, 17

*Washington State Grange v. Washington State Republican Party*,
   552 U.S. 442 (2008)......................................................................................10, 27

*Wirzburger v. Galvin*,
   412 F.3d 271 (1st Cir.2005)......................................................................22, 23, 24, 25

**Statutes**                                                **Page(s)**

O.R.C. § 731.05 ...............................................................................................2

O.R.C. § 731.28 ...............................................................................................3

O.R.C. § 3501.11(K).........................................................................................4, 37

O.R.C. § 3501.38(M)..........................................................................................4

O.R.C. § 3501.38(M)(1)(a) ............................................................................... *passim*

O.R.C. § 3501.39(A)...............................................................................4, 10, 11, 37

x

**Statutes** **Page(s)**

Ohio Rev. Code § 311.01 ........................................................................................29

Ohio Rev. Code § 3501.11(K)(1) .............................................................................11

**Other Authorities Statutes** **Page(s)**

Ohio Const., art. II, § 1f .............................................................................. *passim*

Ohio Const., art. IV, § 2(B)(1)(b) .........................................................................35, 36

Ohio Const., art. XVIII, §§ 7-9 .................................................................................3

U.S. Const., First Amendment .................................................................... *passim*

U.S. Const., Fourteenth Amendment .................................................................19, 34

U.S. Const. amend. XIV, § 1 .................................................................................34

## I.    INTRODUCTION

Plaintiffs bring a First Amendment facial challenge that lacks an essential, central element: any allegation that protected First Amendment speech has been burdened. The Ohio Constitution reserves to its citizens the power to enact municipal ordinances by initiative. Ohio Const., art. II, § 1f. This power, however, is limited to ordinances within the municipal legislative authority. *Id*. County boards of elections must ensure that each proposed initiative falls within a municipality's legislative authority before it appears on the ballot. *See* Ohio Rev. Code §§ 3501.11(K), 3501.38(M)(1)(a), and 3501.39(A).

Plaintiffs do not challenge this substantive limitation on the initiative power in Ohio. They do not argue that they were prevented from circulating their own initiative petitions, or that Ohio law will prevent circulation of any other petition. They do not argue that they were prevented from speaking in support of their initiative proposals, or that Ohio law will silence speech regarding any other initiative proposal. They do not argue that their initiative petitions fall within the initiative right granted by the Ohio Constitution and were entitled to appear on the ballot. Instead, they contend only that the First Amendment facially prohibits the Ohio boards of elections' role in ensuring that only proposals that are subject to the initiative power are placed on the ballot.

But the challenged statutes comply with the First Amendment, and the Court should deny the facial relief Plaintiffs seek. *First*, Plaintiffs lack standing to challenge laws for which they have not alleged past or future injury. *See infra* Part III.B. *Second*, federal circuit courts agree that laws like the challenged statutes do not regulate core political speech under the First Amendment. While the First Amendment protects political speech that surrounds an initiative effort, it does not protect the ability to make law by initiative, nor the right to speak through the state's ballot. Because Ohio's laws do not restrict any protected speech, such as communication

1

between circulators and electors, they do not implicate any First Amendment protections at all. *See infra* Part III.C. *Third*, even if this Court were to engage in *Anderson-Burdick* balancing, the State's reasonable, nondiscriminatory initiative process withstands scrutiny. The State's procedures apply equally to all subject matters and viewpoints, with no content-based restriction. And the challenged statutes protect the State's important regulatory interests of facilitating an orderly ballot that bears only initiatives that fall within a municipality's legislative authority. *See infra* Part III.D. *Fourth*, Plaintiffs' arguments in support of strict scrutiny review fail because the ballot is not a public forum and, even if it were, the content-neutral statutes Plaintiffs challenge are not subject to *Freedman v. Maryland*, 380 U.S. 51 (1965). *See infra* Part III.E. Finally, to the extent Plaintiffs bring a due process challenge, their arguments are both waived and unavailing. *See infra* Part III.F.

Because Plaintiffs have failed to meet their high burden to facially invalidate O.R.C. §§ 3501.11(K), 3501.38(M)(1)(a), and 3501.39(A), their request for such sweeping relief should be denied.

## II. BACKGROUND

### A. The Ohio Constitution empowers Ohio citizens to enact certain municipal ordinances by initiative, and Ohio law requires county boards of election to determine whether ballot proposals fall within that initiative power.

Although not required to do so by the federal Constitution, Ohio accords robust initiative and referendum powers to its citizens and specifically reserves certain initiative and referendum powers to the citizens of Ohio municipalities. Ohio Const., art. II, § 1f. Ohio municipalities are self-governing and have the legislative authority to enact ordinances, effective within their jurisdiction, that are both within their police power and not in conflict with general laws of the state. *Id.*, art. XVIII, § 3; *see also* O.R.C. § 731.05 (mandating that "[t]he powers of the legislative authority of a city shall be legislative only, it shall perform no administrative duties").

2

Citizens of Ohio municipalities retain the authority to enact or amend a municipal charter, Ohio Const., art. XVIII, §§ 7-9, and to reject ordinances passed by the municipal legislature, *id.*, art. II, § 1f. *See also State ex rel. Maxcy v. Saferin*, Ohio Sup. Ct. 18-1242, Slip Op. 2018-Ohio-4035, 2018 Ohio LEXIS 2362, *6-*7 (2018) (distinguishing between charter amendment initiative and ordinance initiative).

The power to enact municipal ordinances by initiative is at issue in this suit. The Ohio Constitution limits the municipal initiative power to enact ordinances to "all questions which such municipalities may now or hereafter be *authorized by law to control by legislative action*." Ohio Const., art. II, § 1f (emphasis added). An appropriate legislative action enacts an ordinance, rather than executes or administers an ordinance that already exists. *State ex rel. Citizen Action for a Livable Montgomery v. Hamilton Cty. Bd. of Elections*, 115 Ohio St.3d 437, 875 N.E.2d 902, 909, 911 (2007). While Ohio citizens are able to take municipal legislative action by initiative, administrative action—executing or administering an existing ordinance—is not authorized. *See State ex rel. Ebersole v. Delaware Cty. Bd. of Elections*, 140 Ohio St.3d 487, 20 N.E.3d 678, 684-85 (2014) (noting the "30 year" history of the "well-established distinction between municipal legislative and administrative activity" for initiative purposes); *see also* O.R.C. § 731.28 ("Ordinances . . . providing for the exercise of any powers of government granted by the constitution . . . may be proposed by initiative petition.").

Three requirements of Chapter 3501 are relevant in this lawsuit. The first is a board of election's duty to "determine" whether a proposed initiative "falls within the scope of a municipal political subdivision's authority to enact via initiative" and "whether the petition satisfies the statutory prerequisites to place the issue on the ballot." O.R.C. § 3501.38(M)(1)(a). This duty is echoed in two other provisions. One is a board's mandatory duty to "[r]eview,

3

examine, and certify the sufficiency and validity of petitions and nomination papers" of any type, and to conduct the review required by O.R.C. § 3501.38(M). O.R.C. § 3501.11(K). The other is a board's duty to accept a petition, including nominating petitions, unless a protest hearing is held or the board determines that an initiative petition "falls outside the scope of authority to enact via initiative or does not satisfy the statutory prerequisites to place the issue on the ballot, as described in [O.R.C. § 3501.38(M)]." O.R.C. § 3501.39(A).

**B.     A board's power to determine whether ballot proposals fall within the initiative power is limited, and parties may challenge ballot-eligibility decisions in mandamus suits.**

Ohio boards of elections have only the power to determine whether an initiative proposal falls within the initiative power—that is, whether it is something the municipality is "authorized by law to control by legislative action[.]" Ohio Const., art. II, §1f. As Ohio courts have long held, the initiative right does not exist for administrative, rather than legislative, matters. *State ex rel. Citizen Action for a Livable Montgomery v. Hamilton Cty. Bd. of Elections*, 115 Ohio St.3d 437, 875 N.E.2d 902, 908-909 (2007). Boards of elections therefore have "not only the discretion but an affirmative duty to keep such items off the ballot." *State ex rel. Walker v. Husted*, 144 Ohio St.3d 361, 43 N.E.3d 419, 423 (2015).

