# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **WILLIAM SCHMITT, JR., et al.,** : | |
| : | |
| Plaintiffs, : | Case No. 2:18-cv-966 |
| : | |
| v. : | Judge Edmund Sargus, Jr. |
| : | |
| **OHIO SECRETARY OF STATE** : | Magistrate Judge Elizabeth Deavers |
| **JON HUSTED, et al.,** : | |
| : | |
| Defendants. : | |

## DEFENDANT OHIO SECRETARY OF STATE JON HUSTED'S
## REPLY IN SUPPORT OF MERIT BRIEF

Plaintiffs' claims continue to suffer from a central "basic misunderstanding." *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1101 (10th Cir. 2006). While the speech that surrounds an initiative effort may receive First Amendment protection—courts recognize, for example, that circulation of an initiative petition "involves the type of interactive communication" that is protected—the State's specified initiative mechanisms are not in and of themselves protected communication. *See Port of Tacoma v. Save Tacoma Water*, 422 P.3d 917, 924-25 (Wash. Ct. App. July 25, 2018). Plaintiffs have *not* alleged that they were prevented from engaging in the initiative process, from circulating petitions, or from speaking in support of their position. In other words, Plaintiffs have not alleged that any protected First Amendment speech has been burdened. Without protected First Amendment speech, there is no First Amendment claim, and Plaintiffs' request to permanently enjoin the challenged laws must be denied.

But even if this Court were to assume some First Amendment injury, Plaintiffs' claims still fail. Applying *Anderson-Burdick* balancing, the State's reasonable, nondiscriminatory initiative process withstands scrutiny, a point that Plaintiffs do not appear to contest. The State's procedures apply equally to all subject matters and viewpoints, and the challenged statutes protect the State's important regulatory interests of facilitating an orderly ballot. Plaintiffs' arguments in support of strict scrutiny review continue to fail because the ballot is not a public forum and, even if it were, the content-neutral statutes Plaintiffs challenge are not subject to *Freedman v. Maryland*, 380 U.S. 51 (1965).

And Plaintiffs make *no* showing that the challenged statutes that Ohio provides to regulate the initiative process that Ohio establishes are facially invalid as unconstitutional in a substantial number of their applications. Because Plaintiffs have failed to meet their high burden to facially invalidate O.R.C. §§ 3501.11(K), 3501.38(M)(1)(a), and 3501.39(A), their request for such sweeping relief should be denied.

### A. Plaintiffs' evidence submission is improper.

As an initial matter, the new claims and evidentiary submissions that appear for the first time in Plaintiffs' response brief are improper. On October 4, 2018, counsel for Plaintiffs informed this Court that they had no further factual evidence to submit in support their constitutional challenge to Ohio's laws. In light of these representations, counsel for the Secretary of State agreed to a briefing schedule without the opportunity for further evidentiary development. Now, in connection with their response brief and for the first time, Plaintiffs provide declarations in seeming attempt to establish some prospect of future injury from the laws they challenge. Having waived their opportunity to put forward additional evidence, Plaintiffs should not be allowed to submit new evidence in their response brief. *Newman v. Univ. of Dayton*, No. 3:17-cv-179, 2017 U.S. Dist. LEXIS 148877, at *6 (S.D.Ohio, Sep. 14, 2017)

(collecting cases and concluding that district court has discretion to not consider or strike improper evidence submissions under its "'broad discretion to manage its docket'"). Accordingly, the additional declarations submitted to the Court in violation of its order should not be considered.

### B. Plaintiffs fail to even state a First Amendment claim because they have not identified an injury to protected speech.

As Plaintiffs note, a facial challenge to a licensing scheme is possible where a decision maker's "unbridled discretion" is alleged. *See* Pls.' Br., Doc. 32, at 2-3. Importantly, such challenges are still facial challenges; that is, facial invalidation is only appropriate in these cases when "every application of the statute create[s] an impermissible risk of suppression of ideas." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 224 (1990) (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 798 n.15 (1984)). In other words, in prior-restraint cases "a holding of facial invalidity expresses the conclusion that the statute could never be applied in a valid manner." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 797-98 (1984). The import of a facial challenge then, even in these circumstances, "is momentous and consequential." *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir.2013).

