UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

WILLIAM T. SCHMITT, *et al.*,

      Plaintiffs,

v.

OHIO SECRETARY OF STATE
JON HUSTED, *et al.*,

      Defendants.

Case No. 2:18-cv-966
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiffs William T. Schmitt and

Chad Thompson's ("Plaintiffs") *Motion for Temporary Restraining Order and/or Injunctive*

*Relief* (ECF No. 3), which the Court previously granted (ECF No. 22), extended (ECF No. 26),

and converted into a preliminary injunction, which expired on November 7, 2018 (ECF No. 28).

By order of the Court (ECF No. 28), Defendants Ohio Secretary of State John Husted and the

Portage County Board of Elections (the "Board")—individually, Craig M. Stephens, Patricia

Nelson, Doria Daniels, and Elayne J. Cross—("Defendants") briefed the issue of

constitutionality of the relevant Ohio statutes. (*See* ECF Nos. 30, 32, 34, and 35). On December

19, 2018, the Court held oral argument to discuss reinstating the preliminary injunctive relief

granted to Plaintiffs. Based on the parties' briefs and their positions at oral argument, the Court

orders permanent injunctive relief. Thus, the Court **REINSTATES** as a permanent injunction

the preliminary injunctive relief granted in its Opinion and Order issued on September 19, 2018.

(ECF No. 22).

## I. BACKGROUND

### A. Ohio's Ballot Initiative Scheme

The Ohio Constitution creates an initiative process for Ohio citizens. Ohio Const. Art. II, Sec. 1. Ohio law requires petitioners of a municipality's ordinances to submit ballot initiatives to a county's board of elections. O.R.C. § 3501.11(K)(1). The boards of elections "determine whether the petition falls within the scope of authority to enact via initiative and whether the petition satisfies the statutory prerequisites to place the issue on the ballot." O.R.C. § 3501.11(K)(2). This process is known as the "gatekeeper mechanism." *State ex rel. Walker v. Husted*, 144 Ohio St. 3d 361, 43 N. E. 3d 419, 423 (2015).

The Supreme Court of Ohio has held that boards of elections have discretion when determining "which actions are administrative, and which are legal." *Id.* "The test for determining whether the action of a legislative body is legislative or administrative is whether the action taken is one enacting a law, ordinance, or regulation, or executing or administering a law, ordinance or regulation already in existence." *State ex rel. N. Main St. Coalition v. Webb*, 2005-Ohio-5009, 106 Ohio St.3d 437, 835 N. E. 2d 1222 (quoting *Donnelly v. Fairview Park* (1968), 13 Ohio St.2d 1, 42 O.O.2d 1, 233 N. E. 2d 500, paragraph two of the syllabus). Legislative actions are appropriate for the initiative process; administrative actions are not. *See* O.R.C. §§ 3501.38(M)(1) and 3501.39(A)(3).[1]

When a board of elections approves an initiative petition, citizens opposing the petition's validity (and therefore, the board of elections' decision) have an original cause of action for review in the Supreme Court of Ohio. Ohio Const. Art. II, Sec. 1g. In contrast, when a board of elections or the Ohio Secretary of State rejects a petitioner's ballot initiative for a substantive

---

[1] The Court does not address whether Plaintiffs' ballot initiatives implicated administrative or legal actions.

reason, *e.g.*, whether the proposed legislation is administrative versus legislative, neither the Ohio Constitution nor state laws provide a remedy.[2]

Thus, a party aggrieved by a rejected initiative petition has no right, by statute or otherwise, to a review of the executive board's legal conclusion. An aggrieved petitioner may seek a writ of mandamus, which is wholly separate from an appeal of right, since a writ is an extraordinary remedy that is discretionary and "will not issue to prevent an erroneous judgment, or to serve the purpose of appeal, or to correct mistakes of the lower court in deciding questions within its jurisdiction." *State ex rel. Sparto v. Juvenile Court of Darke County* (1950), 153 Ohio St. 64, 65, 90 N. E. 2d 598.

