**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**SCHMITT**, et al.,

Plaintiffs,

v. **CASE NO.2:18-cv-966**

Judge Edmund Sargus, Jr.

Magistrate Judge Elizabeth Deavers

**LAROSE,**[1] et al.,

Defendants.

______________________________________________/

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR STAY UNDER RULE 62**

**INTRODUCTION**

This is a prospective action (both facially and as-applied) under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. Plaintiffs on August 28, 2018, *see* Verified Complaint, Doc. No.1, challenged Ohio's "gatekeeper mechanism" for ballot initiatives as an unconstitutional prior restraint. *See* Opinion and Order, R. 22, at PAGEID # 162 (describing Ohio's procedure codified in O.R.C. § 3501.11(K)(2), O.R.C. § 3501.38(M)(1)(a), and O.R.C. § 3501.39(A), as its "gatekeeper mechanism").

Ohio's gatekeeper mechanism for initiatives, Plaintiffs claimed, imposes an impermissible prior restraint on speech because it vests discretion in local election officials to select initiatives for ballots without providing timely and meaningful judicial review. *See, e.g.*,

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Frank LaRose, who assumed office as Ohio's Secretary of State in place of Jon Husted on or about January 12, 2019, is automatically substituted as Defendant in this official capacity action.

*Freedman v. Maryland*, 380 U.S. 51, 58-59 (1965) (holding that prior restraint on speech must incorporate procedural safeguards to satisfy First Amendment and due process).

On September 19, 2018, following oral argument, this Court granted to Plaintiffs temporary relief and directed Defendants to restore Plaintiffs' initiatives to two local Ohio ballots in Windham and Garrettsville. *Schmitt v. Husted*, 341 F. Supp.3d 784, 792-93 (S.D. Ohio 2018); Order, Doc. No. 22, at PAGEID # 170. The Court explained:

> the Court finds no legitimate state interests in preventing an adequate legal remedy for petitioners denied ballot access by a board of elections. While the availability of mandamus relief is essentially a judicially imposed remedy when the law does not otherwise provide one, the high burden on petitioners to prove entitlement to an extraordinary remedy is no substitute for *de novo* review of the denial of a First Amendment right. For those reasons, the Court finds that Plaintiffs' have a high likelihood of success on the merits.

341 F. Supp.3d at 791; Order, Doc. No. 22, at PAGEID # 168. Consequently, the Court concluded:

> Ohio's regulatory scheme unreasonably infringes on Plaintiffs' First Amendment rights by allowing an executive board to determine disputed legal and even constitutional issues, thereby potentially blocking initiatives from the ballot, and then denying rejected petitioners a right to review. No legitimate state interest is protected by a lack of appellate review. Similarly, Ohio voters are unlikely to suffer cognizable harm from Plaintiffs' access to the ballot.

341 F. Supp.3d at 792; Order, Doc. No. 22, at PAGEID # 169 (citation omitted).

On October 3, 2018, the Court extended its temporary restraining order another fourteen days until October 16, 2018. *See* Order, Doc. No. 26. Following a phone conference with counsel, and with the parties' consent, the Court on October 4, 2018 converted that temporary restraining order into a preliminary injunction, set to expire on November 7, 2018 (the day after the elections in Garrettsville and Windham). *See* Order, Doc. No. 28. The Court also, at Defendants' request, directed the parties to re-brief the case and appear for oral argument to address Plaintiffs' continuing claim to forward-looking relief. *See id*.

On February 11, 2019, following oral argument, the Court converted its prior temporary and preliminary orders into permanent relief. The Court stated that it "**REINSTATES** and **CONVERTS** to permanent injunction the preliminary injunctive relief granted in its Opinion and Order issued on September 19, 2018." *Schmitt v. Husted*, 2019 WL 517666, *5 (S.D. Ohio 2019); Opinion and Order, Doc. No. 37, at PAGEID # 293. The Court granted to Plaintiffs the permanent injunctive relief they requested, that is, "a permanent injunction under 42 U.S.C. § 1983 prohibiting Defendants from enforcing or acting under O.R.C. § 3501.11(K), O.R.C. § 3501.38(M)(1)(a), and O.R.C. § 3501.39(A), separately and/or collectively, as authoritatively construed by the Ohio Supreme Court to authorize local elections boards to act as 'gatekeepers' of initiatives." Verified Complaint, Doc. No. 1, at PAGEID # 16 ¶ D.