Parties may challenge the exercise of that duty (whether in support of a proposed initiative or against it) through a mandamus action. *See State ex rel. Canales-Flores v. Lucas Cty. Bd. of Elections*, 108 Ohio St.3d 129, 131, 841 N.E.2d 757 (2005) (holding that the proximity of an election establishes the lack of an adequate remedy at law). The reviewing court will determine "whether the board engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or pertinent law." *State ex rel. Citizen Action*, 875 N.E.2d at 908 (quoting *State ex rel. Valore v. Summit Cty. Bd. of Elections*, 87 Ohio St.3d 144, 145, 718 N.E.2d 415 (1999)). This analysis is conducted "consistent with [the court's] duty to liberally construe municipal initiative provisions to

permit the exercise of the power of initiative." *Id*. at 911 (quoting *State ex rel. N. Main St. Coalition v. Webb*, 106 Ohio St.3d 437, 835 N.E.2d 1222, 1232 (2005)).

Importantly, "this authority to determine whether a ballot measure falls within the scope of the constitutional power of referendum (or initiative) does not permit election officials to sit as arbiters of the legality or constitutionality of a ballot measure's substantive terms." *State ex rel. Walker*, 43 N.E.3d at 423. Even a substantively unconstitutional initiative proposal may fall within the legislative power, and will only become void "when declared unconstitutional by a court of competent jurisdiction." *Id*. at 424; *see also State ex rel. Cramer v. Brown*, 7 Ohio St. 3d 5, 6, 454 N.E.2d 1321 (1983) (holding that Ohio Supreme Court "will not consider, in an action to strike an issue from the ballot, a claim that the proposed amendment would be unconstitutional if approved, such claim being premature"); *State ex rel. N. Main St. Coalition*, 835 N.E.2d at 1230 (same). A proposed initiative's potential illegality, perhaps even as an improper exercise of home-rule power, is not grounds for a board of elections to invalidate it. *See State ex rel. Espen v. Wood Cty. Bd. of Elections*, Ohio Sup. Ct. 17-1313, Slip Op. 2017-Ohio-8223, 2017 Ohio LEXIS 2145, *4-*6 (2017) (plurality op.).

It is "well-established" that an administrative action—"executing or administering" a pre-existing ordinance—is not within a municipality's legislative authority and therefore cannot be taken by initiative. *State ex rel. Citizen Action*, 875 N.E.2d at 909, 911; *see also State ex rel. Ebersole*, 20 N.E.3d at 684-85 (noting the "30 year" history of the "well-established distinction between municipal legislative and administrative activity"). The Ohio Supreme Court has also held that municipal legislative authority does not include the ability to create a new cause of action. *State ex rel. Bolzenius v. Preisse*, Ohio Sup. Ct. 18-1221, Slip Op. 2018-Ohio-3708, 2018 Ohio LEXIS 2186, *7-*9 (2018); *see also State ex rel. Khumprakob v. Mahoning Cty. Bd.*

5

*of Elections*, Ohio Sup. Ct. 18-0404, Slip. Op. 2018-Ohio-1602, 2018 Ohio LEXIS 881, *5-*6 (2018) (holding that proposed charter amendment did not create a new cause of action and therefore, despite being potentially unconstitutional, "the board abused its discretion" in excluding from the ballot). Similarly, the Ohio Supreme Court has held that an initiative proposal that attempts to enact a felony offense is not within the municipal legislative power because "the authority to define and to propose penalties for felonies is limited to the General Assembly[.]" *State ex rel. Sensible Norwood v. Hamilton Cty. Bd. of Elections*, 148 Ohio St.3d 176, 69 N.E.3d 696, 699 (2016).

### C. Plaintiffs allege that Ohio's initiative-certification laws violate the First Amendment, both facially and as applied to them.

Plaintiffs do not directly challenge the substantive decision not to certify their initiative proposals because they are not within the municipal legislative authority. Instead, they seek declarations that O.R.C. §§ 3501.11(K), 3501.38(M)(1)(a), and 3501.39(A) are unconstitutional both facially and as-applied per the First Amendment, and an injunction prohibiting their enforcement. Compl., Doc. 1, at Prayer. Plaintiffs do not argue that the challenged statutes have prevented them from circulating their initiative petitions, from speaking in support of their initiative petitions, or from speaking about their views generally. Instead, Plaintiffs essentially argue that they have a protected First Amendment interest in placing a local initiative proposal on the ballot, regardless of whether it falls within the initiative power granted by the Ohio Constitution. Plaintiffs allege two theories: that the challenged laws impose 1) an impermissible prior restraint upon their protected speech right to have their initiative placed on the ballot because the laws lack the *Freedman v. Maryland*, 380 U.S. 51 (1965) requirements; and 2) a content-based restriction on their protected speech right to have their initiatives placed on the ballot. *See* Compl., Doc. 1.

6

With their Complaint, Plaintiffs also filed a motion for a preliminary injunction and/or a temporary restraining order enjoining the enforcement of the statutes. Doc. 3. Defendants opposed the motion. Docs. 17 and 18. On September 17, 2018, the Court held a hearing and oral argument on Plaintiffs' motion for preliminary relief, and on September 19, 2018 ordered the Defendants to place the initiative petitions at issue in the case on the November 2018 ballot. Minute Entry, Doc. 21; Op. and Order, Doc. 22 at 10. On October 3, 2018, the Court extended the temporary restraining order for an additional 14 days. Order, Doc. 26.

On October 4, 2018, following a telephone status conference with the parties, the Court converted the temporary restraining order to a preliminary injunction that expires on November 7, 2018. Order, Doc. 28. The Court also issued a briefing and argument schedule to decide the remaining issue in the case: Plaintiffs' facial challenge to O.R.C. §§ 3501.11(K), 3501.38(M)(1)(a), and 3501.39(A). *Id*.

Aside from the allegations in their Complaint, Plaintiffs have presented no evidence in support of their claims. As alleged, Plaintiffs William Schmitt and Chad Thompson circulated petitions to amend the codified ordinances of the Villages of Windham and Garrettsville. Compl., Doc. 1, ¶¶ 17-19. Plaintiff Debbie Blewitt signed the Windham petition. *Id.* ¶ 28. Plaintiffs allege that both initiative petitions complied with all relevant law regarding signatures and timeliness. *Id.* ¶ 21.

Plaintiffs allege that the Portage County Board of Elections refused to certify both initiative proposals to the ballot because "the initiatives are administrative in nature, rather than legislative" and "[a]dministrative actions are not appropriate for initiative petitions." *Id.* ¶ 22; *see also id.*, Exs. 1-3. Plaintiffs allege that the Board notified Plaintiffs Schmitt and Thompson that their initiative proposals had not been certified on the same day. *Id.* ¶ 24. The Board explained that the

proposals' change to court costs was "administrative in nature" and the petitions therefore "deal with subject matter that is not subject to the initiative process[.]" *Id.* ¶¶ 25-26.

Pursuant to the Court's October 4, 2018 Order, the Secretary now files this brief in opposition to Plaintiffs' facial challenge.

## III.   LAW AND ARGUMENT

Plaintiffs' facial challenge fails under every asserted theory.  As an initial matter, Plaintiffs fail to allege any burden on their First Amendment rights.  Plaintiffs do not argue that they were prevented from circulating their initiative petitions, or speaking in support of their initiative petitions, or even that their initiative petitions fall within the right granted by the Ohio Constitution.  Instead, they only ask the Court to find that they have a protected First Amendment interest in having their initiative petitions, whatever their content, appear on the ballot.  Courts across the country have held to the contrary: while the First Amendment protects political speech that surrounds an initiative effort, it does not protect the ability to make law by initiative, nor the right to speak through the state's ballot.  Because Plaintiffs fail to identify a protected First Amendment interest to begin with, their facial challenge must fail.

Even assuming that the challenged laws burden protected speech in some way, that burden is slight and is outweighed by Ohio's interests in maintaining an orderly ballot, avoiding voter confusion, and supporting voter confidence in the electoral system.  As the Sixth Circuit recently held, a ballot-eligibility requirement that applies to all initiative proposals, regardless of the particular topic they address or the policy viewpoint they take, is content-neutral.  Such a content-neutral, nondiscriminatory limitation on the initiative process is outweighed by the state's strong orderly-election interests.  *Comm. to Impose Term Limits on the Ohio Supreme Court v. Ohio Ballot Bd.*, 885 F.3d 443, 448 (6th Cir.2018); *Taxpayers United for Assessment*

*Cuts v. Austin*, 994 F.2d 291, 297 (6th Cir.1993).  Even assuming some First Amendment injury, the challenged laws survive appropriate rational basis review.