Here, Plaintiffs do not even make out a claim for such sweeping and momentous relief because they do not allege an infringement on protected speech at all. To be subject to a facial challenge in this manner, a law must "pose a real and substantial threat of the identified censorship risks" and be "aimed at conduct commonly associated with expression." *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 759-61 (1988). In other words, "[a] 'prior restraint' exists when *the exercise of a First Amendment right* depends on the prior approval of public officials." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 274 F.3d 377, 400 (6th Cir.2001) (emphasis added). Such expressive conduct may involve newspaper circulation, the

operation of sexually-oriented businesses, or parades and demonstrations on public streets. *Lakewood*, 486 U.S. at 759-61 (newspaper circulation); *FW/PBS, Inc.*, 493 U.S. at 228 (sexually-oriented business); *Deja Vu of Nashville, Inc.*, 274 F.3d at 400 (sexually-oriented business); *Shuttlesworth v. Birmingham*, 394 U.S. 147, 148 (1969) (demonstrations); *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 126-27 (1992) (demonstrations).

But there is no similar expressive component here.  Plaintiffs agree (or at least do not dispute) that there is no First Amendment issue with Ohio's limitation on the initiative power—that is, Plaintiffs do not dispute that non-legislative initiative proposals can be excluded from the ballot without offending the First Amendment.  *See* Pls.' Reply, Doc. 19, at 11 ("States have the power, just like the Congress, to restrict initiatives to select subjects and topics."). While First-Amendment protections may be (and have been) applied to the speech that attends an initiative process, courts distinguish between "political speech incident to an initiative campaign," which is protected by the First Amendment, and "the right to make law, by initiative or otherwise[,]" which is not. *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1099 (10th Cir.2006); *Marijuana Policy Project v. United States*, 304 F.3d 82, 85 (D.C. Cir.2002) ("The First Amendment protects public debate about legislation, it confers no right to legislate on a particular subject.").

Plaintiffs have not alleged any infringement on any conduct "commonly associated with expression," such as circulating their petitions or speaking in support of their proposed amendment.  In the initiative context, laws that "[require] that petition circulators be registered voters, [require] that petition circulators wear a name badge, and certain reporting requirements applicable to proponents of an initiative" have been found unconstitutional under the First Amendment because they infringe the protected political speech of petition circulators.  *Walker*,

450 F.3d at 1099 (citing *Am. Constitutional Law Found., Inc. v. Meyer*, 120 F.3d 1092, 1100-05 (10th Cir.1997), aff'd sub nom. *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, (1999)). A law that makes it a felony to pay a petition circulator is unconstitutional for the same reason. *Id*. (citing *Meyer v. Grant*, 486 U.S. 414, 416 (1988)).

But, on the other hand, laws regulating the initiative process itself that do not touch protected speech do not raise First Amendment concerns. For that reason, laws (or constitutional provisions) that limit the subjects available for initiative, or establish a supermajority requirement for passing a wildlife management law, or set a limitation on the number of initiative ballot slots available, or create a pre-screening requirement, do not implicate protected speech. *Marijuana Policy Project*, 304 F.3d at 87 (limitation on initiative subject); *Port of Tacoma v. Save Tacoma Water*, 422 P.3d 917, 925 (Wash. Ct. App. July 25, 2018) (limitation on initiative subject); *Walker*, 450 F.3d at 1101 (supermajority requirement); *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 938 (7th Cir.2018) (limit on number of initiative spots); *Skrzypczak v. Kauger*, 92 F.3d 1050, 1053 (10th Cir.1996) (overruled on other grounds) (removal of a ballot measure during a pre-screening process). First Amendment analysis therefore is not triggered by such measures.

Plaintiffs' case does not allege that a petition circulator's speech has been impeded or a supporter (or opponent) of an initiative measure has been silenced. Instead, this case asks whether the ability under state law to place an initiative—any initiative—on the ballot implicates the First Amendment. *See, e.g.*, Compl., Doc. 1, ¶¶ 22, 26 (alleging injury from a board of election's determination that proposed initiatives were outside of the initiative power). It does not. Without any First Amendment speech at issue, Plaintiffs' case fails entirely. *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty*., 274 F.3d 377, 400 (6th Cir. 2001)

5

("A 'prior restraint' exists when the exercise of a First Amendment right depends on the prior approval of public officials.").