Under Ohio law, to be entitled to a writ of mandamus, a petitioner must prove, by clear and convincing evidence: (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the board of electors to provide the requested relief, and (3) the lack of an adequate remedy at law. *State ex rel. Khumprakob v. Mahoning Cty. Bd. of Elections*, 2018-Ohio-1602, — N. E. 3d – (citing *State ex rel. Waters v. Spaeth*, 2012-Ohio-69, 131 Ohio St. 3d 55, 960 N. E. 2d 452, ¶ 6, 13). Only the Ohio Supreme Court of Ohio or the courts of appeals have original jurisdiction in mandamus. Ohio Const. Art. IV, §§ 2(B)(1)(b), 3(B)(1)(b); *see State ex rel. Jones v. Husted*, 2016-Ohio-5752, 149 Ohio St.3d 110, 73 N. E. 3d 463. When the Supreme Court of Ohio or a court of appeals reviews a decision by a county board of elections, the court may only issue the writ if the board "engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions." *Jones*, 149 Ohio St.3d at ¶ 4 (citing *State ex rel.*

---

[2] *See State ex rel. Jones v. Husted*, 149 Ohio St.3d 110, 73 N.E.3d 463 (2016) ¶ 24 ("By its plain language, Section 1g creates a cause of action to challenge, that is, to *oppose* signatures and part-petitions. It does not create a broader cause of action only to challenge decisions by the secretary or the county boards to reject petitions. *That* cause of action still falls under this court's original mandamus jurisdiction.") Here, Plaintiffs' fall under the latter scenario. That is, the Portage County Board rejected Plaintiffs' decision. Therefore, Plaintiffs' only state-court remedy exists in mandamus before either the Supreme Court of Ohio or the courts of appeals.

*Jacquemin v. Union Cty. Bd. of Elections*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N. E. 3d 759, ¶ 9).

**B. Relevant Facts**

In 2018, Plaintiffs circulated ballot initiatives in two Ohio villages: Garrettsville and Windham.  Both ballot initiatives proposed identical ordinances, which essentially decriminalized marijuana possession by reducing criminal fines to $0, removing all consequences related to drivers' licenses, and reducing court costs to $0.  Plaintiffs acquired the necessary number of signatures and submitted the ballot initiatives to the Board. The Board's minutes state:

> Staff presented a list of ballot issues for the November 6, 2018 ballot.  Denise Smith, Chief Assistant Prosecutor addressed questions about two initiative petitions regarding marijuana penalties filed for Garrettsville Village and Windham Village.  Staff reported that both initiative petitions had a sufficient number of valid elector signatures.  Both initiative petitions have identical language and seek to decriminalize marijuana by proving for no monetary fines, no license suspension and no court costs for misdemeanor marijuana offenses. Denise indicated that the Prosecutor's Office will not sign off on the ballot language and does not believe the initiative petitions are appropriate for the ballot because the initiatives are administrative in nature, rather than legislative. Administrative actions are not appropriate for initiative petitions.
>
> Denise indicated that the decision is ultimately up to the Board. Ms. Daniels moved that the initiative petitions regarding marijuana penalties for Garrettsville Village and Windham Village not be certified to the November 6, 2018 General Election ballot. Second by Ms. Cross.
>
> **ROLL CALL:**
> Ms. Nelson — Yes
> Ms. Daniels — Yes
> Ms. Cross — Yes

Pl.'s Compl., Ex. 3 (ECF No. 1).  Therefore, the Board rejected Plaintiffs' proposed initiatives.

The Board then advised Plaintiffs that their initiatives had been rejected, stating:

> In *State ex rel. Sensible Norwood v. Hamilton County Board of Elections*, 2016-Ohio-5919, the Ohio Supreme Court said administrative actions are not subject to

4

initiative. Reviewing the language in the proposals presented by the Village of Garrettsville and the Village of Windham, the $0 and no license consequences are administrative in nature. The $0 court costs is administrative in nature and is an impingement on the judicial function by a legislature. Accordingly, as the Garrettsville Village and Windham Village petitions deal with subject matter that is not subject to the initiative process, the Board of Elections, in its discretion, has chosen not to certify these issues to the ballot.

Pl.'s Compl., Ex. 4 (ECF No. 1).

**C. Procedural History**

On August 28, 2018, Plaintiffs filed their *Complaint* (ECF No. 1) and *Motion for Temporary Restraining Order and/or Preliminary Injunction* (ECF No. 3). On September 19, 2018, the Court granted Plaintiffs a temporary restraining order (ECF No. 22), which directed Defendants to place both initiative petitions on the November 6, 2018 ballot. The Court then held a telephone status conference during which the parties consented to converting the temporary restraining order to a preliminary injunction, which would expire on November 7, 2018—the day after the election. (ECF No. 28). Subsequently, the parties briefed the constitutionality of the Ohio laws at issue, and the Court held oral argument on December 19, 2018. (ECF Nos. 30, 32, 33, 34, 35). At the December 19, 2018 hearing, the parties stipulated that Plaintiffs' motion for injunctive relief is ripe for review because Plaintiffs intend to submit identical initiative petitions in upcoming voting cycles.