In reinstating and converting its prior preliminary Orders into a permanent injunction, the Court on February 11, 2019 explained:

> the Court finds no legitimate state interests in withholding an adequate legal remedy for petitioners denied ballot access by a board of elections. "Although a state has a wide scope in regulating the franchise, it is not permitted to adopt any standard it desires, but it is limited by the strictures of the federal and state constitutions...." Given the availability of mandamus relief is extraordinary and only exercised when the law does not otherwise provide an adequate remedy, the high burden on petitioners to prove entitlement to an extraordinary remedy is no substitute for *de novo* review of the denial of a constitutionally protected liberty interest. Therefore, the Court finds Plaintiffs prevail on their constitutional challenge to Ohio's ballot initiative process.

Id.; Opinion and Order, Doc. No. 37, at PAGEID # 292 (emphasis added).

Defendants on February 25, 2019 moved for reconsideration and clarification of the Court's February 11, 2019 Opinion and Order. *See* Defendants' Motion for Reconsideration, Doc. No. 39. Plaintiffs opposed that Motion on March 11, 2019. *See* Plaintiffs' Opposition to Motion, Doc. No. 40. The following day, on March 12, 2019, Defendants lodged their Notice of Appeal, *see* Doc. No. 41, and filed the instant motion to stay the Court's permanent injunction.

*See* Defendants' Motion for Stay, Doc. No. 42. Plaintiffs **OPPOSE** that Motion for the reasons that follow.

**ARGUMENT**

Rule 62 of the Federal Rules of Civil Procedure authorizes a District Court to stay its final judgment awarding injunctive relief during the pendency of an appeal. Whether to do so is left to the discretion of the District Court and is largely a function of four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

As noted by one well-respected treatise, "[t]here is, of course, considerable reluctance in granting an injunction pending appeal when to do so, in effect, is to give the appellant the ultimate relief being sought. Thus, to succeed in obtaining an injunction in these circumstances, the appellant will be required to show a great likelihood that he will prevail when the case finally comes to be heard on the merits and that a denial of interim relief will result in irreparable injury." 11 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 2904 (2012) (emphasis added and footnotes omitted).

This Court in *Dugas v. Wittrup*, 2015 WL 3823264, *1 (S.D. Ohio 2015), observed that "[t]he party seeking a stay of proceedings bears the burden of establishing the 'pressing need for delay' and 'that neither the other party nor the public will suffer harm from entry of the order.'" (Emphasis added) (quoting *Ohio Envtl. Council v. United States District Court, Southern District of Ohio, Eastern Division*, 565 F.2d 393, 396 (6th Cir.1977)). The Court "'must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its

rights and liabilities without undue delay.'" *Id*. at *2 (quoting *Ohio Envtl. Council,* 565 F.2d at 396).

In *United States v. Prather*, 2003 WL 23770599, *1 (S.D. Ohio), this Court added that "[i]n order for the Court to adequately consider these factors, the movant must address each factor, regardless of its relative strength, <u>providing specific facts and affidavits supporting assertions that these factors exist</u>." (Citation omitted and emphasis added). The burden is therefore not only on Defendants here to demonstrate a "pressing need" for a stay pending appeal, a "great likelihood" of success on appeal, irreparable injury, and little potential harm to the successful Plaintiffs and/or public, but also to "provide specific facts and affidavits" supporting its assertions. They have not done so.

**I. Defendants Have Proved No "Pressing Need" for a Stay Pending Appeal.**

Defendants waited 28 days following the entry of this Court's final judgment to seek their stay. Delay of this length strongly suggests that there is no "pressing need" for delay or a stay. Defendants have offered no supporting facts or affidavits to demonstrate why or how their need for a stay has after 28 days become pressing.

Defendants' lone claim of potential harm is that the Court's injunction will somehow interfere with local elections boards' authority to "verify and count signatures on petitions, decide protests, and verify nominating petitions." Defendants' Motion for Stay, Doc. No. 42 at PAGEID # 309. This obviously is not true, as neither Plaintiffs' challenge nor the Court's injunction has anything to do with verifying/counting signatures and/or reviewing nominating petitions. The Court made clear in its February 11, 2018 Opinion and Order:

> As the Court mentioned during oral argument, the Boards of Elections in Ohio make many decisions that permit or deny ballot access to candidates and petitioners. The issues in this case do not involve whether the Boards of Elections may exercise such powers. The Court assumes that the Boards of Elections may exercise such powers as given by

> the Ohio General Assembly. The sole issue in this case is whether a constitutionally adequate review is available to a party deprived of ballot access by a Board of Elections.