Plaintiffs' arguments for strict scrutiny review fail for these same reasons.  No court has ever held that the state's ballot is a public forum and, even if it were, the Supreme Court "ha[s] never required that a content-neutral permit scheme regulating speech in a public forum adhere to the procedural requirements set forth in *Freedman*."  *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322 (2002).  Again, even assuming that Plaintiffs have alleged an impairment of their First Amendment rights (which they have not), their arguments for strict scrutiny fail: the ballot is not a public forum and, even if it were, the content-neutral statutes Plaintiffs challenge are not subject to *Freedman*.

Finally, to the extent Plaintiffs challenge laws that they were not injured by, or bring legal claims that they have not supported in briefing, they are not entitled to relief.  The statutes that Plaintiffs broadly challenge contain provisions that do not relate to the injury they allege. Even in a First Amendment context, a plaintiff is not entitled to relief from laws that did not cause an alleged injury.  And to the extent Plaintiffs bring a due process challenge, they have failed to support the claim in argument or briefing.  Any such claim is therefore waived.

Accordingly, and as argued below, Plaintiffs have failed to meet their high burden to facially invalidate O.R.C. §§ 3501.11(K), 3501.38(M)(1)(a), and 3501.39(A) and their request for relief should be denied.

### A.    Plaintiffs' facial challenge is subject to a demanding legal burden.

Plaintiffs face a heavy burden on the merits because they seek to *facially* enjoin O.R.C. §§ 3501.11(K), 3501.38(M)(1)(a), and 3501.39(A).  A facial attack on a statute "is momentous and consequential."  *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013).  In a First Amendment facial challenge to a statute, a plaintiff "must show substantial overbreadth: that the

9

statute prohibits a substantial amount of protected speech both in an absolute sense and relative to [the statute's] plainly legitimate sweep[.]" *Id*. (internal quotations omitted). Facial relief is "disfavored" by the courts. *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008). Plaintiffs cannot meet this heavy burden, as argued below, and their request for facial relief must therefore be denied.

**B.      Plaintiffs have alleged a limited injury and therefore lack standing to broadly invalidate the laws they challenge.**

Plaintiffs lack standing to the extent that they attack statutory provisions that have not injured them. Here, Plaintiffs complain that they were injured by a board of election's determination that their proposed initiatives were "administrative" rather than "legislative" and therefore outside of the initiative power. Compl., Doc. 1, ¶¶ 22, 26; *see also id*. at Exs. 3, 4. Plaintiffs make no other allegation regarding past or future injury. Their challenge casts a far broader net than that one purported snag, however. Plaintiffs generally challenge Ohio Rev. Code § 3501.38(M)(1)(a), which includes provisions that were not used to exclude their initiative proposals from the ballot, and which they do not allege may injure them in the future. Moreover, Plaintiffs generally challenge Ohio Rev. Code §§ 3501.11(K) and 3501.39(A), which extend to types of petitions not at issue in this suit (such as nominating petitions and countywide initiative petitions). *See id*. at Prayer. Accordingly, to the extent Plaintiffs challenge Ohio laws that they do not allege have injured them, Plaintiffs lack standing even in the First Amendment context.

"Article III of the Constitution gives federal courts subject matter jurisdiction over actual cases or controversies, neither of which exists unless a plaintiff establishes his standing to sue." *Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir.2012). Standing "is a threshold question in every federal case." *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir.2012). To establish standing, Plaintiffs must show that: (1) they have suffered "a concrete and particularized injury,"

whether actual or imminent; (2) the injury is traceable to the defendant; and (3) a favorable judgment will provide redress. *Morrison v. Bd. of Educ.*, 521 F.3d 602, 608 (6th Cir.2008). The injury cannot be merely conjectural or hypothetical. *McGlone*, 681 F.3d at 729.

In the present case, the Plaintiffs' alleged injuries are limited to the challenged statutes only insofar as they concern initiative petitions to enact a local ordinance. Their purported injuries have nothing to do with other aspects of those laws, such as petitions to amend a municipal charter; review for compliance with the municipality's home rule authority; nominating petitions; declarations of candidacy; or written protests. *See* Ohio Rev. Code § 3501.38(M)(1)(a) (dealing with "petitions" generally and home rule authority); Ohio Rev. Code § 3501.11(K)(1) (requiring county boards of elections to review sufficiency of "petitions" generally and "nomination papers"); Ohio Rev. Code § 3501.39(A) (governing review of "petitions" generally and candidacies where, in part, a written protest is filed). Plaintiffs rest their claims on the Portage County Board of Elections' rejection of their initiatives for the reason that the "initiatives are administrative in nature, rather than legislative." Compl., Doc. 1, ¶¶ 22, 26; *see also id.*, Exs. 3, 4. Plaintiffs include no allegations to indicate they have suffered any injuries with respect to any provision except those authorizing the Board to reject their initiative petition if it is administrative.

Nor can Plaintiffs argue standing by construing their claims as a facial overbreadth attack on the statutes. The Sixth Circuit has rejected "the idea that an injury in fact under one provision creates standing to challenge other distinct provisions of [an] ordinance" in the First Amendment context. *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 350-51 (6th Cir. 2007) ("Prime Media's standing with regard to the size and height requirements does not magically carry over to allow it to litigate other independent provisions of the ordinance without a separate showing of

11

an actual injury under those provisions."). Even if Plaintiffs have articulated standing to challenge certain provisions of Ohio law, Plaintiffs are not entitled to challenge provisions that have not injured them. Accordingly, to the extent Plaintiffs challenge Ohio laws that are not alleged to have injured them, Plaintiffs lack standing.

> **C.** **Plaintiffs fail to allege any burden on protected First Amendment speech and therefore fail to state a claim.**

It is important to understand the question that Plaintiffs put to the Court. Plaintiffs do not argue that they were prevented from circulating their initiative petitions. Plaintiffs do not argue that they were prevented from speaking in support of their initiative petitions. And they do not argue that, as a matter of state law, their initiative petitions fall within the legislative power of Ohio municipalities. Instead, they ask the Court to find that they have a protected First Amendment interest in having initiative petitions, whatever their content, appear on the ballot. While the Sixth Circuit has not yet answered that specific question, appellate courts across the country have: Plaintiffs have no such right. While the First Amendment protects the political discourse that surrounds an initiative effort, it does not protect the ability to make law by initiative, nor grant the right to speak through the state's ballot. Therefore, Plaintiffs fail to identify a protected First Amendment interest and their facial challenge must fail.

1. Circuit courts have repeatedly drawn a distinction between "political speech incident to an initiative campaign," which is protected by the First Amendment, and "the right to make law, by initiative or otherwise[,]" which it does not. *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1099 (10th Cir.2006). For example, the D.C. Circuit examined a Congressional enactment that prevented the District of Columbia from passing any law, by initiative or otherwise, that reduced penalties for drug-related crimes. *Marijuana Policy Project v. United States*, 304 F.3d 82, 83 (D.C. Cir.2002). Plaintiff, an advocacy group, wished to

12

circulate an initiative petition legalizing medical marijuana. *Id*. at 84.  The D.C. Board of Elections and Ethics refused to certify the initiative petition for circulation because it did not constitute a "proper subject" for an initiative.  *Id*.  The plaintiff challenged the limitation on the initiative power on First Amendment grounds.  *Id*.  The district court agreed and struck the restriction, finding that it interfered with "core political speech" and "D.C. citizens' First Amendment rights to use the city's ballot initiative process to enact medical marijuana legislation."  *Id*.

But the appellate court reversed, holding that the restriction "implicates no First Amendment concerns" because it dealt with a legislative act—the initiative process—rather than "urging or opposing the enactment of legislation"—protected speech.  *Marijuana Policy Project*, 304 F.3d at 83; *see also Biddulph v. Mortham*, 89 F.3d 1491, 1497 (11th Cir.1996) ("In the initiative process people . . . enact change by bypassing their representatives altogether.").  The court began by noting that the initiative process is "'a power of direct legislation by the electorate.'"  *Marijuana Policy Project*, 304 F.3d at 85 (quoting *Convention Ctr. Referendum Comm. v. D.C. Bd. of Elections & Ethics*, 441 A.2d 889, 897 (D.C. 1981) (en banc)).  While the "First Amendment protects public debate about legislation, it confers no right to legislate on a particular subject."  *Id*.  Because no speech was implicated in the case—the "[challenged enactment] silences no one"—all of the plaintiff's First Amendment theories failed: there was no viewpoint discrimination because no speech was implicated; there were no limitations on private political speech because no speech was implicated; and there was no public-forum analysis needed because no speech was implicated.  *Id*. at 86-87.  "In sum, the [] limitation on District of Columbia legislative authority restricts no First Amendment right."  *Id*. at 87.