Plaintiffs' attempt to distinguish the legal authority supporting this conclusion is flawed. Pls.' Br., Doc. 32, at 17-18. Plaintiffs note that the Seventh Circuit in *Jones* upheld a "content-neutral restriction on the number (three) of initiatives that may be certified to a ballot." *Id*. at 17 (citing *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935 (7th Cir.2018)). But the deeper significance of *Jones* is that the court did not apply First Amendment analysis because it found that the First Amendment was not implicated in the case *at all*. *Jones*, 892 F.3d at 938. Indeed, the court emphasized that no federal court has "ever concluded that the ballot is a public forum that must be opened to referenda, let alone to as many referenda as anyone cares to propose"; the state-created initiative right is therefore one "that the First Amendment does not guarantee." *Id*. at 937-38.

Similarly, Plaintiffs characterize *Marijuana Policy Project* as addressing the "vertical apportionment" of power between the District of Columbia and the U.S. Congress. Doc. 32, at 17-18 (citing *Marijuana Policy Project v. United States*, 304 F.3d 82, 83 (D.C. Cir.2002)). In fact, the case was about whether the First Amendment protected the placement of an initiative measure on the ballot despite a content limitation that would otherwise preclude it. *Marijuana Policy Project*, 304 F.3d at 83, 87. The court ultimately concluded that the content limitation did not implicate any protected speech—the "[challenged enactment] silences no one"—and all of the plaintiffs' First Amendment arguments failed. *Id*. at 83, 86-87. There is no meaningful difference in this context between the District of Columbia's ability to amend its charter, pursuant to its home rule powers, and a state law right to amend a state constitution or a local charter.

The same legal issue was examined in *Port of Tacoma* and *Wirzburger*. Doc. 32, at 18-19 (citing *Port of Tacoma v. Save Tacoma Water*, 422 P.3d 917 (Wash. Ct. App. July 25, 2018) and *Wirzburger v. Galvin*, 412 F.3d 271 (1st Cir.2005)). The courts in both cases decided whether the First Amendment protected the placement of an initiative measure on the ballot, despite a content limitation that prohibited it. In *Port of Tacoma*, the court again recognized the distinction between protected speech that surrounds an initiative measure, and the state-created right to legislate by initiative. Again, the court found the First Amendment was not implicated at all because there was *no* "free speech right to have a local measure beyond the scope of the initiative power appear on the ballot." *Port of Tacoma*, 422 P.3d at 924-25.

The *Wirzburger* court observed the same distinction between protected speech and the ultimate purpose of the initiative process—to make law. *Wirzburger*, 412 F.3d at 275. The state had an interest in regulating the latter. *Id*. In reviewing specific content-based exclusions "about certain subjects by initiatives," the court concluded that the challenged restrictions should be subject to intermediate scrutiny because they involved, although were not aimed at, some expressive conduct "about those [specified] subjects." *Id*. at 275, 277, 279. It is important to note both the distinction from the content-neutral statutes at issue here, and that this reasoning has not been followed by any other circuit courts and has been specifically rejected by the Tenth Circuit. *See Walker*, 450 F.3d at 1102-1103. In any event, even under intermediate review, the content restriction on the initiative process was upheld. *Wirzburger*, 412 F.3d at 279.

Plaintiffs' citation to *Wyman v. Secretary of State*, 625 A.2d 307, 309 (Maine 1993) is also is unavailing. In *Wyman*, the court examined the Maine secretary of state's refusal to give the plaintiff the petition forms he needed to invoke the initiative process. *Wyman*, 625 A.2d at 309. The secretary had no statutory authority to deny access to the petition forms. The court

recognized that "[t]he initiative petition process involves political discourse that is protected by the first amendment of the federal constitution" and therefore concluded that "the Secretary's refusal to furnish the petition form is a complete bar to [the plaintiff] exercising his initiative petition rights." *Id.* at 311.

Here, by contrast, Plaintiffs were not prevented from invoking the initiative process, circulating their petitions, or discussing their ideas. The county boards of election have the statutory duty not to certify initiative measures that they determine to be outside of the initiative right. Once again, while speech that surrounds an initiative measure receives First Amendment protections, regulation of the initiative process does not implicate those rights.