**II.**

Federal Rule 65 of Civil Procedure allows a party to seek injunctive relief if the party believes that it will suffer irreparable harm or injury. Fed. R. Civ. P. 65. To determine whether injunctive relief should be issued, the Court considers these four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether granting the injunction would cause substantial harm to others;

5

and (4) whether the public interest would be served by issuing the injunction. *McPherson v. Michigan High School Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc).

These factors are not prerequisites; each must be weighed against the others. *Id.* at 459. "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). A district court is required to make specific findings concerning each of the factors unless fewer are dispositive of the issue. *Performance Unlimited v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995).

"The standard for a preliminary injunction is essentially the same as for a permanent injunction except that the plaintiff must show actual success on the merits rather than a likelihood of success." *Gas Natural Inc. v. Osborne*, 624 Fed. Appx. 944, 948 (6th Cir. 2015) (citing *Am. Civil Liberties Union of Ky. V. McCreary Cty.*, 607 F.3d 439, 445 (6th Cir. 2010)). When a plaintiff seeks a permanent injunction, "[a]n evidentiary hearing is typically required before an injunction may be granted, but a hearing is not necessary where no triable issues of fact are involved." *United States v. Miami University*, 294 F.3d 797, 815 (6th Cir. 2002) (citing *United States v. McGee*, 714 F.3d 607, 613 (6th Cir. 1983)).

### III.

Plaintiffs argue that Ohio's ballot initiative process violates their procedural due process rights guaranteed by the United States Constitution. To establish a procedural due process claim, a plaintiff must show that "(1) it had a life, liberty, or property interest protected by the Due Process Clause; (2) it was deprived of this protected interest; and (3) the state did not afford it adequate procedural rights." *Daily Services, LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014).

6

1. Liberty Interest Protected by the Due Process Clause

The right to initiate legislation through the initiative process is not derived from the United States Constitution. *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 295 (6th Cir. 1993). Once a state creates an initiative process, however, the state may not restrict the process in any manner that violates the Constitution. *Meyer v. Grant*, 486 U.S. 414, 108 S. Ct. 1886, 100 L. Ed. 2d 425 (1988); *Austin*, 994 F.2d at 295 ("although the Constitution does not require a state to create an initiative petition procedure, if it creates such a procedure, the state cannot place restrictions on its use that violate the federal Constitution"). Ohio's has created a ballot initiative process for its citizens. *See* O.R.C. § 3501.11(K)(1). Therefore, Ohio cannot restrict that process in any manner that violates the Constitution.

Defendants argue Plaintiffs have no right for placement of the proposed legislation on the ballot and therefore Plaintiffs lack any threatened liberty interest. This argument is not well taken. Plaintiffs do not claim they have a substantive right to appear on the ballot. Plaintiffs contend that Ohio's ballot initiative framework fails to provide procedural due process.

2. Deprivation of the Liberty Interest Without Adequate Procedural Rights

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' " *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) (quoting *Mulane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). When a liberty interest is at stake, "procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before the deprivation occurs." *Center for Powell Crossing, LLC v. City of Powell, Ohio*, 173 F. Supp. 3d 639, 657 (S.D. Ohio 2016) (citing *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005)).

7

Plaintiffs argue they were deprived of their right to participate in Ohio's initiative process without the right to adequate review in the courts of Ohio. In contrast, Defendants contend that mandamus is a constitutionally sufficient remedy for review of an allegedly unconstitutional deprivation of ballot access. The Court disagrees.

In procedural due process cases, the Sixth Circuit directs courts to determine whether the deprivation of a liberty interest is a result of "an established procedure" or is "pursuant to a random and unauthorized act" of a state employee. *Daily Services, LLC v. Valentino*, 756 F.3d 893, 907 (6th Cir. 2014); *Wedgewood Ltd. Partnership v. Township of Liberty, Ohio*, 610 F.3d 340, 349–50 (6th Cir. 2010). "If the former, then it is both practicable and feasible for the state to provide pre-deprivation process, and the state must do so regardless of the adequacy of any post-deprivation remedy…." *Walsh v. Cuyahoga County*, 424 F.3d 510, 513 (6th Cir. 2005) (internal quotations and citations omitted).