*Schmitt v. Husted*, 2019 WL 517666, *5 n.4 (S.D. Ohio 2019); Opinion and Order, Doc. No. 37 at PAGEID # 292-93 n.4.

In contrast to Defendants' lack of proof, Plaintiffs have submitted affidavits (along with their Verified Complaint) alleging that they intend to continue to circulate petitions for initiatives during the 2019 electoral cycle. *See* Declaration of Plaintiff-Schmitt, Doc. No. 32-1; Declaration of Plaintiff-Thompson, Doc. No. 32-2. Circulators across Ohio -- in the absence of the Court's injunction -- will be unconstitutionally forced to submit their initiatives for executive review under Ohio's gatekeeper mechanism as early as the May 7, 2019 election. Circulators and those who wish to offer support by signing their initiatives will suffer irreparable harm should the Court's injunction be lifted.

Ohio's voters will also suffer should the Court stay its injunction. Without the injunction, voters risk forfeiting the opportunity to vote for or against otherwise proper (and popular) initiatives. Following this Court's temporary restraining order, for example, Plaintiffs' initiatives in Windham and Garrettsville were restored to those respective ballots and received tremendous support in the voting booth. Windham's initiative passed by a vote of 237 to 206; Garrettsville's initiative narrowly failed by a vote of 515 to 471.[2] In the absence of this Court's preliminary relief, voters in those communities would have forfeited their First and Fourteenth Amendment rights. As this Court observed in granting relief before the election, "the public is unlikely to suffer significant harm from the injunctive relief that Plaintiffs seek." Opinion and Order, R.22,

[2] *See* Portage County General Election, Nov. 6, 2018, Summary Report, (https://www.co.portage.oh.us/sites/portagecountyoh/files/uploads/final_unofficial_results.pdf) (last visited Nov. 7, 2018).

at PAGEID # 170. Defendants, in contrast, have submitted no evidence suggesting that the presence of those initiatives caused any local inconvenience, let alone irreparable harm.

**II. Defendants Have Failed to Show a "Great Likelihood" of Success on Appeal.**

Defendants argue that they are certain to win on appeal. While their argument is not crystal clear, it appears Defendants believe the Court's reliance on the Fourteenth Amendment's Due Process Clause to support its injunction, as well as the First Amendment, somehow confuses or diminishes the Court's rationale. "Plaintiffs pled, briefed, and argued that the challenged laws deprived them of their First Amendment rights. But Plaintiffs have failed to demonstrate that they have a protected liberty interest in placing their initiative on the ballot and there does not appear to be any authority supporting that contention." Defendants' Motion for Stay, Doc. No. 42 at PAGEID # 311.

Defendants' charge falters out of the starting gate. As the Court explained in its initial order temporarily restraining Defendants' enforcement of Ohio's gatekeeper mechanism and again later in its Opinion and Order awarding permanent injunctive relief to Plaintiffs on February 11, 2019, Ohio's gatekeeper mechanism violates both the First Amendment and the Fourteenth Amendment.

The First Amendment's speech protections have (since 1937) been recognized as "implicit" in the meaning of Fourteenth Amendment "liberty." *See Palko v. Connecticut*, 302 U.S. 319, 323 (1937). Free speech is necessarily a protected liberty interest. It is, as such, due both substantive First Amendment and procedural Fourteenth Amendment protections. The Court's discussion of the Fourteenth Amendment's Due Process Clause as one of the anchors to its decision is perfectly proper and correct.