Other Circuits agree. The Tenth Circuit held that a constitutional provision requiring a supermajority to pass an initiated law related to wildlife management "does not implicate the First Amendment at all," and affirmed the dismissal of the plaintiffs' First Amendment claims for failure to state a claim. *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1099 (10th Cir.2006). Just as in *Marijuana Policy Project*, the Tenth Circuit noted the distinction between laws "that regulate or restrict the communicative conduct of persons advocating a position in a referendum, which warrant strict scrutiny," and, on the other hand, laws "that determine the process by which legislation is enacted, *which do not*." *Id*. at 1099-1100 (emphasis added); *see also Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1208-1211 (10th Cir.2002) (holding First Amendment speech not implicated by an initiative process for home-rule counties but not statutory counties); *Skrzypczak v. Kauger*, 92 F.3d 1050, 1053 (10th Cir.1996) (overruled on other grounds) (finding removal of a ballot measure during a pre-screening process did not implicate plaintiff's First Amendment rights because it did not prevent speech and no authority "establish[ed] a right to have a particular proposition on the ballot").

The court found that the supermajority requirement at issue did not actually regulate speech, but was instead a limitation on the state-created right to an initiative process; plaintiffs' First Amendment claim therefore arose "from a basic misunderstanding" of that distinction. *Walker*, 450 F.3d at 1101. Unconstitutional laws that regulate speech during the initiative process include "a requirement that petition circulators be registered voters, a requirement that petition circulators wear a name badge, and certain reporting requirements applicable to proponents of an initiative." *Id*. at 1099 (citing *Am. Constitutional Law Found., Inc. v. Meyer*, 120 F.3d 1092, 1100-05 (10th Cir.1997), aff'd sub nom. *Buckley v. Am. Constitutional Law Found., Inc*., 525 U.S. 182, (1999)). Another example is a law that makes it a felony to pay a

14

petition circulator. *Id*. at 1099 (citing *Meyer v. Grant*, 486 U.S. 414, 416 (1988)). Because the supermajority requirement did not restrict the dissemination of ideas, or the speech of circulators or proponents, it did not implicate the First Amendment and did not burden core political speech at all. *Id*. at 1101.

For the same fundamental reason, the Tenth Circuit rejected the plaintiffs' remaining First Amendment theories. Plaintiffs argued that the supermajority requirement discriminated on the basis of viewpoint or subject matter. The court explained that in order to be a content-based speech restriction, a provision must actually contain some restriction of protected speech in the first instance. Without a regulation of protected speech, the question of "[w]hether it discriminates on the basis of viewpoint is [] beside the point." *Id*. at 1104. The court also rejected the plaintiffs' overbreadth and chill arguments. Again, the court held that because the supermajority requirement did not invade any First Amendment rights to begin with, the overbreadth doctrine (and any corresponding "chill" on future speech) simply was not applicable. *Id*. at 1105.

Most recently, the Seventh Circuit examined an Illinois law that limited the number of initiatives that could appear on the ballot to the first three proposals certified. *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935 (7th Cir.2018). Under Illinois' initiative process, citizen-initiated proposals had to meet signature-gathering requirements that were not applicable to municipalities. *Id*. at 936. This system allowed a municipality to "get its own proposals on the ballot first—even if the real goal of those proposals is just to prevent the private ones from appearing." *Id.* at 937. The plaintiff argued that this system, effectively barring citizen-initiated proposals from the ballot by "allowing a unit of government to fill the available slots," violated the First Amendment. *Id.*

15

The Seventh Circuit disagreed. It first observed that "[n]othing in the Constitution guarantees direct democracy[,]" including the First Amendment. *Id*. at 937. For that reason, no federal court has "ever concluded that the ballot is a public forum that must be opened to referenda, let alone to as many referenda as anyone cares to propose." *Id*. While a state can, of course, grant the right to propose initiative measures, that state-created right is one "that the First Amendment does not guarantee." *Id*. at 938 (citing *Meyer v. Grant*, 486 U.S. 414 (1988)). Once again, because the law at issue did not implicate a speech component, the case did not present a First Amendment question at all. *Id*.

And a recent state appellate case, relying on Ninth Circuit jurisprudence, rejected arguments almost identical to the Plaintiffs' here. In *Port of Tacoma v. Save Tacoma Water*, the plaintiffs began to circulate initiative petitions to amend a municipal charter. 422 P.3d 917, 919-20 (Wash. Ct. App. July 25, 2018). During the circulation process, opponents of the proposed charter amendments filed a complaint in court to prevent the placement of the initiatives on the ballot. *Id*. at 920. The trial court enjoined county officials from placing the initiatives on the ballot, finding that they exceeded the local initiative power. *Id*. Supporters of the initiatives appealed, alleging that the trial court's injunction violated their First Amendment rights.

The appellate court disagreed, again recognizing the distinction between protected speech that attends an initiative effort, and the legislative process of promulgating an initiative measure itself. *Id*. at 925. The court began by recognizing that "'the *circulation* of a[n initiative] petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Id*. at 924-25 (emphasis added) (quoting *Meyer v. Grant*, 486 U.S. 414, 421-22 (1988)). But the supporters' First Amendment argument reduced to a different question: whether they have "a constitutional right to place an initiative on the ballot,

16

whether or not authorized by state or local law." *Id*. at 925. The plaintiffs, the court noted, failed to "cite[ ] any authority for the proposition that one has *a free speech right* to have a local measure beyond the scope of the initiative power appear on the ballot." *Id*. (emphasis added). Indeed, "[t]his argument was rejected by the Ninth Circuit in *Angle v. Miller*, 673 F.3d 1122, 1133 (2012)." *Id.* (citing *Meyer v. Grant*, 486 U.S. 414, 424 (1988)).

2.      Plaintiffs' claims in this case suffer from exactly the same "fundamental misunderstanding" at issue in *Marijuana Policy Project*, in *Walker*, in *Jones*, and in *Port of Tacoma*. Plaintiffs do not allege that they were prevented from circulating their petitions. *See* Compl., Doc. 1, ¶¶ 18-19. They do not allege that they were prevented from speaking in support of their petitions. They do not argue that the State cannot limit the proper subjects of an initiative petition. *See* Pls.' Reply, Doc. 19, at 11 ("States have the power, just like the Congress, to restrict initiatives to select subjects and topics."). And they do not argue here that, as a matter of state law, their petition fell within an appropriate subject for an initiative. Their First Amendment argument therefore presents the same question posed in *Port of Tacoma*: whether there is a First Amendment right to place a particular petition on the ballot, whether or not it falls within the state-created initiative right.

The answer must be no. A state may appropriately limit the subjects available for initiative, and there is no protected speech implicated by denying the initiative option to certain subjects. *Marijuana Policy Project v. United States*, 304 F.3d 82, 87 (D.C. Cir.2002); *Port of Tacoma v. Save Tacoma Water*, 422 P.3d 917, 925 (Wash. Ct. App. July 25, 2018). Even assuming Plaintiffs' petitions fall within Ohio's initiative power, a process that endeavors to screen out unauthorized petitions does not implicate the First Amendment. *See Marijuana Policy Project v. United States*, 304 F.3d 82, 84 (D.C. Cir.2002); *Skrzypczak v. Kauger*, 92 F.3d

17

1050, 1053 (10th Cir.1996) (overruled on other grounds).  Again, regulation of the initiative process itself—like a supermajority requirement for passing a wildlife management law, or a limitation on the number of initiative ballot slots available—does not implicate protected speech. *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1101 (10th Cir.2006); *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 938 (7th Cir.2018).  The Ohio Constitution reserves the power of initiative "to the people of each municipality on all questions which [it is] authorized by law to control by legislative action[,]" but only in the manner "provided by law."  Ohio Const., Art. II, § 1f.  The laws challenged by Plaintiffs simply do not implicate protected speech, but rather a procedural component of a limited, state-created right as to which a state-created mandamus remedy exists.  Without protected speech, Plaintiffs' First Amendment claims fail as a matter of law.

> ### D.   Even assuming Plaintiffs have alleged an injury to their First Amendment rights, the challenged statutes pass rational basis review under the *Anderson-Burdick* framework.