Plaintiffs' final case, as they note, was dismissed without a decision related to any of the issues raised in this case. Doc. 32, at 16 (citing *Herrington v. Cuevas*, 1997 U.S. Dist. LEXIS 17856, at *2 (S.D.N.Y. Nov. 7, 1997)). In short, Plaintiffs do not provide authority to support their contention that processes similar to Ohio's have been "seriously and successfully challenged under the First Amendment." Doc. 32, at 16. Such authority does not exist because, without protected First Amendment speech, the First Amendment is not implicated and Plaintiff's claims fail.

### C. Plaintiffs' remaining arguments for strict scrutiny also fail as a matter of law.

In his initial brief, the Secretary argued that, even if this Court were to identify some First Amendment injury, it is both minimal and outweighed by the State's strong interests in maintaining an orderly ballot. Def.'s Br., Doc. 30, at 18-21. Plaintiffs do not contest this conclusion. Plaintiffs therefore appear to concede that, absent a finding that strict scrutiny is the appropriate review standard, the challenged statutes are constitutional.

But Plaintiffs' continued reliance on forum analysis and the prior restraint doctrine has no basis in case law. Strict scrutiny is therefore not appropriate and the challenged laws do not operate as an unconstitutional prior restraint. Accordingly, even if the Court finds some First Amendment injury, it is outweighed by the state's interests under the flexible *Anderson-Burdick* framework.

> **1. Assuming that the prior restraint doctrine extends to statutes governing ballot eligibility (and it does not), the challenged statutes do not operate as a prior restraint on speech nor require strict scrutiny review.**

Plaintiffs' reliance on case authority involving explicit censorship schemes in public forums has little relevance to this case. *See*, Doc. 32, at 8-9. This is because "the State controls the content of the ballot, which we have never considered a public forum." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 461 (2008) (Roberts, C.J., concurring). In all of the prior-restraint cases Plaintiffs cite, the challenged laws explicitly censored speech that was well-established as falling within First Amendment protections—display of a movie in *Freedman*, newspaper circulation in *Lakewood*, public demonstrations in *Shuttlesworth* and *Forsyth County*, and licensing of sexually-oriented businesses in *FW/PBS* and *Deja Vu of Nashville*. *Freedman v. Maryland*, 380 U.S. 51 (1965); *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 759-61 (1988); *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 228 (1990); *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 274 F.3d 377, 400 (6th Cir. 2001); *Shuttlesworth v. Birmingham*, 394 U.S. 147, 148 (1969); *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 126-27 (1992).

In contrast, the statutes challenged here do not censor or ban from public consumption any measure Plaintiffs wish to propose. They do not regulate or prohibit any material from a public forum. Rather, they require county boards of elections to ensure that each proposed

9

initiative falls within a municipality's legislative authority before it appears on the ballot. *See* Ohio Rev. Code §§ 3501.11(K), 3501.38(M)(1)(a), and 3501.39(A). The challenged statutes, unlike censorship of movies or sexually oriented materials, do "not present the grave 'dangers of a censorship system.'" *FW/PBS, Inc.*, 493 U.S. at 228 (O'Connor, J. with Stevens & Kennedy, JJ.) (quoting *Freedman*, 380 U.S. at 58). Accordingly, *Freedman* is not applicable here. *Deja Vu of Nashville, Inc.*, 274 F.3d at 400 ("A 'prior restraint' exists when the exercise of a First Amendment right depends on the prior approval of public officials."); *see also*, *supra* at 3-4.

The statutes are also content-neutral. *See*, Doc. 32, at 7 (citing *Reed v. Town of Gilbert*, 135 S.Ct. 2218 (2015)). As the Sixth Circuit recently held, similar laws requiring the Ohio Ballot Board to review statewide initiatives for compliance with a single-subject requirement were content-neutral because 1) they did not apply "to particular speech because of the topic discussed or the idea or message expressed", 2) could be "justified without reference to the content of the regulated speech", and 3) were not "adopted by the government because of disagreement with the message the speech conveys." *Comm. to Impose Term Limits on the Ohio Supreme Court v. Ohio Ballot Bd.*, 885 F.3d 443, 447 (6th Cir.2018) ("*CITL*") (quoting *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015)). The single-subject requirement was content-neutral under this standard because it applied to all initiative petitions, regardless of "the topic discussed or idea or message expressed[;]" it could be justified without reference to any particular content because it served to prevent logrolling; and it was not adopted because of disagreement with any particular initiative's message. *Id*. And because the single-subject rule itself did not violate the First Amendment, the law requiring the Ohio Ballot Board to review petitions for compliance with the rule also did not violate the First Amendment. *Id*. at 448. The same is true here: the challenged statutes apply to all initiative petitions; they serve the interest of