The gatekeeping function is based on Ohio's constitution and statutory framework, rendering it "an established procedure." Accordingly, it is both practicable and feasible for Ohio to provide a meaningful right to review of the decision rendered by the Board of Elections. Indeed, Ohio already applies a *de novo* standard when reviewing executive agencies' legal determinations in other contexts. *See Akron City School Dist. Bd. of Education v. Summit Cty. Bd. of Revision*, 2014-Ohio-1588, 139 Ohio St.3d 92, 9 N. E. 3d 1004, ¶¶ 10–11; *see also Gahanna-Jefferson Local School Dist. Bd. of Revision*, 93 Ohio St.3d 231, 232, 754 N. E. 2d 789 (2001). In the ballot initiative process, however, the State of Ohio has not provided Plaintiffs an adequate review process. Instead, the gatekeeping function enables a board of elections—an executive body—to make legal determinations without providing denied petitioners a right to review. The only possibility of review requires an aggrieved petitioner to convince a court of

8

appeals or the Supreme Court of Ohio to exercise its discretion under heightened standards.[3]

Plaintiffs contend that the refusal of the Board to certify a vote on the legislation without a right

to review by a judicial body violates Plaintiffs' constitutionally protected liberty interest.

No doubt, Ohio has strong interests in ensuring its elections are run fairly and efficiently.

*Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 191 (1999); *Taxpayers United for*

*Assessment Cuts v. Austin*, 994 F.2d 291, 297 (6th Cir. 1993). Ohio also has a strong interest in

placing on the ballot only such proposed legislation as would be lawful as municipal legislation

under Ohio Const. Art. XVIII, Sec. 3. Allowing votes on matters unlawful or unenforceable on

their face could erode public confidence in Ohio's entire initiative process.

Recognizing those interests, the Court finds no legitimate state interests in withholding an

adequate legal remedy for petitioners denied ballot access by a board of elections. "Although a

state has a wide scope in regulating the franchise, it is not permitted to adopt any standard it

desires, but it is limited by the strictures of the federal and state constitutions...." 25 Am. Jur. 2d

Elections § 98. Given the availability of mandamus relief is extraordinary and only exercised

when the law does not otherwise provide an adequate remedy, the high burden on petitioners to

prove entitlement to an extraordinary remedy is no substitute for *de novo* review of the denial of

a constitutionally protected liberty interest. Therefore, the Court finds Plaintiffs prevail on their

constitutional challenge to Ohio's ballot initiative process.[4]

---

[3] In *State ex rel. Maxcy v. Saferin*, three dissenting Ohio Supreme Court Justices highlighted "the uncertainty regarding the constitutionality of the amendments to R.C. 3501.11 made by H.B. 463." --- Ohio St. 3d ---, 2018-Ohio-4035, --- N. E. 3d ---, at ¶ 52. In *Maxcy*, the Supreme Court of Ohio found that county boards of elections lack authority to review the substance of a proposed municipal charter amendment. In so holding, the majority observed that Article XVII, Sections 8 and 9 of the Ohio Constitution apply to municipal charter amendments rather than Article II, Section 1f, which applies to citizen-initiated legislation, *i.e.*, referendum and initiative petitions. For that reason, the majority declined to address the constitutionality of R.C. 3501.11(K). *Id.* at ¶ 13.

[4] As the Court mentioned during oral argument, the Boards of Elections in Ohio make many decisions that permit or deny ballot access to candidates and petitioners. The issues in this case do not involve whether the Boards of Elections may exercise such powers. The Court assumes that the Boards of Elections may exercise such powers as

9

**IV.**

In conclusion, the Court **REINSTATES** and **CONVERTS** to permanent injunction the

preliminary injunctive relief granted in its Opinion and Order issued on September 19, 2018.

(ECF No. 22). The Court **DIRECTS** the Clerk to enter judgment accordingly.

**IT IS SO ORDERED.**

_2-11-2019_
DATE

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

given by the Ohio General Assembly. The sole issue in this case is whether a constitutionally adequate review is available to a party deprived of ballot access by a Board of Elections.

10