The Supreme Court's many prior restraint precedents make clear the connection between the First and Fourteenth Amendments in the context of free speech. They firmly establish that

the procedural safeguards grounded in the Fourteenth Amendment's Due Process Clause have been grafted onto the First Amendment's prior restraints jurisprudence. The Court in *Board of Regents v. Roth*, 408 U.S. 564, 575 n.14 (1972), explained this in the context of a lengthy discussion on the meaning of Fourteenth Amendment procedural due process:

> When a State would directly impinge upon interests in free speech or free press, this Court has on occasion held that opportunity for a fair adversary hearing must precede the action, whether or not the speech or press interest is clearly protected under substantive First Amendment standards. Thus, we have required fair notice and opportunity for an adversary hearing before an injunction is issued against the holding of rallies and public meetings. *Carroll v. President and Commissioners of Princess Anne*, 393 U.S. 175 (1969). Similarly, we have indicated the necessity of procedural safeguards before a State makes a large-scale seizure of a person's allegedly obscene books, magazines, and so forth. *A Quantity of Books v. Kansas*, 378 U.S. 205 (1964); *Bantum Books v. Sullivan*, 372 U.S. 58 (1961). *See Freedman v. Maryland*, 380 U.S. 51 (1965). *See generally* Monaghan, First Amendment 'Due Process', 83 Harv. L. Rev. 518 (1970).

All of the cases cited as examples by the Supreme Court in *Roth* involved prior restraints on speech. They prove that the First Amendment's doctrine against prior restraints incorporates not only substantive First Amendment norms, but also Fourteenth Amendment procedural due process protections. In *Freedman v. Maryland*, 380 U.S. 51, 58 (1965), for example, the Supreme Court explained its holding in both First Amendment and Fourteenth Amendment terms:

> we hold that a noncriminal process which requires the prior submission of a film to a censor avoids constitutional infirmity only if it takes place under <u>procedural safeguards</u> designed to obviate the dangers of a censorship system. First, the burden of proving that the film is unprotected expression must rest on the censor. As we said in *Speiser v. Randall*, 357 U.S. 513, 526, "Where the transcendent <u>value of speech</u> is involved, <u>due process certainly requires</u> * * * that the State bear the burden of persuasion ….

(Emphasis added).[3]

[3] In his seminal and influential work on the First Amendment's procedural protections, Professor Monaghan observed:

The First Amendment, *Freedman v. Maryland*'s procedural safeguards, and Ohio's lack thereof, were the focal points of Plaintiffs' case. The Court correctly ruled that Ohio's faulty procedures violated the First and Fourteenth Amendments.[4] The Court correctly enjoined enforcement of Ohio's gatekeeper mechanism. Defendants have little likelihood of success on appeal.

**CONCLUSION**

Defendants' Motion for Stay should be **DENIED**.

Respectfully submitted,

s/*Mark R. Brown*
Mark R. Brown, Trial Counsel
Ohio Registration No. 81941
303 East Broad Street
Columbus, OH 43215
(614) 236-6590
(614) 236-6956 (fax)
mbrown@law.capital.edu

---

> wherever first amendment claims are involved, sensitive procedural devices are necessary to insure that the Court is called upon to balance competing interests of state and citizen only when the judgment that conduct should be punished has been made in a setting which is designed to discriminate between protected and unprotected activity. The government, in other words, may regulate certain types of activity, but it must make sure, via proper procedural safeguards, that protected speech is not the loser.

Henry Paul *Monaghan, First Amendment 'Due Process'*, 83 Harv. L. Rev. 518, 519-20 (1970) (footnotes omitted and emphasis added). The First Amendment's protection of speech and procedural due process have forever since gone hand in hand.

[4] Defendants belatedly suggest that another mechanism in Ohio, that used for administrative review, might be available instead of mandamus. *See* Defendants' Motion for Stay, Doc. No. 42 at PAGEID # 312 n.1. That suggestion is incorrect. As the court in *State ex rel. Robinson-Bond v. Champaign County Board of Elections*, 2011 WL 5925322 (Ohio Ct. App. 2011), observed, Chapter 2506's administrative appeal mechanism does not supply an adequate substitute for mandamus in the context of elections. It cannot replace mandamus for election reviews because it takes too long. Even if it included de novo review, its delay would cause it to fail the First and Fourteenth Amendments' procedural safeguards.

Mark G. Kafantaris
Ohio Registration No. 80392
625 City Park Avenue
Columbus, Ohio 43206
(614) 223-1444
(614) 300-5123(fax)
mark@kafantaris.com

**CERTIFICATE OF SERVICE**

I certify that this Motion was filed using the Court's electronic filing system and thereby will be served on all parties to this proceeding.

s/*Mark R. Brown*
Mark R. Brown