The Court need not engage in any balancing analysis because Plaintiffs' First Amendment claims fail as a matter of law.  *See supra* Part III.C.  Here, Plaintiffs have not articulated any infringement or burdens on a right protected by the First Amendment.  Because Plaintiffs' First Amendment rights are not burdened, the challenged statutes' constitutionality "depends on whether the rule has a rational basis, not on the First Amendment." *Jones*, 892 F.3d at 938.  There is no question that the challenged statutes further the state's interests in simplifying the ballot, minimizing voter confusion, and ensuring voter confidence in the electoral system. *See infra* at 21.  In light of these important state interests, the statutes must stand.

But even if Plaintiffs could articulate some impairment of their First Amendment rights (which they have not done), the challenged statutes are still constitutional under *Anderson-Burdick* balancing.  The Sixth Circuit has confirmed the applicability of this standard in a wide

variety of election challenges, including situations "[w]hen a plaintiff alleges that a state has burdened voting rights[.]" *Obama for Am. v. Husted*, 697 F.3d 423, 429 (6th Cir.2012). This approach conforms to the Supreme Court's application of *Anderson-Burdick* balancing to a "broad[ ] range of voting rights contexts." *Id.* (citing *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 204 (Scalia, J., concurring) ("To evaluate a law respecting the right to vote— whether it governs voter qualifications, candidate selection, or the voting process—we use the approach set out in *Burdick*[.]").

The Supreme Court has emphasized the importance of state regulation of elections, stating that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 729-30 (1974). As a result, courts consider constitutional challenges under the "flexible framework" developed by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780 (1983). The test requires that the court in the first instance "consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." *Anderson*, 460 U.S. at 789; *see also Burdick v. Takushi*, 504 U.S. 428, 432-34 (1992). Thus, "when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Anderson*, 460 U.S. at 789; *see also Timmons v. Twin Cities Area New Party*, 520 U.S. 350, 351 (1997). That is, "minimally burdensome and nondiscriminatory regulations are subject to a less-searching examination closer to rational basis and the State's important regulatory interests are generally sufficient to justify the restrictions." *Comm. to Impose Term Limits on the Ohio Supreme Court v. Ohio Ballot Bd.*, 885 F.3d 443, 448

(6th Cir.2018) ("*CITL*") (quoting *Anderson*, 460 U.S. at 627); *see also Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 297 (6th Cir.1993) (applying less-searching review under *Anderson* to a ballot-eligibility requirements for initiative petitions).

The statutes challenged here pass constitutional muster under this test. As explained above, these statutes do not impose any burden on the Plaintiffs' First Amendment rights. *See supra* Part III.C. But even assuming the possibility of some First Amendment injury, any such burden is minimal. *See Ohio Council 8 Am. Fedn. of State v. Husted*, 814 F.3d 329, 336-37 (6th Cir. 2016) (indulging plaintiffs' inference that challenged law burdened First Amendment rights but finding any injury minimal). Plaintiffs do not argue that they have an initiative right to enact a non-legislative ordinance. They do not contest that this limitation on the initiative right applies to all initiative proposals, no matter their content. *See CITL*, 885 F.3d at 447-48 (holding single-subject requirement for statewide initiatives is not content-based because it applies to all initiatives); *see also State ex rel. Bolzenius v. Preisse*, Ohio Sup. Ct. 18-1221, Slip Op. 2018-Ohio-3708, 2018 Ohio LEXIS 2186, *11 (2018) (finding statute is not content-based "because it applies to all municipal initiative proposals—not just relators'—regardless of the proposal's content"). Plaintiffs do not argue that they lack other avenues to "convey [their] message." *Ohio Council 8*, 814 F.3d at 336. They disagree only with a board of elections' duty to ensure that their initiative proposal is eligible for placement on the ballot.

But boards of elections make determinations on any number of ballot-eligibility issues without offending the First Amendment. For example, boards determine the eligibility of all signatories to an initiative petition. *See Taxpayers United for Assessment Cuts*, 994 F.2d at 293 (analyzing review of initiative petition signatures per statute). And to challenge any number of ballot-eligibility determinations, the affected party files a lawsuit. *See*, *e.g.*, *State ex rel. Heavey*

20

*v. Husted*, 152 Ohio St.3d 579, 99 N.E.3d 372, 373 (2018) (challenging in mandamus the verification of signatures on a declaration of candidacy and petition).  Plaintiffs have cited no legal authority finding that this recourse burdens First Amendment rights.  These duties do not implicate a First Amendment interest, *id*. at 296-97, but, even if they did, any injury would be minimal, *Ohio Council 8*, 814 F.3d at 337.

The state has strong interests justifying its nondiscriminatory requirement that local initiatives fall within a municipality's legislative authority.  Otherwise, a municipality could enact by citizen-initiated ordinance a measure that it has no legislative authority to pass.  And the State has an important interest in keeping unauthorized initiative proposals off the ballot itself.  It simplifies the ballot.  *See Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 938 (7th Cir.2018) ("[S]tates have a strong interest in simplifying the ballot."); *see also Munro v. Socialist Workers Party*, 479 U.S. 189, 194-95 (1986) (noting the Supreme Court has "never required a State to make a particularized showing of the existence of voter confusion [or] ballot overcrowding . . . prior to the imposition of reasonable restrictions on ballot access").  It prevents voter confusion.  *See CITL*, 885 F.3d at 448 (finding Ohio's single-subject requirement helps to avoid voter confusion).  And it furthers the State's interest in maintaining voter confidence in the government and electoral process.  *See First Natl. Bank v. Bellotti*, 435 U.S. 765, 788-89 (1978) (recognizing that "equally" of the highest importance is the "[p]reservation of the individual citizen's confidence in government").  These interests justify any minimal burden that Ohio law imposes on Plaintiffs' First Amendment rights, assuming any burden in the first place.

> **E.    An initiative process also does not implicate expressive content but, even if it did, the statutes at issue would pass review under *O'Brien* intermediate scrutiny.**

The majority of courts examining a First Amendment challenge to a regulation of a state initiative process have identified no impairment of First Amendment rights in the first instance.

*See supra* Part III.C. The only court to diverge from this authority appears to be the First Circuit, which identified an expressive conduct component within the initiative process and therefore applied intermediate scrutiny to a limitation on that state-created right. *See Wirzburger v. Galvin*, 412 F.3d 271 (1st Cir.2005). No other Circuits have followed that precedent, however, and the Tenth Circuit has expressly disagreed with the reasoning underlying the *Wirzburger* decision. This Court should do the same. But even if this Court disagrees and applies intermediate scrutiny to the laws challenged in this case, the result will be the same. Applying intermediate scrutiny, the *Wirzburger* court upheld the initiative restriction at issue; the laws at issue in this case will similarly withstand even a heightened First Amendment review.

In *Wirzburger*, the First Circuit examined a constitutional limitation on the initiative power reserved to Massachusetts' citizens, which prevented any change by initiative to the state's constitutional prohibition on providing public financial support to private schools, and to matters dealing with religious institutions. *Id*. at 274-75. The plaintiffs wished to amend the Massachusetts Constitution to allow public financial support to be directed toward private, religiously-affiliated schools. *Id*. at 274. They submitted their proposed initiative to the Massachusetts Attorney General for certification. The Attorney General denied certification because the state constitution expressly excluded the subject of the measure from the initiative process. *Id*. at 274-75.

Plaintiffs challenged these restrictions on First Amendment grounds, arguing that they were content-based restrictions on core political speech subject to strict scrutiny. *Id*. at 275. The First Circuit recognized that "[t]he difficulty with the appellants' argument is that a state initiative procedure, although it may involve speech, is also a procedure for generating law, and is thus a process that the state has an interest in regulating, apart from any regulation of the

22

speech involved in the initiative process." *Id*. at 275.  Because the restrictions were not aimed at communicative impact but instead were designed to prevent a harm independent of speech—"the use of the initiative process for the passage of certain types of laws believed to be unsuited to that process"—the First Circuit concluded that the restrictions should not be presumed unconstitutional and should not be subject to strict scrutiny. *Id*.  The court clearly recognized the distinction between laws regulating the act of creating law via an initiative process versus laws "such as those considered in *Meyer* and its progeny [which] were aimed at directly regulating the *means* that initiative proponents could use to reach their audience of potential petition signers." *Id*. at 277 (emphasis original).  The court therefore declined to apply strict scrutiny to analyze the challenged restrictions. *Id*.