maintaining an orderly ballot and avoiding voter confusion; and they were not adopted because of disagreement with any particular initiative proposal. *See* Def.'s Br., Doc. 30, at 21; *see also Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 938 (7th Cir.2018) ("[S]tates have a strong interest in simplifying the ballot."); *CITL*, 885 F.3d at 448 (identifying the avoidance of voter confusion as a strong state interest); *First Natl. Bank v. Bellotti*, 435 U.S. 765, 788-89 (1978) (recognizing that preserving voter confidence is of high importance). The challenged statutes are therefore content-neutral and strict scrutiny review is not applicable.

Plaintiffs argue that even if the challenged statutes are content-neutral, they still operate as an unconstitutional prior restraint. Doc. 32, at 13. Of course, the Supreme Court "ha[s] never required that a content-neutral permit scheme regulating speech in a public forum adhere to the procedural requirements set forth in *Freedman*." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322 (2002). But even assuming the challenged statutes operate as a content-neutral time, place, and manner restriction, they still do not 1) afford unfettered discretion to the county boards of election, or 2) are beyond review, such that they are unconstitutional. *Id*. at 323. First, boards may only review initiative proposals to determine if they are within the legislative municipal authority; this "well-established" distinction does not extend to reviewing an initiative for any other constitutional infirmities. *State ex rel. Walker v. Husted*, 144 Ohio St.3d 361, 43 N.E.3d 419, 423-24 (Ohio 2015); *State ex rel. Ebersole v. Delaware Cty. Bd. of Elections*, 140 Ohio St.3d 487, 20 N.E.3d 678, 684-85 (Ohio 2014). This "narrowly drawn, reasonable and definite standard" does not give a board of elections "unduly broad discretion" to refuse to certify proposed initiatives that it simply disagrees with or opposes. *Thomas*, 534 U.S. at 323-24.

Second, a board's decision is also enforceable on review. *Id.* at 323 (noting administrative review followed by discretionary judicial appeal was sufficient). A county board

of elections' exercise of its duty is reviewable in mandamus; such an action is not discretionary but is within the original jurisdiction of all county common pleas courts, appellate courts, and the Ohio Supreme Court. Ohio Const., Art. IV, §§ 2(B), 3(B), 4(B); O.R.C. § 2731.02. A court will review a mandamus challenge to a county boards of election's decision to ensure it has not "engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions." *State ex rel. Jacquemin v. Union County Bd. of Elections*, 147 Ohio St.3d 467, 67 N.E.3d 759, 762 (2016). When reviewing local initiative cases, courts have the "duty to liberally construe municipal initiative provisions to permit the exercise of the power of initiative." *State ex rel. N. Main St. Coalition v. Webb*, 106 Ohio St.3d 437, 835 N.E.2d 1222, 1232 (2005); *State ex rel. Citizen Action for a Livable Montgomery v. Hamilton Cty. Bd. of Elections*, 115 Ohio St.3d 437, 875 N.E.2d 902, 911 (2007). To ensure timely review of any exigent First Amendment issues, court procedures enable parties to expedite briefing and decisions. *See*, *e.g.*, Ohio S.Ct.Prac.R. 12.08 (governing expedited election cases).

In short, Plaintiffs have not and cannot cite to any case authority extending the prior restraint analysis to ballot regulation statutes like those challenged here, even assuming some impact on protected speech in the first place. Plaintiffs' only authority consists of explicit censorship and prohibitions on well-established protected expressive activity, including protests in public forums, speaking before public board meetings, and nude dancing. *See* Pls.' Br., Doc. 32, at 8. Plaintiffs have pointed to no case applying the prior restraint doctrine to a state regulation of measures appearing on the ballot. *Cf., e.g., Aey v. Mahoning Cty. Bd. of Elections*, No. 4:08 CV 405, 2008 U.S. Dist. LEXIS 19247, *16 (N.D. Ohio Feb. 26, 2008) ("Plaintiff fails to cite any authority in support of the proposition that prior restraint licensing analysis should be

applied to a ballot access statute."). The challenged statutes do not operate as a prior restraint and strict scrutiny review is not applicable here.