Instead, the court determined that the restrictions should be subject to intermediate scrutiny, concluding that the regulated course of conduct contains both speech and non-speech components. *Id*. at 275, 279.  This formulation has not been followed by other courts, and has been specifically rejected by the Tenth Circuit. *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1102 (10th Cir.2006).  First, the Tenth Circuit disagreed that there exists an "expressive conduct" component—akin to flag burning or nude dancing—involved in the initiative process itself.  Rather, an initiative process is a means of direct legislative action by the people, a structural component of government.  While a subject-matter restriction on the initiative process might conceivably affect some speech, it does not prohibit expressive conduct in the same way that, for example, a criminal statute prohibiting draft card burning does. *Id*. at 1102 (citing *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1192 (10th Cir.2003) (dealing with nude dancing), *O'Brien*, 391 U.S. 367, 376-77 (1968) (involving criminal penalties for draft card mutilation); *Texas v. Johnson*, 491 U.S. 397 (1989) (involving criminal penalties for flag

burning), and *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288 (1984) (involving restrictions on camping in national parks)).

Second, the Tenth Circuit observed that the "argument for intermediate scrutiny is fundamentally at odds with the idea of constitutional limitations on the democratic process." *Id*. at 1102. For example, the constitutional prohibition against cruel and unusual punishment makes the passage of a law permitting torture very difficult, if not impossible. *Id*. at 1104. There is, however, no First Amendment component to that prohibition.

Finally, the Tenth Circuit objected to making federal courts the deciders of "the virtues and vices of the particular initiatives that are affected by the limitation." *Id*. at 1103. That is, in assessing whether a restriction on a particular topic serves a "substantial government interest," a court will necessarily be making its own judgment about the significance of various initiative topics. *Id*. The determination of "which subjects should be insulated from democratic change" is properly left to "the people and their representatives, and not judges[.]" *Id*. The Tenth Circuit therefore declined to follow the First Circuit and apply intermediate scrutiny under *O'Brien*. This Court should do the same.

Even if this Court were to engage in that review, the challenged statutes would survive. Under intermediate scrutiny, challenged regulations are appropriate if "(1) the regulation is within the constitutional power of the Government; (2) it furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free expression; and (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Wirzburger*, 412 F.3d at 279 (internal quotations omitted). In *Wirzburger*, the court had "no difficulty finding" that the state "has a substantial interest in maintaining the proper balance between promoting free exercise and

preventing state establishment of religion" and in "restricting the means by which these fundamental rights can be changed." *Id*. The challenged restrictions were also "aim[ed] at preventing certain uses of the initiative process, not at stemming expression[.]" *Id*. The court had rejected the plaintiffs' "non-speech-related [Free Exercise and Equal Protection] constitutional challenges" and therefore found that the challenged restriction were within the government's power. *Id*. The final *O'Brien* requirement was also met because "the restriction on speech is no more than is essential." *Id*. The *Wirzburger* court therefore found that the challenged restrictions on the initiative process did not violate the First Amendment.

The same is true for Ohio. Ohio has an important interest in ensuring that only measures within the legislative power of municipalities appear on the ballot, that the structural distribution of legislative power in the state is maintained, and that public confidence in the mechanics of government and voting are preserved. These interests are not aimed at suppressing free expression—no particular subject or viewpoint is singled out. *See Comm. to Impose Term Limits on the Ohio Supreme Court v. Ohio Ballot Bd.*, 885 F.3d 443, 447-48 (6th Cir.2018) (holding single-subject requirement for statewide initiatives is not content-based because it applies to all initiative proposals). And as in *Wirzburger*, other than removing these types of measures from the initiative process and ballot, there is "no other way in which [the state] could achieve its interest in safeguarding" the division of legislative power throughout Ohio. *Wirzburger*, 412 F.3d at 279. Even under an intermediate level of scrutiny, the challenged laws do not burden First Amendment protections.

> **F. Plaintiffs' remaining arguments for strict scrutiny under the public-forum and prior-restraint doctrines also fail as a matter of law.**

Without citation to any relevant legal authority, Plaintiffs attempt to apply to Ohio's initiative process the prior-restraint doctrine as considered in the context of public forums. This

argument fails. First, the ballot is not a public forum. Second, Plaintiffs fail to show that the prior restraint doctrine applies to ballot regulations. Finally, even if the prior restraint doctrine applies to the challenged statutes, they pass constitutional muster.

### 1.   The ballot is not a public forum.

Plaintiffs fail to show any infringement on protected speech because Plaintiffs have no First Amendment right to have any particular initiative proposal appear on the ballot. *See supra* Part III.C. But even assuming forum analysis applies to the ballot (which it does not), Plaintiffs' argument must fail.

Because "[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property," the Supreme Court has long held that the "forum" doctrine governs the constitutionality of speech restrictions on government-controlled property. *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 799 (1985). Under that analysis, courts determine whether "the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *United States v. Kokinda*, 497 U.S. 720, 726 (1990) (internal quotation omitted). Regulations of speech in traditional public forums, "places which by long tradition or by government fiat have been devoted to assembly and debate" are subject to strict scrutiny. *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U. S. 37, 45-46 (1983).

In contrast, in a nonpublic forum—a space that "is not by tradition or designation a forum for public communication"—the government has significant flexibility to fashion rules limiting speech. *Perry Ed. Assn.*, 460 U.S. at 46. The government may reserve such a forum "for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the

26

speaker's view." *Id.* Thus, restraints on speech in a nonpublic forum will be upheld unless they are unreasonable or rely on impermissible viewpoint discrimination.

Without any apparent support from case law, Plaintiffs argue that the ballot is a public forum. Pls.' Mot., Doc. 3, at 15-18; Pls.' Reply to Defs.' Responses, Doc. 19, at 13-15. But "the State controls the content of the ballot, which we have never considered a public forum." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 461 (2008) (Roberts, C.J., concurring). Rather than vehicles to be used as a means of communicating, "[b]allots serve primarily to elect candidates, not as fora for political expression." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 362-63 (1997); *Ohio Council 8 Am. Fedn. of State v. Husted*, 814 F.3d 329, 336 (6th Cir.2016) (finding "a political party has no First Amendment right to use the general-election ballot for expressive activities"). Indeed, the Supreme Court similarly held that a "polling place in Minnesota qualifies as a nonpublic forum [because it] is, at least on Election Day, government-controlled property set aside for the sole purpose of voting." *Minnesota Voters Alliance v. Mansky*, ___U.S.___, 138 S.Ct. 1876, 1886 (2018). In short, the Supreme Court has "rejected the notion that the First Amendment confers a right to use governmental mechanics to convey a message." *Nev.Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 127 (2011).

The Sixth Circuit has also never found the ballot to be a public forum. Rather than subjecting ballot-access laws to the stringent standards afforded to regulation of protected speech in public forums, it has time and again upheld reasonable and nondiscriminatory State regulation of ballot content. *See Ohio Council 8*, 814 F.3d 329; *Commt. to Impose Term Limits on the Ohio Supreme Court v. Ohio Ballot Bd.*, 885 F.3d 443, 445 (6th Cir.2018) ("*CITL*"); *Schrader v. Blackwell*, 241 F.3d 783 (6th Cir.2001).

Even assuming the ballot somehow could be characterized as a nonpublic forum, the laws Plaintiffs challenge are reasonable and do not discriminate based on a particular viewpoint. Nondiscriminatory restrictions on the initiative process are constitutionally sound.  *CITL*, 885 F.3d at 448.  In *CITL*, the Sixth Circuit held that the separate-petition requirement was content-neutral because "[i]t applies to all initiative petitions, no matter the topic discussed or idea or message expressed." *Id*. at 447.  Likewise, the statutes challenged here apply regardless of the message conveyed in the initiative petition.  The limitations on local initiative authority apply with equal force regardless of the content of a proposed petition; the requirements apply equally across all subject matters and no matter the viewpoint expressed.  In sum, by applying equally to all initiatives, the challenged statutes are content-neutral.

Separately, the challenged statutes are reasonable.  As *CITL* acknowledged, state statutes regulating ballots serve "legitimate and strong state interests" such as "avoid[ing] confusion" and "promot[ing] informed decision-making[.]"  *CITL*, 885 F.3d at 448 (internal quotation omitted); *see also Munro v. Socialist Workers Party*, 479 U.S. 189, 194-95 (1986) (noting the Supreme Court has "never required a State to make a particularized showing of the existence of voter confusion, ballot overcrowding . . . prior to the imposition of reasonable restrictions on ballot access").  Ensuring that local initiatives fall within a municipality's legislative authority furthers the state's reasonable interests in preventing ballot overcrowding and confusion.