### 2. Assuming that the ballot is, at best, a nonpublic forum, the challenged statutes are both reasonable and viewpoint neutral and therefore constitutional.

Despite Plaintiffs' arguments, *Minnesota Voters Alliance v. Mansky*, ___U.S.___, 138 S.Ct. 1876, 1886 (2018), is not to the contrary. Doc. 32, at 9-10. The plaintiffs in *Mansky* challenged a Minnesota law that prohibited individuals, including voters, from wearing a "political badge, political button, or other political insignia" inside a polling place on Election Day. *Mansky*, 138 S.Ct. at 1879.

On review, the Supreme Court applied forum analysis to conclude that a polling location is a nonpublic forum. In a nonpublic forum—a space that "is not by tradition or designation a forum for public communication"—the government has significant flexibility to fashion reasonable, content-neutral rules. *Perry Edn. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46 (1983). Restraints on speech in a nonpublic forum will be upheld unless they are unreasonable or rely on impermissible viewpoint discrimination. *Id.*

Even assuming that the ballot is a nonpublic forum, the challenged statutes are sound. First, the challenged statutes are viewpoint neutral. "Viewpoint discrimination is . . . an egregious form of content discrimination." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). Viewpoint discrimination occurs "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.* at 829. Plaintiffs have not offered evidence or argument that the challenged statutes operate in a way that discriminates based on a particular viewpoint. *See* Pls.' Br., Doc. 32, at 6 (alleging similar measures were placed on ballot). Instead, the requirements in the challenged statutes, which provide a framework for proposed measures to reach the ballot, regulate all proposed

measures, regardless of their content. All proponents have to follow the same procedure; these laws are viewpoint neutral.

Second, the challenged statutes reasonably regulate ballot speech. Plaintiffs do not dispute that the state has a reasonable interest in ensuring orderly, uncluttered ballots. *See Mansky*, 138 S.Ct. at 1886 (finding Minnesota had "permissible objective" in regulating apparel in polling places). "The Supreme Court has emphasized that 'States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process.'" *CITL*, 885 F.3d at 446 (quoting *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 191 (1999)). Indeed, courts agree that state statutes regulating ballots serve "legitimate and strong state interests" such as "avoid[ing] confusion" and "promot[ing] informed decision-making[.]" *CITL*, 885 F.3d at 448 (internal quotation omitted).

The ban on "political" apparel in *Mansky*, the Court found, failed to appropriately define the scope of prohibited displays on apparel. *Mansky*, 138 S.Ct. at 1880 (finding that, left undefined, the term political could "broadly encompass anything 'of or relating to government, a government, or the conduct of governmental affairs'"). The Court noted, however, that while a regulation must "articulate some sensible basis for distinguishing what may come in from what must stay out[,]" there is "no requirement of narrow tailoring in a nonpublic forum[.]" *Id*. at 1886. The Court therefore did not invalidate all bans on political apparel in nonpublic forums, but instead acknowledged that states retain the ability to proscribe campaign apparel worn into polling places as long as they do so "in more lucid terms" than Minnesota. *Id*. at 1891.

The statutes challenged here do clearly define the requirements for proposed measures to reach the ballot. *See State ex rel. Ebersole v. Delaware Cty. Bd. of Elections*, 140 Ohio St.3d 487, 20 N.E.3d 678, 684-85 (2014) (noting the "30 year" history of the "well-established

distinction between municipal legislative and administrative activity"). An appropriate legislative action enacts an ordinance, rather than executes or administers an ordinance that already exists. *State ex rel. Citizen Action for a Livable Montgomery v. Hamilton Cty. Bd. of Elections*, 115 Ohio St.3d 437, 875 N.E.2d 902, 909, 911 (Ohio 2007). An administrative action "execut[es] or administer[s]" a pre-existing ordinance. *Id*. Municipal legislative authority also does not include the ability to create a new cause of action. *State ex rel. Bolzenius v. Preisse*, 2018-Ohio-3708, 2018 Ohio LEXIS 2186, *7-*9 (Ohio 2018). This "sensible basis" is sufficient under *Mansky*. *See Mansky*, 138 S.Ct. at 1886.