Accordingly, to the extent that a state ballot is characterized as a nonpublic forum, the challenged statutes are reasonable and do not discriminate based on viewpoint and thus are not subject to strict scrutiny review.

### 2.     The challenged laws are not subject to the prior restraint doctrine.

Relying on inapplicable public forum case authority, Plaintiffs argue that the challenged statutes operate as a prior restraint on speech by vesting unbridled discretion in the county boards

of elections. Pls.' Mot., Doc. 3, at 15-18. But their only cited authority involves application of this doctrine to restrictions on expressive speech in public forums. *Id.* For example, the plaintiffs in *Forsyth County v. Nationalist Movement* challenged regulations that implicated public demonstrations in public roads. 505 U.S. 123, 130 (1990). Likewise, *Shuttlesworth v. City of Birmingham* involved a challenge to ordinances restricting public demonstrations on public streets. 394 U.S. 147, 153 (1969) ("We have consistently condemned licensing systems which vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places."). This is also the case with *Lakewood v. Plain Dealer Publishing Company*, where a newspaper challenged a licensing scheme that restricted newspaper racks in public streets. 486 U.S. 750, 776 (1988).

Here, Plaintiffs fail to cite to any authority to support their argument that prior restraint analysis applies to the state's regulation of ballot eligibility. Under similar circumstances, an Ohio federal district court has declined to apply prior-restraint analysis to a statute regulating a candidate's access to the ballot. *See Aey v. Mahoning Cty. Bd. of Elections*, No. 4:08 CV 405, 2008 U.S. Dist. LEXIS 19247, *16 (N.D.Ohio Feb. 26, 2008) ("Plaintiff fails to cite any authority in support of the proposition that prior restraint licensing analysis should be applied to a ballot access statute."). In that case, the plaintiff sought to enjoin Ohio Rev. Code § 311.01, which specifies qualifications for those seeking the elected office of sheriff, as a violation of his rights under the First and Fourteenth Amendments. *Id.* at *10. Applying *Anderson-Burdick*, the court held that the statute was content-neutral and thus did not severely burden plaintiffs' rights. *Id.* at *10-*13. Next, the court held that the statute facilitated the State's interest in setting minimum qualifications for candidates for sheriff. *Id.* at *13-*14. Finally, the court rejected plaintiff's argument that the statute operated as a prior restraint on speech for, among other

reasons, plaintiff's failure "to cite any authority in support of the proposition that prior restraint licensing analysis should be applied to a ballot access statute." *Id.* at *16. Accordingly, the court declined to grant injunctive relief.

Citing to *Freedman v. Maryland*, Plaintiff also argues that the challenged statutes violate First Amendment protections because the county boards of elections' decision to certify an initiative to the ballot is not subject to provisions for judicial review. Pls.' Mot., Doc. 3, at 17-18. But, again, Plaintiffs cannot point to any authority applying the *Freedman* requirements to ballot access statutes. Instead, *Freedman* required such procedural safeguards in a licensing regime that explicitly censored and restricted expression in movie theaters. 380 U.S. 51 (1965). The procedural-safeguards requirement has been applied by the Supreme Court in limited situations, "when a State undertakes to shield the public from certain kinds of expression it has labeled as offensive," such as nudity or depictions of sexual conduct. *M.I.C., Ltd. v. Bedford Twp.*, 463 U.S. 1341, 1343 (1983) (citing, *inter alia*, *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 560-62 (1975) (involving denial of license for theater production of Hair) and *Vance v. Universal Amusement Co.*, 445 U.S. 308, 316 (1980) (involving potential injunction barring operation of adult movie theater)); *see also Deja Vu of Nashville, Inc. v. Metro. Govt. of Nashville & Davidson Cty.*, 274 F.3d 377, 401 (6th Cir.2001). And even with respect to licensing schemes regulating public forums, the Supreme Court "ha[s] never required that a content-neutral permit scheme regulating speech in a public forum adhere to the procedural requirements set forth in *Freedman*." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322 (2002). "To read the [Supreme] Court's language otherwise[,]" the Sixth Circuit has held, "would negate its earlier holding that content-neutral time, place, and manner restrictions need not contain

*Freedman* safeguards." *H.D.V.-Greektown, LLC v. City of Detroit*, 568 F.3d 609, 624 (6th Cir.2009) (citing *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322 (2002)).

Plaintiffs' reliance on *Miller v. City of Cincinnati* likewise offers no help. 622 F.3d 524 (6th Cir.2010). There, the Sixth Circuit applied forum analysis to affirm a preliminary injunction of an ordinance requiring that private events held inside city hall be sponsored by a city department or official. *Id*. at 535-36. The purpose of city hall, the court found, is to allow employees to carry out official duties, not attend private events. *Id.* Therefore, "the sponsorship or collaboration requirement . . . bears little relationship to any official duties" and was not "reasonably related to the purpose of the forum." *Id.* at 536. Indeed, this case did not address the prior-restraint doctrine other than to find that by *alleging* the city's ordinance barred them from unlawfully exercising their First Amendment rights, the plaintiffs sufficiently alleged standing to pursue their claims. *Id.* at 531-32.

Plaintiffs cannot show that statues regulating ballot access are required to include provisions for a particular sort of judicial review. First, of course, the ballot is not a public forum like a theater or a public street. *Ohio Council 8 Am. Fedn. of State v. Husted*, 814 F.3d 329, 336 (6th Cir.2016) (no right to use ballot for expressive activities); *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 937 (7th Cir.2018) ("Nor has any federal court ever concluded that the ballot is a public forum that must be opened to referenda[.]"). Moreover, the challenged restrictions are not content-based—they apply equally to all local initiative proposals, no matter the particular topic they address or the particular viewpoint their supporters espouse. *See CITL*, 885 F.3d at 447-48 (holding single-subject requirement for statewide initiatives is not content-based); *see also State ex rel. Bolzenius v. Preisse*, Ohio Sup. Ct. 18-1221, Slip Op. 2018-Ohio-3708, 2018 Ohio LEXIS 2186, *11 (2018) (finding statute is not content-based "because it

applies to all municipal initiative proposals—not just relators'—regardless of the proposal's content"). *Freedman* is therefore not applicable to Plaintiffs' claims. *H.D.V.-Greektown*, 568 F.3d at 624.

Because Plaintiffs have failed to articulate any basis for applying the prior restraint doctrine to the challenged laws, Plaintiffs fail to prove the challenged laws are subject to strict scrutiny review.

### 3.    The challenged laws are not prior restraints on protected speech.

Finally, even applying the prior-restraint doctrine to the challenged laws, they survive constitutional scrutiny.  To prove a First Amendment prior restraint claim, Plaintiffs bear the burden of showing that they attempted to engage in activity protected by the First Amendment but were prohibited from doing so. *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).  This is a showing Plaintiffs fail to make.  The challenged statutes do nothing to control or prohibit any speech by petition circulators or signers regarding any viewpoints or content.  They simply do not touch on the "ability to communicate with other voters about proposed legislation." *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 297 (6th Cir.1993).  When a county board of elections does not certify a petition issue to the ballot after determining that it falls outside the municipality's legislative authority, the board does not forbid any communication about the topics addressed by that initiative.  Simply put, Plaintiffs fail to show that they have a First Amendment right to vote on a particular initiative on a ballot. *See supra* Part III.C.

Nor do the statutes unconstitutionally vest unbridled discretion in the county boards of elections.  "[T]he usual rule is that a law requiring permits for specified activities is not unconstitutional because it vests discretion in administrative officials to grant or deny the permit." *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 776 (1988).  In contrast to

Plaintiffs' cited cases, the text of the challenged statutes sets explicit limits on the discretion of county elections officials to deny ballot access.  Boards of elections are to review petitions to determine "whether the petition falls within the scope of a municipal political subdivision's authority to enact via initiative."  O.R.C. § 3501.38(M)(1)(a).  These statutes delineate parameters guiding the board of elections' review of local initiatives, in contrast to the challenged provisions in *Forsyth, Shuttlesworth*, *Freedman*, and *Lakewood*, which included no explicit limits on decision makers' authority.  *See, e.g.*, *State ex rel. Ebersole v. Delaware Cty. Bd. of Elections*, 140 Ohio St.3d 487, 20 N.E.3d 678, 684-85 (2014) (noting the "30 year" history of the "well-established distinction between municipal legislative and administrative activity").