Plaintiffs' citation to unrelated case law does not alter this conclusion. *See* Doc. 32 at 14-15. *Miller v. City of Cincinnati*, 622 F.3d 524 (6th Cir.2010), involved a government building identified as a limited public forum, not ballot regulation. Finding "no question that the plaintiffs' proposed press conference and rally are expressive activities" (unlike the state's ballot), *id.* at 533-34, the court concluded that the challenged regulation likely was not "reasonably related to the purpose of the forum," *id*. at 536. Importantly, the *Miller* court applied forum analysis to decide the case, and only relied upon *Lakewood* to establish that plaintiff had standing to sue; Plaintiffs' characterization of the case is misleading. *See* Doc. 32, at 14. Both *Barrett v. Walker County School District*, 872 F.3d 1209 (11th Cir.2017) and *Amandola v. Town of Babylon*, 251 F.3d 339 (2d Cir.2001) also identified limited public fora in government buildings and therefore also do not inform initiative ballot placement issues. *See* Pls.' Br. at 14-15. Here, in contrast, the challenged statutes reasonably regulate the initiative process that Ohio law provides, and the government's recitation of issues on ballots is not protected expressive conduct by private parties. *See Miller*, 622 F.3d at 533-34; *see also*, *supra* at 3-8. Even assuming the ballot is a nonpublic forum or a limited public forum, the challenged

15

laws are constitutional. *See Miller*, 622 F.3d at 535 (noting speech may be restricted in a limited public forum if not viewpoint discrimination and are reasonable).

In short, the distinction between administrative and legislative acts in Ohio law is not so "unmoored" that it lacks a "sensible basis for distinguishing between what may come in from what must stay out." *Mansky*, 138 S.Ct. at 1888. Because the challenged statutes are viewpoint neutral and reasonable, they are constitutional under either limited or nonpublic forum analysis. Plaintiffs fail to cite any authority to the contrary. Therefore, even assuming that the ballot is a nonpublic forum and that Plaintiffs' prior restraint theory extends to it, the challenged statutes still do not offend the First Amendment.

\* \* \*

Plaintiffs' claims fail: at most, their real complaint is that certain officials allegedly miscomprehended the law in a particular instance, not that the ballot regulation statutes may *never* be constitutionally applied. Plaintiffs have not alleged an infringement of protected speech in the first place and, even if they had, Plaintiffs have not shown that the challenged statutes are an unconstitutional prior restraint or a content-based restriction requiring strict scrutiny. At best, even assuming some impact on protected speech, the challenged statutes are still constitutional under *Anderson-Burdick* review because the strong state interests that support them outweigh any minimal First Amendment injury. Finally, even assuming a state ballot may be properly characterized as a nonpublic or limited public forum (which no court has done), the challenged statutes still pass constitutional review.

Therefore, Plaintiffs have failed to show that the challenged statutes are unconstitutional on their face under any of their First Amendment theories. *O'Toole v. O'Connor*, 802 F.3d 783, 791 (6th Cir.2015); *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 224 (1990) (facial invalidation in

prior restraint case still finds "every application of the statute create[s] an impermissible risk of suppression of ideas"). Plaintiffs have failed to demonstrate their entitlement to a permanent injunction—they give this Court no warrant to re-write generally applicable state law regarding how the State provides for the initiative process it creates, and their claims should be dismissed.

        Respectfully submitted,

        MIKE DeWINE
        OHIO ATTORNEY GENERAL

        /s/ *Sarah E. Pierce*
        SARAH E. PIERCE (0087799)*
          *Lead Counsel*
        RENATA Y. STAFF (0086922)
        Assistant Attorneys General
        Constitutional Offices Section
        30 East Broad Street, 16th Floor
        Columbus, Ohio 43215
        Tel: 614-466-2872 | Fax: 614-728-7592
        sarah.pierce@ohioattorneygeneral.gov
        renata.staff@ohioattorneygeneral.gov

        *Counsel for Defendant*
        *Ohio Secretary of State Jon Husted*

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2018, the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing has been served by e-mail or facsimile upon all parties for whom counsel has not yet entered an appearance and upon all counsel who have not entered their appearance via the electronic system.

        /s/ *Sarah E. Pierce*
        SARAH E. PIERCE (0087799)
        Assistant Attorney General