Because the challenged statutes do not unconstitutionally prohibit protected First Amendment speech, and therefore do not grant elections officials unfettered discretion to censor protected First Amendment speech, Plaintiffs fail to demonstrate that the challenged laws impede First Amendment protections in the first instance or that they should be subject to strict scrutiny review.

G. **The challenged statutes do not impinge upon substantive or procedural due process protections.**

To the extent that Plaintiffs allege that the challenged statutes cause a deprivation of their procedural or substantive due process rights, this claim also fails as a matter of law.  *See* Op. & Order, Doc. 22, at 5 (noting "[a]t oral argument, however, Plaintiffs argued that the Ohio procedure for proposing initiatives violates constitutional due process protections").  Plaintiffs have not briefed or attempted to present any evidence to support these theories.  Because Plaintiffs only raised this issue oral argument, it is therefore forfeited.  *See Lindsey v. Detroit*

*Entm't, LLC*, 484 F.3d 824, 831 n.9 (6th Cir.2007) (noting issues not raised prior to oral argument are waived).

Even if the arguments are not waived, in the election context, due process claims are "addressed . . . collectively using a single analytic framework." *Dudum v. Arntz*, 640 F.3d 1098, 1106 n.15 (9th Cir.2011) (citing *Anderson,* 460 U.S. at 787 n.7; *LaRouche v. Fowler,* 152 F.3d 974, 987–88 (D.C. Cir.1998)). As outlined above, public forum and strict scrutiny analysis do not apply and the challenged statutes satisfy *Anderson-Burdick* review. *See supra* Parts III.D and III.F. Thus, Ohio's important regulatory interests also justify the challenged statutes under a due process analysis. *See Dudum,* 640 F.3d at 1114 (analyzing due process claims under *Anderson-Burdick); see also Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358-59, 365 (1997) (analyzing Fourteenth Amendment associational rights claim under *Anderson-Burdick*).

### 1. The challenged statutes do not violate substantive due process.

Even if Plaintiffs had raised any substantive due process claims, such claims could not succeed. By its terms, the Due Process Clause applies only when a "State deprive[s] any person of life, liberty, or property." U.S. Const. amend. XIV, § 1. The challenged laws do not impact or even address electors' fundamental right to vote. Nor have Plaintiffs pointed to any authority establishing that the Due Process Clause is implicated when a state regulates local initiatives on a ballot. Rather, the Sixth Circuit has made clear that"[t]he Due Process Clause protects against extraordinary voting restrictions that render the voting system fundamentally unfair." *Northeast Ohio Coalition for Homeless v. Husted*, 696 F.3d 580, 597 (6th Cir.2012) (internal quotation omitted). "[G]arden variety election irregularities" do not rise to that level." *Id*.

Plaintiffs cannot prove the challenged statutes "result in significant disenfranchisement and vote dilution." *Id*. Indeed, Plaintiffs have offered no argument or evidence that the challenged statutes have any impact whatsoever on the right to vote, much less that they have

resulted in any voter disenfranchisement.  Accordingly, to any extent Plaintiffs attempt to bring a substantive due process claim against the challenged statutes, it fails.

### 2. The challenged statutes do not violate procedural due process.

If Plaintiffs meant to raise a procedural due process claim, it likewise fails.  *See* Op. & Order, Doc. 22, at 5.  To establish a procedural due process claim, a plaintiff must prove a deprivation of a life, liberty, or property interest without constitutionally adequate process.  *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir.1999).  Again, Plaintiffs have not identified a fundamental interest implicated by the challenged statutes.  *See League of Women Voters v. Brunner*, 548 F.3d 463, 479 (6th Cir.2008) ("The League contends that Ohio's voting system deprives Ohioans of 'their liberty interest in voting and does so without adequate pre- or post-deprivation process.' However, the League has not alleged a constitutionally protected interest.") Moreover, Plaintiffs do not argue that the challenged statutes fail to provide notice of an adverse decision from boards of elections.  Rather, the Plaintiffs here were given adequate notice with sufficient time to seek relief from the Board's decision.  *See* Compl., Doc. 1, ¶¶ 24-26. Accordingly, their claim fails as a matter of law.

Importantly, too, even assuming the challenged statutes affect a fundamental right, Plaintiffs are afforded adequate procedural protections by way of mandamus.  *See* Ohio Const., art. IV, § 2(B)(1)(b).  "Ohio law offers mandamus as an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body." *Mathews v. Ohio Pub. Emples. Retirement Sys.,* 91 F. Supp. 3d 989, 1002 (S.D.Ohio 2015) (internal quotation omitted).  In *Mathews*, the plaintiff argued that mandamus did not provide an adequate hearing opportunity to seek relief from the termination of his disability benefits by an administrative agency.  *Id.*  The court found that the disability benefits constituted a constitutionally-protected property interest.  *Id.* at 999.  Next, the court analyzed the adequacy

of the process afforded to the plaintiff following the termination of his disability benefits. *Id.* at 1001-02. On this point, the court found that state statutes governing disability benefits did not include any provision for administrative or judicial appeal of the agency's termination decision. *Id.* at 1002. However, the plaintiff could have filed a mandamus proceeding in state court to challenge this benefits termination. *Id.* at 1002-03. Mandamus, the court held, provided plaintiff with "an adequate state remedy to redress the termination of his disability benefits." *Id.* Mandamus provided an adequate remedy regardless of whether plaintiff would have ultimately prevailed on his claims. *Id.*

Here, Plaintiffs and others seeking to reverse an initiative decision by a county board of elections are afforded the constitutionally sound option of seeking recourse through mandamus in the Ohio Supreme Court. The Ohio Supreme Court has original jurisdiction to hear mandamus actions, and its review is not discretionary as in an appeal. *See* Ohio Const., art. IV, § 2(B)(1)(b). When reviewing local initiative cases, the Supreme Court is under a "duty to liberally construe municipal initiative provisions to permit the exercise of the power of initiative." *State ex rel. N. Main St. Coalition v. Webb*, 106 Ohio St.3d 437, 835 N.E.2d 1222, 1232 (2005); *State ex rel. Citizen Action for a Livable Montgomery v. Hamilton Cty. Bd. of Elections*, 115 Ohio St.3d 437, 875 N.E.2d 902, 911 (2007). The court reviews challenges to county boards' of elections decisions to ensure boards have not "engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions." *State ex rel. Jacquemin v. Union County Bd. of Elections*, 147 Ohio St.3d 467, 67 N.E.3d 759, 762 (2016). Moreover, court procedures enable parties to expedite briefing and decisions to meet pressing elections-related deadlines. *See* Ohio S.Ct.Prac.R. 12.08 (governing expedited election cases). And the Ohio Supreme Court has ordered that initiatives appear on ballots. Plaintiffs concede as

36

much. Pls.' Mot., Doc. 3, at 9 n.4 (citing *State ex rel. Khumprakob v. Mahoning Board of Elections*, Ohio Sup. Ct. 18-0404, Slip Op. 2018-Ohio-1602, 2018 Ohio LEXIS 881 (2018)). Accordingly, to the extent that Plaintiffs bring a procedural due process claim against the challenged statutes, this claim also fails.

## IV.    CONCLUSION

Plaintiffs have not shown that any of O.R.C. § 3501.11(K), O.R.C. § 3501.38(M)(1)(a), and O.R.C. § 3501.39(A)'s applications are unconstitutional, let alone a substantial number of such applications.   Therefore, Plaintiffs have failed to show that the challenged statutes are unconstitutional on their face.   *O'Toole v. O'Connor*, 802 F.3d 783, 791 (6th Cir.2015). Plaintiffs have failed to demonstrate their entitlement to a permanent injunction and their claims should be dismissed.

Respectfully submitted,

MIKE DEWINE
OHIO ATTORNEY GENERAL

/s/ *Sarah E. Pierce*
SARAH E. PIERCE (0087799)*
   *Lead Counsel
RENATA Y. STAFF (0086922)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
sarah.pierce@ohioattorneygeneral.gov
renata.staff@ohioattorneygeneral.gov

*Counsel for Defendant*
*Ohio Secretary of State Jon Husted*

37

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2018, the foregoing was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system. I further certify that a copy of the foregoing has been served by e-mail or facsimile upon all parties for whom counsel has not yet entered an appearance and upon all counsel who have not entered their appearance via the electronic system.

/s/ *Renata Y. Staff*
RENATA Y. STAFF (0086922)
Assistant Attorney General

38